BAKER & HOSTETLER LLP
MICHAEL K. FARRELL (*pro hac vice*)
KYLE T. CUTTS (CA BAR NO. 257641)
DANTE A. MARINUCCI (*pro hac vice*)
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:  216.621.0200
Facsimile:   216.696.0740

MARCUS S. MCCUTCHEON (CA BAR NO. 281444)
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Telephone:  714.754.6600
Facsimile:   714.754.6611

*Attorneys for Defendants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| LINDA HALL, individually and on behalf of all others similarly situated, | Case No.: 8:19-cv-01153-AG-ADS |
| Plaintiff, | Hon. Andrew J. Guilford |
| TIME, INC., a Delaware corporation; MEREDITH CORP., an Iowa corporation; and DOES 1-100, inclusive, | **TIME, INC'S AND MEREDITH CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT** |
| Defendants. | Hearing Date:   Sept. 23, 2019<br>Hearing Time:   10:00 a.m.<br>Location: Court 10D |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 23, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Andrew J. Guilford, at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Court 10D, Santa Ana, California 92701-4516, Time, Inc. and Meredith Corporation (together, "defendants") shall, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing Linda Hall's Class Action Complaint ("Complaint") for failure to state a cause of action.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, any Reply Memorandum that defendants may file, the pleadings, records, and papers on file in this action, oral argument of counsel, and upon such other matters as may be presented to the Court prior to or at the hearing on the Motion.

This Motion is made following a conference of counsel pursuant to L.R. 7-3 on August 1, 2019.

Respectfully submitted,

Dated: August 8, 2019      **BAKER & HOSTETLER LLP**

By:    */s/ Kyle T. Cutts*
       MICHAEL K. FARRELL (*pro hac vice*)
       KYLE T. CUTTS (CA BAR NO. 257641)
       DANTE A. MARINUCCI (*pro hac vice*)
       Key Tower
       127 Public Square, Suite 2000
       Cleveland, OH  44114-1214
       Telephone:    216.621.0200
       Facsimile:    216.696.0740

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARCUS S. MCCUTCHEON (CA BAR NO. 281444)
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Telephone:      714.754.6600
Facsimile:      714.754.6611

*Attorneys for Defendants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO.: 8:19-CV-01153-AG-ADS
4848-8386-5759.3

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

1.    INTRODUCTION ................................................................................................. 1

2.    SUMMARY OF PLAINTIFF'S ALLEGATIONS ........................................... 2

    A.    Hall's Complaint ........................................................................................ 2

    B.    The Purchase  Flow in Exhibits to Hall's Complaint .......................... 3

3.    LEGAL ARGUMENT ......................................................................................... 6

    A.    Hall's Core Allegations Are Implausible ............................................... 7

    B.    Hall's UCL Claim (Count I) Also Fails Because She Lacks
    Standing. ..................................................................................................... 10

    C.    Hall's Section 496 Claim (Count II) Fails for Additional Reasons.... 13

    D.    Hall's Conversion Claim (Count III) Also Fails For Additional
    Reasons. ...................................................................................................... 15

    E.    Hall Cannot Plead Plausible Claims in an Amended Complaint........ 16

4.    CONCLUSION ................................................................................................... 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google, LLC*,
   No. 17-cv-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13,
   2018) .................................................................................................. 14, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................... 6, 7, 17

*Avidor v. Sutter's Place, Inc.*,
   212 Cal. App. 4th 1439 (2013) ................................................. 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................... 7

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ........................................ 11

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992, 998 (9th Cir. 2010) .............................................. 9

*Daro v. Superior Court*,
   151 Cal. App. 4th 1079 (2007) ................................................. 11

*Deleon v. Time Warner Cable LLC*,
   No. CV 09-2438 AG RNBX, 2009 WL 9426145, at *3 (C.D. Cal.
   July 17, 2009) ...................................................................... 10, 16, 17

*Driver v. Acquisto*,
   145 Cal. App. 2d 304 (1956) ..................................................... 15

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ................................................. 11

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
   No. 16-cv-02954-LB, 2016 WL 5930273 (N.D. Cal. Oct. 12, 2016) ............... 15

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008), *as modified* (Jan. 28, 2008) ........................ 11, 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

- ii -

*Ingalls v. Spotify USA, Inc.*,
No. C 16-03533 WHA, 2017 WL 3021037 (N.D. Cal. July 17,
2017) ................................................................................................... 11

*Kissel v. Omega Nat. Sci., Inc.*,
No. CV 16-2770-GW SKX, 2016 WL 9019613 (C.D. Cal. Aug.
22, 2016) ............................................................................................. 13

*Klett v. Sec. Acceptance Co.*,
38 Cal. 2d 770 (1952) ......................................................................... 15

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ............................................................... 10, 11

*Lucchesi v. Bank of America*,
No. SACV 19-00012, 2019 WL 1601391 (C.D. Cal. Feb. 25, 2019)
(Guilford, J.) ....................................................................................... 10

*MMM Holdings, Inc. v. Reich*,
21 Cal. App. 5th 167, 230 Cal. Rptr. 3d 198 (Ct. App. 2018) ........... 13

*Parker-Bokelman v. Specialized Loan Serv. LLC*,
No. EDCV19-00173 AG SHKX, 2019 WL 3243739, at *4 (C.D.
Cal. June 3, 2019) ................................................................................. 7

*People v. Hartley*,
248 Cal. App. 4th 620 (2016) ............................................................. 14

*People v. Lorenzo*,
64 Cal. App. 3d Supp. 43 (App. Dep't Super Ct. 1976) .................... 15

*People v. Stuart*,
272 Cal. App. 2d 653 (1969) .............................................................. 13

*People v. Wooten*,
44 Cal. App. 4th 1834 (1996) ............................................................. 14

*Roz v. Nestle Waters N. Am., Inc.*,
No. 2:16-cv-04418-SVW-JEM, 2017 WL 6942661 (C.D. Cal. Dec.
6, 2017) ............................................................................................... 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

- iii -

*Sprewell v. Golden State Warriors*,
   266 F.3d 979, 988 (9th Cir. 2001)), *aff'd*, 588 F. App'x 658 (9th
   Cir. 2014).............................................................................................. 9

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...................................................................... 11

*In re Turner*,
   859 F.3d 1145 (9th Cir. 2017) ......................................................... 11

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................... 7, 15

*Williams v. Kidiley*,
   No. EDCV 12-2272-AG RNB, 2013 WL 6247972 (C.D. Cal. Dec.
   3, 2013) ............................................................................................... 9

*Wilson v. Frito-Lay N. Am., Inc.*,
   260 F. Supp. 3d 1202 (N.D. Cal. 2017) ......................................... 11

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................ 10

California Penal Code § 496.......................................................... *passim*

California's Automatic Renewal Law, Cal. Bus. & Prof. Code §
   17600, *et seq.* ........................................................................ *passim*

**Rules**

Federal Rule of Civil Procedure 9(b) ............................................. 7, 15

Federal Rule of Civil Procedure 12(b)(6)............................................. 6

Federal Rule of Civil Procedure 15(a)(1)(B)...................................... 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

All of plaintiff Linda Hall's claims rest on the theory that defendants violated California's Automatic Renewal Law ("ARL") because she did not "affirmatively consent" to the automatic renewal of her subscription to People magazine.  But the exhibits to Hall's complaint show that to sign up for a subscription one would: (i) be notified of the automatic renewal feature before having to click "Checkout now" to continue with the transaction; (ii) be alerted to and provided a link to terms and conditions of the offer; and (iii) receive additional detail through an auto-renewal notice *before* reaching the "submit order" button. The affirmative acts Hall alleges are required to obtain a subscription make implausible her claim that she did not "affirmatively consent" to her subscription and require dismissal of all her claims.  Indeed, the ARL does not require separate, stand-alone consent to automatic renewal; it requires consent to an agreement containing such a feature.  And, even if such a requirement did exist, clicking "submit order" after viewing the auto-renewal notice would satisfy it.

Hall's claim through California's Unfair Competition Law ("UCL") fails for the separate reason that she lacks standing to pursue her claim because she does not allege she would not have purchased her subscription "but for" defendants' alleged failure to comply with the ARL.  Likewise, Hall's claim for receipt of stolen property under California Penal Code § 496 fails for the additional reasons that she has neither alleged that defendants specifically intended to defraud her nor the causation required for such a claim.  Finally, Hall's claim for conversion fails because, whether or not a technical ARL violation occurred, she consented to the transfer of the monies at issue.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

- 1 -

## 2.   <u>SUMMARY OF PLAINTIFF'S ALLEGATIONS</u>

### A.   <u>Hall's Complaint</u>

Plaintiff Linda Hall alleges that at some point in 2017 she purchased a subscription to People Magazine.  (Compl. ¶¶ 17-24.)  She claims that People is published by Time and that the seller she purchased People from is "operated" by Meredith, Time's parent company.  (*Id*. ¶¶ 18, 10-11.)  Hall alleges that in September 2018 she received a postcard reminding her that her subscription would renew if she did not cancel it and explaining how she could cancel it to avoid that charge.  (*Id.* ¶¶ 25-26 & Exhibit C.)  Hall does not claim that she cancelled or tried to cancel but states that her subscription automatically renewed on October 14, 2018 and Time debited $67.50 from her "account."  (*Id.* ¶ 27.)

Tellingly, Hall does not allege that she was unaware of the automatic renewal feature of her subscription when she initially purchased it and agreed to receive People.  Nor does she allege that the automatic renewal feature was a deal breaker, or that it was something she did not want.  Instead, Hall alleges that when she subscribed to People, defendants did not comply with the technical requirements of California's Automatic Renewal Law, Cal. Bus. & Prof. Code § 17600, *et seq.* ("ARL").  Specifically, she claims that defendants did not obtain her "affirmative consent" to automatically renew her subscription.  (*E.g.*, Compl. ¶ 29.)  She further claims that this alleged failure renders her still-active subscription an "unconditional gift" and she can collect restitution and treble damages.  (*Id.* ¶¶ 2-4, 28-29, 41-57.)

On this theory, Hall seeks to represent all people "within California" who "purchased a subscription to any magazine published, marketed or sold by Defendants" that included an automatic renewal.  (*Id.* ¶ 30.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

**B.    The Purchase Flow in Exhibits to Hall's Complaint**

Exhibit A to Hall's complaint is a copy of the various phone screens, or purchase flow, through which she alleges she ordered her subscription.  (Compl. Exhibit A.)  "[E]nlargements" of these displays are attached as Exhibit B.  (Compl. Exhibit B; *see also id.* ¶ 17.)

The first screen reveals that the subscription being ordered would automatically renew.  As shown here, it states: "All magazine subscriptions will automatically renew annually."





(Compl. Exhibit A, Page ID #22; Compl. Exhibit B, Page ID #28.)

//

//

//

//

//

//

- 3 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

The exhibits show that a user such as Hall cannot proceed to purchase a subscription without affirmatively clicking the "Checkout now" button on this screen directly beneath the auto-renewal disclosure.  (Compl. Exhibit A, Page ID #22; Compl. Exhibit B, Page ID #28.)  After clicking "Checkout now," Hall allegedly flowed to a separate payment screen where she chose to pay by credit card and entered her credit card information:



(Compl. Exhibit A, Page ID #23-24; Compl. Exhibit B, Page ID #29-30.)

Directly below the space for entering the consumer's payment method and credit card information, this screen says, "By submitting your order you are agreeing to our terms of service."  (Compl. Exhibit A, Page ID #23; Compl. Exhibit B, Page ID #29 (coloring in original).)  That the phrase "terms of service"

- 4 -

is shaded blue suggests that it hyperlinks to another page not included in Hall's exhibits.

After she clicked "Checkout Now" and entered her credit card information, Hall alleges she was shown the automatic renewal disclosure, labeled "**Automatic Renewal Notice**," which is displayed on a bright yellow background:



(Compl. Exhibit A, Page ID #25; Compl. Exhibit B, Page ID #31.)

As shown, this notice states that, after the initial magazine term, "your magazine subscription will automatically renew annually until you tell us to stop." (*Id.*) It explains that "[y]ou will receive a reminder of the renewal approximately 30 days in advance." (*Id.*) It reminds the consumer that "[y]our credit card or method of payment will be charged at the time of purchase, and before the start of each new annual term, at the rate stated in the notice." (*Id.*) And it confirms that "[y]ou can contact customer service or cancel at any time." (*Id.*) Again, the words

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1  "customer service" or "cancel" are highlighted in blue, presumably reflecting

2  hyperlinks to other pages not attached to Hall's complaint.  (*Id.*)

3      Thus, Hall's exhibits show that a consumer can only order a subscription

4  *after* being informed that "subscriptions will automatically renew annually," *after*

5  then clicking on "Checkout now," *after* then entering their credit card information,

6  and then clicking on the "Submit order" button *after* seeing the **Automatic**

7  **Renewal Notice**.  (Compl. Exhibit A, Page ID #24; Compl. Exhibit B, Page ID

8  #31-32.)

9      Hall also alleges that she received a postcard in September 2018, *before* the

10  allegedly unlawful October 14, 2018 automatic renewal.  Among other things, that

11  postcard says: "Your PEOPLE subscription will continue for the next term of

12  issues using the account number you agreed to be billed."  (Exhibit C, Page ID

13  #34-35.)  It explains, "[y]ou will be billed or charged $67.50 for a total of 54

14  issues, which will run from 12/10/18 – 11/26/19."  (*Id.*)  And it reminds the

15  consumer that "[i]f you wish to cancel," you can contact customer service "by

16  10/2/18 and no charge will appear."  (*Id.*)

17      Finally, Exhibit D represents what Hall describes as "[a]n example of the

18  automatic renewals implemented by Meredith as viewed on a computer screen."

19  (Compl. ¶ 28(5).)  Again, the **Automatic Renewal Notice**, highlighted by the same

20  yellow background described above, is clearly visible above the "Submit order"

21  button.  (Compl. Exhibit D, Page ID #39.)

22  **3.    LEGAL ARGUMENT**

23      Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint

24  when a plaintiff's allegations fail to set forth a set of facts that, if true, would

25  entitle her to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (claim must be

26  facially plausible to survive a motion to dismiss).  The pleadings must raise the

27  right to relief beyond the speculative level, and a plaintiff must provide "more than

28

1  labels and conclusions, and a formulaic recitation of the elements of a cause of

2  action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The

3  Court is not required to accept as true legal conclusions couched as factual

4  allegations.  *Iqbal*, 556 U.S. at 678.

5      Further, to satisfy Federal Rule of Civil Procedure 9(b)'s heightened

6  pleading requirements, which apply to her theft by fraud claim and her claim under

7  the UCL-fraud prong, Hall must allege "*more* than the neutral facts necessary to

8  identify the transaction," including the who, what, when, where, and how of the

9  alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

10  (citation omitted).

11      **A.    Hall's Core Allegations Are Implausible.**

12      Hall's complaint is fundamentally deficient.  Each of her three claims rests

13  on an alleged underlying violation of the ARL.  (*E.g.*, Compl. ¶ 43 (Count I –

14  UCL); *id.* ¶ 53(1)-(6) (Count II – California Penal Code); *id.* ¶ 56 (conversion).)

15  But Hall fails to plausibly allege such a violation.  Thus, all her claims fail.  *See,*

16  *e.g.*, *Parker-Bokelman v. Specialized Loan Serv. LLC*, No. EDCV19-00173 AG

17  SHKX, 2019 WL 3243739, at *4 (C.D. Cal. June 3, 2019) (Guilford, J.)

18  ("[R]egardless of the prong, the UCL claim fails since Plaintiff predicates her UCL

19  claim on the same allegations underlying Plaintiff's other claims against BOA.

20  Because these claims fail, the UCL claim fails as well.").

21      Hall's primary claim is that defendants failed to secure her affirmative

22  consent to the automatic renewal feature of her magazine subscription.  (Compl.

23  ¶¶ 19, 22, 28-29.)  Although it is not always clear, she claims that defendants had

24  an obligation to have a separate "prompt or feature" that specifically obtained her

25  affirmative consent to the automatic renewal.  (*E.g.*, *id.* at ¶ 19.)

26      But the ARL does not require such a "prompt or feature."  Rather, the ARL

27  states that it is unlawful for a business to charge a consumer's payment card for an

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

- 7 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1   auto-renewing product "without first obtaining the consumer's affirmative consent

2   to *the agreement containing the automatic renewal* offer terms or continuous

3   service offer terms . . . ." Cal. Bus. & Prof. Code § 17602(a)(2) (emphasis added).

4   As this statutory language shows, the affirmative consent requirement is not tied to

5   the automatic renewal alone, but to the entire *agreement* including the auto-

6   renewal provision. *See id.* The absence of Hall's wished-for "prompt or feature"

7   does not itself violate the ARL.

8          Given the statute's language, Hall does not plausibly allege a violation of the

9   ARL's "affirmative consent" requirement. Quite the opposite. The exhibits

10  attached to her complaint demonstrate compliance with the ARL. The very first

11  screen discloses the existence of the auto-renewal and states: "All magazine

12  subscriptions will automatically renew annually." (*E.g.*, Compl. Exhibit B, Page

13  ID #28.) As shown, a consumer cannot proceed with her purchase unless she

14  affirmatively clicks the "Checkout now" button directly below this automatic-

15  renewal disclosure, thus manifesting her intent and agreement to continue with the

16  purchase. (*Id.*) Not only does this part of the transaction capture the consumer's

17  affirmative consent to automatic renewal, but it would satisfy Hall's extra-statutory

18  "prompt or feature" requirement even if one did exist.

19         The remainder of Hall's exhibits also demonstrate compliance with the

20  ARL. The offer flow next states that "[b]y submitting your order you are agreeing

21  to our terms of service," which is followed by a disclosure box offset in bright

22  yellow that states, "**Automatic Renewal Notice**" and contains additional detail

23  about the automatic-renewal feature. (*Id.*, Page ID #329-31.) This disclosure is

24  presented *before* the final confirmation button. (*Id.*, Page ID #31-32; *see also*

25  Compl. Exhibit D, Page ID # 39 (displaying the "**Automatic Renewal Notice**"

26  directly above the "submit now" button.))

27         In sum, Hall's exhibits show that before the consumer can commit to receive

28

- 8 -

1   her magazines, she (1) is notified of the auto-renewal feature and must click

2   "Checkout now" to continue; (2) is alerted to and provided a link to terms and

3   conditions, and (3) receives additional detail in the auto-renewal notice before

4   reaching the final "submit order" button.  (Compl. Exhibit B, Page ID # 28-32.)

5       Hall's exhibits thus render implausible all her allegations of noncompliance

6   with the ARL's affirmative-consent requirement.  *See Daniels-Hall v. Nat'l Educ.*

7   *Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not . . . required to accept as

8   true allegations that contradict exhibits attached to the [c]omplaint[.]"); *Williams v.*

9   *Kidiley,* No. EDCV 12-2272-AG RNB, 2013 WL 6247972, at *2 (C.D. Cal. Dec.

10  3, 2013) ("[W]hen documents contain statements that contradict allegations in a

11  complaint, the documents control and a court need not 'accept as true allegations

12  that contradict matters properly subject to judicial notice or by exhibit.'" (quoting

13  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)), *aff'd*, 588

14  F. App'x 658 (9th Cir. 2014).

15      To be sure, Hall's complaint recites other requirements of the ARL and

16  baldly claims that defendants "failed" to satisfy them, *e.g.*, Compl. ¶¶ 2, 14, 29, but

17  it contains no factual allegations to support these conclusory assertions.  For

18  example, parroting the ARL, Hall alleges that defendants violated the ARL by

19  failing "to present the automatic renewal offer terms . . . in visual proximity to the

20  request for consent to the offer . . . ."  (*E.g., id.* ¶¶ 2(1), 34(i).)  And she alleges that

21  defendants "fail[ed] to provide an acknowledgement that included the automatic

22  renewal . . . terms."  (*Id.* ¶ 2(3).)  But there are no factual allegations—such as

23  whether Hall received an acknowledgment and what it said—supporting these

24  conclusory allegations.  And Hall's exhibits largely contradict these claims.

25      Because these allegations (and her other ARL-related allegations) merely

26  "recite[] the statutory language setting forth the elements" of the ARL and then

27  "slavishly repeat[] the statutory language as the purported factual allegations," they

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

do not state valid claims. *Deleon v. Time Warner Cable LLC*, No. CV 09-2438 AG RNBX, 2009 WL 9426145, at *3 (C.D. Cal. July 17, 2009) (Guilford, J.); *Lucchesi v. Bank of America*, No. SACV 19-00012, 2019 WL 1601391, at *2 (C.D. Cal. Feb. 25, 2019) (Guilford, J.) ("[T]he assumption of truth doesn't apply to legal conclusions.").

Finally, to the extent Hall alleges that defendants failed to offer her a way to cancel online when she subscribed to People Magazine (Compl. ¶¶ 2(4), 29(5)), she is seeking to enforce an obligation that did not exist in 2017, when she says she subscribed. (*Id.* ¶ 17.) The requirement for an online cancellation method did not come into effect until July 1, 2018. *Compare* Cal. Bus. & Prof. Code § 17602 (2018) (effective July 1, 2018) *with* Cal. Bus. & Prof. Code § 17602 (2010) (repealed effective Jan. 1, 2019 by 2017 Cal SB 313). Thus, there was no requirement for an online cancellation when Hall allegedly ordered, and defendants' alleged failure to offer one cannot constitute a violation of the ARL or support her other claims.

## B. Hall's UCL Claim (Count I) Also Fails Because She Lacks Standing.

The UCL prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. As explained above, Hall's UCL claim fails (as do her others) because she does not plausibly plead facts supporting any violation of the ARL. Separate and apart from that, Hall's UCL claim fails because she lacks standing to bring it. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322, 326 (2011) (limiting ARL's private right of action to a "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition").

To establish standing to assert a UCL claim, Hall must allege (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) . . . that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 322.  "A plaintiff fails to satisfy this causation requirement if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'"  *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017) (quoting *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007)).

Because Hall does not allege that she was deceived or misled by the automatic-renewal notice or information defendants allegedly provided her, she must allege at least "but for" causation to establish standing under the UCL. *Ingalls v. Spotify USA, Inc*., No. C 16-03533 WHA, 2017 WL 3021037, at *4 (N.D. Cal. July 17, 2017) (Where claim does not sound in misrepresentation, the ARL requires "but for" causation—a plaintiff must show "that, but for the alleged wrongdoing, he would not have been harmed.").

Even if Hall had plausibly alleged that defendants' automatic-renewal disclosure was misleading or deceiving (she did not), to have standing, she still must have alleged that she relied on the alleged misrepresentation.  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 n.17 (2009)); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007)); *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1211 (N.D. Cal. 2017) (plaintiff failed to establish reliance on misleading label when he stated at deposition that he had never noticed label before purchasing product).

In sum, Hall must allege that the allegedly noncompliant automatic-renewal disclosure caused her to order People when she otherwise would not have.  *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 857 (2008), *as modified* (Jan. 28, 2008)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1   (affirming dismissal of complaint because plaintiff failed to allege that the alleged

2   acts of unfair competition caused or induced him to take any particular action that

3   he would not otherwise have taken).

4         Hall makes no such allegations.  She does not allege that she would not have

5   purchased her subscription if the automatic renewal terms had been presented in a

6   way that (in her view) did comply with the ARL.  Nor does she allege that but for

7   the alleged violation, she would not have purchased her subscription to People.

8   This is fatal to her claim.  Without an allegation that a compliant automatic-

9   renewal notice would have led her to take a different action, she lacks standing

10   under the UCL because any noncompliance in the notice did not cause her an

11   economic injury.  *Roz v. Nestle Waters N. Am., Inc.*, No. 2:16-cv-04418-SVW-

12   JEM, 2017 WL 6942661, at *4 (C.D. Cal. Dec. 6, 2017) (UCL's causation

13   requirement in context of alleged ARL violation demands that plaintiff plead and

14   prove that defendants' "nondisclosure was an immediate cause of the plaintiff's

15   injury-producing conduct" (citation omitted)).

16         What is more, Hall fails to allege that she did not know her subscription

17   would automatically renew; nor could she plausibly do so given the exhibits

18   attached to her complaint and discussed above.  She also does not allege that had

19   defendants offered a "prompt or feature" to express specific consent to automatic

20   renewal, she would not have clicked on it and purchased her subscription.  Again,

21   the number of affirmative steps she took to purchase her subscription *after* being

22   informed that it would automatically renew would make implausible any such

23   allegation.  Finally, Hall does not allege that if not for any other ARL violation,

24   she would not have made the People magazine purchase.

25         Because plaintiff lacks standing, plaintiff's UCL claim must be dismissed.

26   *Hall*, 158 Cal. App. 4th at 857 (affirming grant of judgment on the pleadings where

27   plaintiff failed to allege causation and therefore lacked standing to bring UCL

28

- 12 -

claim); *see also Kissel v. Omega Nat. Sci., Inc.*, No. CV 16-2770-GW SKX, 2016 WL 9019613, at \*3 (C.D. Cal. Aug. 22, 2016) (complaint failed to satisfy *Spokeo* standing "because it raise[d] no allegations regarding how Plaintiff purportedly suffered injury from Defendant's failure to provide the [ARL] required acknowledgment" where plaintiff failed to allege she would have done something differently).

## C.   Hall's Section 496 Claim (Count II) Fails for Additional Reasons.

Hall's claim under California Penal Code § 496, titled "Receiving stolen property," is a convoluted one.  She posits that (i) because defendants allegedly violated the ARL, her magazine subscription was an unconditional gift, and (ii) because her subscription was legally an unconditional gift, defendants created the "false pretense" that she was obligated to pay for magazines that she ordered and received, and (iii) defendants' charging her credit card for the subscription therefore constitutes theft by false premise, and therefore receipt of stolen property under § 496.  (Compl. ¶¶ 49-54.)  In addition to the facial implausibility of Hall's ARL allegations discussed above, her § 496 claim fails for other reasons and should be dismissed.

*First*, Hall does not allege that defendants had a specific intent to defraud. To state a § 496 claim for theft by false pretense, Hall must allege both that defendants knew the property at issue (here, her money) was stolen and that defendants specifically intended to defraud her.  *MMM Holdings, Inc. v. Reich*, 21 Cal. App. 5th 167, 185, 230 Cal. Rptr. 3d 198, 212 (Ct. App. 2018) (summary judgment for defendant where plaintiff failed to prove specific intent for the theft offense or knowledge that the elements of a theft offense had occurred); *People v. Stuart*, 272 Cal. App. 2d 653, 656 (1969) (a violation of § 496 requires three elements: (1) property has been stolen; (2) the accused obtained, received,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

- 13 -

concealed, or withheld the property[1]; and (3) the accused knew the property was stolen).

Such specific intent to defraud is a critical element of this claim. *AdTrader, Inc. v. Google, LLC*, No. 17-cv-07082-BLF, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018) (dismissing section 496 claim with prejudice because, despite plaintiff's allegations of theft by false pretense, plaintiff did not allege that Google obtained stolen property by grand theft, petty theft, embezzlement or extortion); *People v. Hartley*, 248 Cal. App. 4th 620, 627 (2016) (intent in theft by false pretenses requires "something more than mere proof of nonperformance or actual falsity" because proof of such fraudulent intent prevents ordinary commercial defaults from becoming the subject of criminal prosecution).

Yet, Hall does not allege that defendants knew they were violating the ARL, which is the only way they could have known that the payments she voluntarily made were somehow "stolen" from her when they received them. Hall also does not allege that she did not receive the magazines she ordered, that she paid more than the price stated, or that defendants defrauded her in any other way, let alone allege that they specifically intended to defraud her. Rather, all that Hall alleges (incorrectly) is technical noncompliance with a civil statute. That is not enough under § 496.

*Second*, Hall has not alleged causation under § 496. Specifically, Hall's § 496 claim requires that she allege a false pretense caused her to make the payments she now claims defendants obtained by theft. *People v. Wooten*, 44 Cal. App. 4th 1834, 1842-43 (1996). But Hall fails to allege that she would not have purchased the magazine if defendants had not violated the requirements of the

---

[1] Although Hall does not claim she demanded return of any funds, she alleges that defendants refused such requests made by other, unnamed "consumers." (Compl. ¶ 53(4).)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

ARL.  This is fatal to her claim.  *Id.*; s*ee also People v. Lorenzo,* 64 Cal. App. 3d Supp. 43, 46-47 (App. Dep't Super Ct. 1976) (no theft by false pretenses where there was no reliance on defendant's conduct).[2]

*Third*, Hall failed to plead her § 496 with particularity under Rule 9(b).  Section 496 claims based on theft by false or fraudulent pretenses must be pleaded with particularity.  To meet this requirement, more than just the facts of the transaction must be alleged: "[a]verments of fraud must be accompanied by the 'who, when, where, and how' of the misconduct charged." *Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 WL 5930273, at *14-16 (N.D. Cal. Oct. 12, 2016) (quoting *Vess*, 317 F.3d at 1106).  Hall makes no such allegations here.

## D.  Hall's Conversion Claim (Count III) Also Fails For Additional Reasons.

To state a claim for conversion, Hall must plausibly allege (1) ownership or right to possession of property at time of alleged conversion; (2) defendants' conversion of property by a wrongful act; and (3) resulting damages to plaintiff. *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1452 (2013).  She fails to do so.

The only wrongful act Hall alleges is a violation of the ARL.  As set out above, that claim fails and Hall therefore has not alleged any wrongful act that could support a claim of conversion.

Further, a plaintiff's consent to the transfer at issue defeats a claim for conversion.  *See Klett v. Sec. Acceptance Co.*, 38 Cal. 2d 770, 789 (1952); *Driver*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

---

[2] Further, Hall's entire theory rests on the notion that the only false pretense or representation was that defendants' sales materials were in compliance with the ARL.  But even if this were true (it is not), such a representation would be one of law not fact as is required under § 496.  And Hall does not allege that she believed, let alone reasonably believed, that she would receive her magazines for years without paying for them.

- 15 -

1  *v. Acquisto*, 145 Cal. App. 2d 304, 308 (1956).  Whether or not a technical ARL

2  violation occurred here, Hall's complaint and exhibits affirmatively demonstrate

3  that she accepted defendants' offer of a magazine subscription at a set price and

4  agreed to pay for the magazines she ordered and received.

5      At most, Hall alleges that: (i) she was offered a magazine subscription at a

6  price on Instagram; (ii) she then clicked on the "checkout now" prompt; (iii) she

7  was then prompted to select a "payment method," chose credit card payment, and

8  entered her credit card information; (iv) she then, after reading multiple notices

9  that the subscription would automatically renew, clicked on the "submit order"

10  button, at which point she was charged the initial amount; and (v) a month before

11  being charged for the automatic renewal, she got a postcard reminding her of the

12  automatic renewal and the price and telling her how to cancel and avoid those

13  charges, but that she did not do so.  This series of voluntary acts by Hall constitute

14  consent to her purchase of a magazine subscription at the prices stated and bar her

15  claim for conversion.

16      **E.**    **Hall Cannot Plead Plausible Claims in an Amended Complaint.**

17      Although Hall has not pleaded any plausible claim, she may well be entitled

18  to try again, either as a matter of course in response to this motion, *see* Federal

19  Rule of Civil Procedure 15(a)(1)(B), or after dismissal with leave to amend, *e.g.*,

20  *Deleon*, 2009 WL 9426145, at *4.  But the Court should be skeptical of any such

21  amendment, particularly considering Hall's failure to allege that she was not aware

22  that her subscription would automatically renew, as well as the exhibits to her

23  complaint which render any such claim implausible.

24      In an amended complaint, Hall may attempt to fill these gaps with

25  conclusory, say-so allegations without factual detail, or vague assertions about

26  consumers other than herself.  But, then or now, such "threadbare recitals of a

27  cause of action's elements, supported by mere conclusory statements" are

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

insufficient to state valid claims. *Id.* at *3 (quoting *Iqbal*, 556 U.S. at 679); *see also AdTrader,* 2018 WL 3428525, at *9 (dismissing section 496 claim without leave to amend because plaintiff did not allege that Google obtained stolen property by grand theft, petty theft, embezzlement, or extortion). And Hall must plead facts about her own transaction sufficient to state valid claims, not make vague allegations about others. As this Court emphasized, while "class actions can require somewhat more generalized pleadings[,] . . . the [complaint] should allege more specific facts about Plaintiff [her]self, if not about the entire class." *Deleon*, 2009 WL 9426145 at *3.

## 4. <u>CONCLUSION</u>

Defendants respectfully request that the Court dismiss Hall's complaint in its entirety.

Respectfully submitted,

Dated: August 8, 2019 **BAKER & HOSTETLER LLP**

By: */s/ Kyle T. Cutts*

MICHAEL K. FARRELL (*pro hac vice*)
KYLE T. CUTTS (CA BAR NO. 257641)
DANTE A. MARINUCCI (*pro hac vice*)
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.621.0200
Facsimile: 216.696.0740

MARCUS S. MCCUTCHEON (CA BAR NO. 281444)
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Telephone: 714.754.6600
Facsimile: 714.754.6611

*Attorneys for Defendants*