**CARROLL, KELLY, TROTTER, FRANZEN,**
**McBRIDE & PEABODY**
**MICHAEL TROTTER (SBN 139034)**
mjtrotter@cktfmlaw.com
**DAVID P. PRUETT (SBN 155849)**
dpruett@cktfmlaw.com
**111 West Ocean Boulevard, 14th Floor**
**Post Office Box 22636**
**Long Beach, California 90801-5636**
**Telephone No. (562) 432-5855 / Facsimile No. (562) 432-8785**

**Attorneys for Plaintiff, LINDA HALL, in individually and on behalf of all others similarly situated**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| LINDA HALL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TIME, INC., a Delaware corporation; MEREDITY CORP., an Iowa corporation; and DOES 1-100, inclusive, <br><br> Defendants. | CASE NO.: 8:19-cv-1153-AG-ADs <br><br> Hon. Andrew J. Guilford <br><br> **PLAINTIFF'S *CORRECTED* OPPOSITION TO TIME, INC.'S AND MEREDITH CORP.'S MOTION TO DISMISS CLASS ACTION COMPLAINT** <br><br> **DATE:  September 23, 2019** <br> **TIME:  10:00 a.m.** <br> **DEPT:  Courtroom 10D** |

Inadvertently, as to Doc. 18, plaintiff failed to present a complete table of authorities and used a caption referring to the incorrect court.  Therefore, plaintiff requests the Court allow the filing of this corrected document curing those two problems.

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................... ....4

II.    DEFENDANTS' AUTOMATIC RENEWAL PROGRAM IS
       UNLAWFUL AND HALL'S UCL CLAIMS ARE PLAUSIBLE.... 5
       A. Failure to obtain explicit and Affirmative Consent ....... ... 5
              1.  The defendants' "checkout now": argument lacks
                  merit ...................................................... ....6
              2.  The defendants' "submit order" argument. ............. ....9
              3.  The defendants' "terms of service" argument............11
              4.  Defendants know how to obtain the consumers'
                  consent when defendants want to do so ................ ....12

III.   HALL HAS STANDING TO ASSERT HER UCL CLAIMS ... ....13

IV.    HALL'S PENAL CODE CLAIM IS PLAUSIBLE. ................. ....17
       A. Defendants' "specific intent" argument has no merit ......17
       B. The cases cited by defendants are unpersuasive ......... ...19
       C. Defendants' omit cases which support Hall's claim........19
       D. Defendants' Reliance Argument has not merit........... 20
       E. Hall's Penal Code Claim Can also be prosecuted as
          Larceny. ...................................................... .....22
       F. Defendants' argument that Hall's claim has not been
          pled with particularity has no merit ......................... ....23

V.     HALL'S CONVERSION CLAIM IS PLAUSIBLE. ................ ....24

VII    LEAVE TO AMEND IS REQUESTED................................26

# Table of Authorities

**Federal Cases** Page(s)

*Crull v. Gem Ins. Co.*
58 F.3d 1386 (9th Cir. 1995) .............................................. 24

*Daniel v. Ford Motor Co.*
806 F.3d 1217 (9th Cir. 2015) ........................................... 23

*In re Coca-Cola Prods. Mktg & Sales Practices Litig II, No.*
14-md-02555-JSW 2016 U.S. Dist. LEXIS 66266 at *12 (N.D.
Cal. May 19, 2016) ........................................................... 17

*Johnson v. City of Shelby,*
574 U.S. 10 (2014) ........................................................... 24

*Johnson v. Pluralsight, LLC,*
728 Fed. Appx. 674, (9th Cir. 2018) .................................. 15

*Kane v. Chobani, No. 12-CV-02425-LHK*
2013 WL 528925 (N.D. Cal. Sept. 19, 2013) ....................... 16

*Kissel v. Code 42 Software, Inc., No. SACV 15-1936-JLS*
(KESx) 2016 WL 7647691 at *8 (C.D. Cal. April 14, 2016) .. 16

*Lopez v. Stages of Beauty, LLC,*
307 F.Supp.3d 1058 (S.D. Cal. 2018) ................................ 18

*Nguyen v. Barnes & Noble, Inc.,*
763 F.3d 1171 (9th Cir. 2014) ...................................... 13, 14

*No. 19-CV-00066-LHK*
2019 WL 3231012 at *8-9 (N.D. Cal. July 18, 2019) ........... 20

*Odom v. Microsoft Corp.,*
486 F.3d 541 (9th Cir. 2007) ............................................ 25

*Price v. Synapse Group, Inc. No. 16-cv-01524-BAS-BLM*
2017 WL 3131700 at *9 (S.D. Cal. July 24, 2017) .............. 27

*Roz v. Nestle Waters N. Am., Inc. No. 2:16-cv-04418-SVW-JEM,*
2017 WL 6942661 (C.D. Cal. Dec. 6, 2017) ........................ 17

*Sateriale v. R.J. Reynolds Tobacco Co.,*
697 F.3d 777 (9th Cir. 2012) ............................................ 17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
806 F.2d 1393 (9th Cir. 1986) .......................................... 27

*Vess. V. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003) .......................................... 25

## State Cases

*Arthur Anderson v. Superior Court,*
  67 Cal.App.4th 1481 (1998) ................................................. 19

*Igauge v. Howard,*
  114 Cal.App.2d 122 (1952) ............................................... 27

*MMM Holdings, Inc. v. Reich,*
  21 Cal.App.5th 167 (2018) ................................................ 20

*People v. Brady,*
  275 Cal.App.2d 984 (1969) ............................................... 22

*People v. Davis*
  19 Cal.4th 301 (1998) ...................................................... 25

*People v. Hartley,*
  248 Cal.App.4th 620 (2016) ............................................. 20

*People v. Kaufman*
  17 Cal.App.5th 370 (2017) ............................................... 25

*People v. Randono,*
  32 Cal.App.3d 164 (1973) ................................................ 22

*People v. Shannon,*
  66 Cal.App.4th 649 (1998) .......................................... 24-25

*People v. Wooten,*
  44 Cal.App.4th 1834 (1996) ............................................ 22

*Perry v. Superior Court,*
  57 Cal.2d 276 (1962) ...................................................... 19

*Switzer v. Wood,*
  35 Cal.App.5th 116, 247 Cal.Rptr.3d 114 (2019) ............... 21

*Tavernier v. Maes,*
  242 Cal.App.2d 532 (1966) .............................................. 26

*Wade v. Southwest Bank,*
  211 Cal.App.2d 392 (1962) ................................................ 8

## State Statutes

Cal. Bus. & Prof. Code § 17600, ........................................ 6, 7

Cal. Bus. & Prof. Code § 17601 ................................. 10, 11, 13

Cal. Bus. & Prof. Code § 17601(b)(3) ............................... 10-11

Cal. Bus. & Prof. Code § 17602 ........................... 6, 7, 8, 15

Cal. Bus. & Prof. Code § 17602(a) ........................................ 8

Cal. Bus. & Prof. Code § section 17602(a)(1) ................. 9, 11, 12

Cal. Bus. & Prof. Code § 17602(a)(2) ......................................... 12

Cal. Bus. & Prof. Code § 17603 ............................. 13, 15, 17, 18

Cal. Penal Code § 484 .................................................... 23, 24

Cal. Penal Code § 496 ......................................7, 20, 21, 22, 23

CCP section 1013 .................................................................. 29

CCP section1013a, et seq. ................................................... 29

**Other**

2018 WL 3428525 ................................................................ 19

Fed. R. Civ. P. 9 ............................................................ 19, 25

Fed. R. Civ. P. 15 .............................................................. 27

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

# I.    INTRODUCTION

Defendants' attempt to equate the purchase of a magazine subscription to consent to automatic renewal of that subscription; which was the very practice that Cal. Business and Professions Code section 17602 was meant to outlaw.

Although the defendants' advertisements include statements regarding automatic renewals, those statements are inconspicuous and mixed in with other extraneous matters (such as offers for other subscriptions).  Although defendants' practices provided for a customer to subscribe to a magazine, the defendants did not include a means by which a customer was asked to consent to automatic renewal.

Before a business can automatically renew a customer's subscription to a magazine, the business must first provide the customer with an offer of automatic renewal in a "clear and conspicuous manner" and the business must then "request" and "obtain" the customer's "affirmative consent" to the clear and conspicuous offer.  (Bus. & Prof. Code § 17602(a)(1) & (2).

It is "unlawful" for the business to charge the customer's credit, debit or third-party account if the business does not also obtain the customer's "explicit" and "*affirmative consent*" to the automatic renewal offer – not just consent to purchase the subscription to begin with.  (Bus. & Prof. Code §§ 17600 & 17602(a)(2) (italics added).)  Additionally, an automatic renewal is "unlawful" if the automatic renewal offer was not presented in a "clear and conspicuous manner . . . and in visual proximity . . . to the request for consent to the offer."  (Bus. & Prof. Code § 17602(a)(1).)

1   Here, as established by allegations of Hall's complaint, and
2   reflected by shown by the exhibits – screen shots taken at the
3   time of drafting the complaint – Hall's "affirmative consent" to an
4   automatic renewal was not requested or obtained and her
5   account was therefore unlawfully debited for a renewal.

6   The defendants attack Hall's theory of the case arguing that
7   the automatic renewal offer is statutorily compliant and, in
8   essence, that Hall's consent to defendants' offer is implied or
9   inferred from her response to the defendants' offer of an initial
10   subscription.  There is no merit to such an argument because
11   "explicit" and "affirmative consent" is statutorily mandated.

12   Hall's complaint includes claims for violation of California's
13   Unfair Competition Law (UCL), violation of California Penal Code
14   section 496 and Conversion.

15   For reasons that will be further explained, the motion to
16   dismiss should be denied.

17   **II.   DEFENDANTS' AUTOMATIC RENEWAL PROGRAM IS**
18   **UNLAWFUL AND HALL'S UCL CLAIMS ARE PLAUSIBLE**

19   **A.   Failure to obtain explicit and Affirmative Consent**

20   In enacting the ARL, the Legislature's stated intent was to
21   "end the practice of ongoing charging" of credit or debit cards
22   "without the consumer's *explicit* consent."  (Bus. & Prof. Code §
23   17600, italics added.)  Accordingly, in addition to other
24   requirements, the ARL requires a business to "request" and
25   obtain the "consumer's *affirmative* consent to the agreement
26   containing the automatic renewal offer terms."  (Bus. & Prof.
27   Code § 17602(a)(1) & (2), italics added.)

28   ///

Here, the defendants' automatic renewal practice did not, and still does not, seek or require the customer's affirmative consent.  It is therefore "unlawful" pursuant to section 17602(a).

Defendants' argument that Hall's affirmative consent was obtained when Hall clicked the "Checkout Now" and "Submit Offer" buttons is, at its core, an argument based on implied or inferential consent contrary to the statutory intent and mandate of requesting and obtaining explicit and affirmative consent.  Defendants' argument disregards section 17602 and attempts to equate subscribing to a magazine and also agreeing to automatic renewal of that subscription.

Affirm means to "state positively" and explicit is "characterized by full, clear expression leaving nothing implied" with "no need for the reader or hearer to infer."  (Webster's New 3rd World Dictionary.)  By contrast, implicit is defined as "capable of being understood from something else, although unexpressed."  (*Ibid*.)  "*Express consent* is that directly given, either *viva voce* or in writing.  *Implied consent* is that manifested by signs, actions, or facts, or by inaction or silence, from which arises an inference that the consent has been given."  *Wade v. Southwest Bank,* 211 Cal.App.2d 392, 406 (1962), italics original.  [Citing Bouvier's Law Dictionary.]

### 1.   The defendants' "checkout now" argument lacks merit.

The automatic renewal offer and checkout now box appear as follows:

**X**        **People Magazine Subscription**

www.magazine.store

All magazine subscriptions will automatically renew annually.



**checkout** now

Defendants contend that this feature satisfies the requirements of the ARL because "a user such as Hall cannot proceed to purchase a subscription without affirmatively clicking the 'checkout now' button on this screen directly beneath the auto-renewal disclosure." (MTD p. 4:1-13.)

Their contention is wrong.

It is true that an initial subscription cannot be purchased without clicking the "checkout now" button but the "checkout now" button does not require the purchaser's explicit and affirmative consent to automatic renewals after the initial subscription ends as required by the ARL.

For example, the checkout now box does not tell the consumer affirmatively or explicitly that by clicking the checkout now box, they are consenting to automatic renewals.  And, the automatic renewal language above the checkout now box, does not include any language, feature or mechanism which requests and obtains the consumer's affirmative consent to automatic renewals.

Apart from the lack of affirmative consent, the "checkout now" box also fails to satisfy the requirements of the ARL for the seller to "request for consent" for automatic renewal, fails to satisfy the five elements of disclosure required, and is not "clear and conspicuous."

There is no "request for consent to the offer" as required by section 17602(a)(1).  "Checkout now" is not a request for consent

1   to the automatic renewal.  The checkout was for the purchase of
2   the magazine subscription itself.

3        The "automatic renewal offer terms" preceding the checkout
4   now box do not comply with the requirements of section 17601(b)
5   to for "Automatic renewal offer terms" to be "clear and
6   conspicuous disclosures" of five things that are missing from
7   defendants advertisement:

8            (1) That the subscription or purchasing agreement will
9        continue until the consumer cancels.

10           (2) The description of the cancellation policy that
11       applies to the offer.

12           (3) The recurring charges that will be charged to the
13       consumer's credit or debit card or payment account with a
14       third party as part of  the automatic renewal plan or
15       arrangement, and that the amount of the charge may
16       change, if that is the case, and the amount to which the
17       charge will change, if known.

18           (4) The length of the automatic renewal term or that
19       the service is continuous, unless the length of the term is
20       chosen by the consumer.

21           (5) The minimum purchase obligation, if any.

22       The language used by defendants ("All magazine
23   subscriptions will automatically renew annually") does not tell
24   the customer that the onus is on the customer to cancel and that
25   until the customer does so, the subscription will continue.  (§
26   17601(b)(1).)  Nor is there a "description of the cancellation
27   policy" (§ 17601(b)(2)) or the "recurring charges that will be
28   charged to the customer's credit or debit card . . . ."  (§

17601(b)(3)).  Nor is there an adequate description of the "length of the automatic renewal term . . . ." as required by section (b)(4) because the true "length" is that the subscription will continue forever unless cancelled by the customer.

The automatic renewal language used by defendants also violates the "clear and conspicuous" requirement in section 17602(a)(1) as those terms are defined in section 17601(c): "'Clear and conspicuous' or 'clearly and conspicuously' means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Here, the type is not larger than the surrounding text and, the color contrast is the "checkout now" box rather than the automatic renewal language.

### 2. The defendants' "submit order" argument lacks merit.

Defendants alternatively argue that the "Automatic Renewal Notice" satisfies the mandatory requirements of the ARL.  The "Notice" reads:

**X   People Magazine Subscription**

www.magazine .store

**Automatic Renewa** l **Notice:** After your initial term. your magazine subscriptions will automatically renew annually until you tell us to stop. You will receive a reminder of the renewal approximately 30 days in advance. Your credit card or method of payment will be charged at the time of purchase,

and before the start of each new annual term. at the rate stated in the notice. You can contact customer service or cancel. at any tim e.



## I.  REVIEW YOUR ORDER:

- 40 Issuesof PEOPLE (Print)                    $40.00

## II.    SUBTOTAŁ $40.00

This notice does not satisfy the requirements of the ARL for numerous reasons:

1.    There is no "request for consent to the offer" as required by section 17602(a)(1).

2.    There is no "affirmative consent" obtained as required by section 17602(a)(2).

3.    Even if the "submit offer" button could be construed as an affirmative consent mechanism, it would still violate the ARL because it is not "in visual proximity" to the defendants' "Notice." The "submit order" button is separated from the "Notice" by the prominent "SPECIAL INTRODUCTORY OFFER" and after that, "REVIEW YOUR ORDER."

4.    The notice does not describe the cancellation policy as required by section 17601(b)(2).  Omitted from the description is the defendants' policy on cancellation to keep the money for magazines delivered to the customer prior to cancellation contrary to the "unconditional gift" provision in section 17603.

5.    The notice is not clear and conspicuous as those terms are defined in section 17601(c).  The type is smaller than the typeset for the "SPECIAL INTRODUCTORY OFFER" and although the automatic renewal language is set against a yellow background, there is no contrasting color compared to the type size and color in the "SPECIAL INTRODUCTORY OFFER."

6.    The only request for affirmative consent requested in defendants' solicitation is contained in the "SPECIAL INTRODUCTORY OFFER" to purchase "AllRecipes" magazine which "Includes auto renewal," and requires the consumer to check a box to order the additional subscription and its automatic renewal.

### 3.    The defendants' "terms of service" argument.

Defendants argue "[t]hat the phrase 'terms of service' in "shaded blue" suggests that it hyperlinks to another page not included in Hall's exhibits."  (Doc. 16, 4:27-5:1-2.)

However, although defendants are undoubtedly aware of what their own hyperlink says, defendants do not say what information the hyperlink provides.

Further, defendants do not argue how, if at all, the hyperlink can defeat Hall's claims, perhaps because in *Nguyen v. Barnes & Noble, Inc.,* 763 F.3d 1171 (9th Cir. 2014), the Court concluded that browsewrap hyperlinks are unenforceable: "in

keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers, we therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on – without more – is insufficient to give rise to constructive notice."  *Id.* at 1178-1179 .

> ### 4. Defendants know how to obtain the consumers' consent when defendants want to do so.

Defendants' automatic renewal offer in the initial subscription offer is set up to automatically enroll the consumer in defendants' automatic renewal program without requesting or obtaining the consumers' affirmative consent.

The consumer has no way to acknowledge or specify I want in or I want out, unlike the other options throughout the defendants' initial subscription offer including the options to accept or reject by checkboxes "GIFT OPTIONS" and a "SPECIAL" offer to purchase an additional magazine which "Includes auto renewal."

Although unnecessary at this stage of the proceedings, a reasonable inference can be drawn that defendants do not want consumers to be able to opt out of an automatic renewal but, at the same time, defendants do not want to make an automatic renewal offer automatic because defendants then risk the consumer declining the initial subscription offer.

Therefore, contrary to the features associated with other options in the initial solicitation, the defendants ignore the requirements of the ARL and contend that the "checkout now" and "submit order" checkboxes are ARL compliant thinking, perhaps, their only downside may be to give the money back..

## III.  HALL HAS STANDING TO ASSERT HER UCL CLAIMS

Defendants argue that Hall does not have standing because she does not allege "but for" causation or reliance.  (Doc. 16, 10-13.)  The argument has no merit because Hall alleges a violation of only the unlawful or unfair prongs of the UCL; Hall does not allege a violation of the fraud prong of the UCL.

In *Johnson v. Pluralsight, LLC,* 728 Fed. Appx. 674, (9th Cir. 2018), the Court addressed the issue of standing to assert a violation of the ARL or UCL, concluding a plaintiff "sufficiently alleged an injury in fact,"  by "alleged monetary harm in the form of unlawfully retained subscriptions payments by Pluralsight," based upon violating § 17602's requirements, "including failing to provide information on cancellation policies prior to charging his credit card, Pluralsight transformed its subscriptions into unconditional gifts pursuant to section 17603."  *Id.* at 675-676. "Accordingly, Pluralsight was not entitled to charge customers such as Johnson for the service. Johnson has thus alleged a concrete economic injury as opposed to a bare procedural violation—that is both particularized and actual in nature.  [Citation.] This is sufficient to satisfy Article III's injury-in-fact requirements" (and of the UCL).   *Ibid.*

Accordingly, Hall has standing and, moreover, because Hall has alleged only unlawful and unfair conduct, she does not need

1    to allege causation or reliance.

2       Such reliance and causation arguments were raised in

3    *Kissel v. Code 42 Software, Inc.,* No. SACV 15-1936-JLS (KESx)

4    2016 WL 7647691 at *8 (C.D. Cal. April 14, 2016), explaining

5    that the "concept of reliance may not apply to UCL claims that do

6    *not* sound in fraud." *Ibid.*; citing, *inter alia*, *In re Tobacco II Cases,*

7    46 Cal.4th 298, 325 n.17 (2009). "[C]ourts have used a relaxed

8    causation standard where a UCL claim does not sound in fraud."

9    *Ibid.*

10      Further, a complaint, adequately alleges causation if a

11    plaintiff "alleges that she purchased a subscription plan from

12    Defendant during the Class Period but that Defendant failed to

13    (a) present the automatic renewal offer terms in a clear and

14    conspicuous manner, (b) obtain affirmative consent before

15    fulfilling the subscription, or (c) provide an acknowledgment as

16    required by law." Because the defendant charged and continues

17    to charge "without having first complied with the ARL," a plaintiff

18    has "suffered an economic injury as a result of Defendant's

19    unlawful or unfair practices as to its automatic renewal or

20    continuous service agreements. These allegations of causation

21    are sufficient to confer standing at the pleading stage." *Ibid.*;

22    citing *Backus v. Gen. Mills*, 122 F. Supp. 3d 909, 925-926 (N.D.

23    Cal. 2015).

24      Other district courts have reached the same conclusion:

25    *Kane v. Chobani*, No. 12-CV-02425-LHK 2013 WL 528925 (N.D.

26    Cal. Sept. 19, 2013). In reaching her conclusion in *Kane*, Judge

27    Koh cited *Durell* which is cited by defendants to support their

28    contention that reliance is required. (MTD p. 11:16-19.)

However, as explained by Judge Koh, reliance is not required unless the unlawful conduct is based on fraud and here it is based on the ARL.  (Accord, *In re Coca-Cola Prods. Mktg & Sales Practices Litig II*, No. 14-md-02555-JSW 2016 U.S. Dist. LEXIS 66266 at *12 (N.D. Cal. May 19, 2016) ["[A] plaintiff must establish reliance under the unlawful and unfair prongs where, as here, the gravamen of the claim is based on alleged misrepresentation.

As the Ninth Circuit Court of Appeal similarly observed in *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012): "Because the plaintiffs' UCL claim sounds in fraud, they are required to prove 'actual reliance on the allegedly deceptive or misleading statements' [citations] and that 'the misrepresentation was an immediate cause of [their] injury-producing conduct.' [Citation.]

In support of their standing argument, defendants cite *Roz v. Nestle Waters N. Am., Inc.* No. 2:16-cv-04418-SVW-JEM, 2017 WL 6942661, at *4 (C.D. Cal. Dec. 6, 2017) for the proposition that "UCL's causation requirement in context of alleged ARL violation demands that plaintiff plead and prove that defendants' 'nondisclosure was an immediate cause of the plaintiff's injury-producing conduct' (citation omitted)."  (MTD p. 12:11-16.)

However, defendants have misread *Roz*, which states that for a violation of § 17603, "when delivering a product to a consumer, that consumer has no obligation to pay the business for the product because it is deemed a gift.  If indeed the Defendant violated CAPRS, as is alleged in the SAC, the Plaintiffs were entitled to keep any products that were delivered as the

result of the unlawful automatic renewal plan, per § 17603.  The statute specifically places no conditions on these gifts, meaning that the product is considered a gift whether or not the Plaintiffs can show they did not actually want the product.  As a result, the Plaintiffs were entitled to keep the delivered water products and had no obligation to pay for them.  When the Defendant collected money from the Plaintiffs that it was not owed by charging their debit or credit cards, the Plaintiffs were undoubtedly injured and lost money as the result of the Defendant's actions.  Being forced to pay money for what should be considered a gift must qualify as an injury." *Ibid.*

The same result was reached in *Lopez v. Stages of Beauty, LLC*, 307 F.Supp.3d 1058, 1069-1070 (S.D. Cal. 2018): "Plaintiff has properly alleged that he suffered an injury in fact that was caused by Defendant's actions, and therefore meets the standing requirements of the UCL and Article III.  Plaintiff has alleged that all products received from Defendant in violation of the ARL constitute unconditional gifts and, therefore, Plaintiff seeks restitution in the amount of the subscription payments.  Under the UCL, '[t]he court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property . . . acquired by means of such unfair competition.'"

## IV.   HALL'S PENAL CODE CLAIM IS PLAUSIBLE.

### A.   Defendants' "specific intent" argument has no merit.

Defendants argue that "Hall does not allege that defendants knew they were violating the ARL, which is the only way they could have known that the payments she voluntarily made were

somehow 'stolen' from her when they received them."  (MTD p. 14:12-14.)

Defendants' argument is incorrect.  First, Hall does allege that the defendants knew they were violating the law.  (Cp. ¶ 52.)  Second, intent to defraud "'may be and usually must be, inferred circumstantially.' [Citation.]"  *Perry v. Superior Court,* 57 Cal.2d 276, 285 (1962).  Third, "intent [and] knowledge . . . may be alleged generally."  Fed. R. Civ. P. 9(b).  And fourth, Hall did not need to allege defendants "knew they were violating the ARL . . . ."  "It was established long ago that ignorance of the law does not excuse one from the consequences of the law."  *Arthur Anderson v. Superior Court,* 67 Cal.App.4th 1481, 1506-1507 (1998).

Hall has alleged that defendants had actual or constructive knowledge of the ARL and despite their knowledge, defendants both obtained, and in some cases also refused to return, money that was unlawfully obtained.

**B.  The cases cited by defendants are unpersuasive.**

*Ad Trader, Inc. v. Google, LLC* does not defeat Hall's claim because defendants do not address the court's entire analysis, which observed that while "receiving money through false misrepresentation may constitute theft," that Google had avoided such liability for other reasons, as it "received advertisement fees based on advertisement impressions" and there was "no allegation that Google fabricated the number of impressions, and Plaintiffs do not represent that they rely on such a theory."  *Id.,* 17-CV-07082-BLF 2018 WL 3428525, at *9, italics added (N.D. Cal. July 13, 2018).

Here, unlike in Google, defendants did not lawfully receive money pursuant to a lawful mutual agreement. The automatic renewal was unlawful at inception.

*MMM Holdings, Inc. v. Reich*, 21 Cal.App.5th 167 (2018) also fails to support defendants' argument. MMM Holdings sued attorney Reich for distributing documents obtained in qui tam litigation to other attorneys for their use in related cases. There was no unlawful conduct pursuant to a statute or false pretense employed to obtain the documents.

And last, *People v. Hartley*, 248 Cal.App.4th 620, 627 (2016) does not assist defendants because, as explained therein, in determining whether "a false pretense was made" the 'circumstances connected with the transaction [and] the entire conduct of the defendant . . . may be looked to . . . .' [Citation.]"

Here, looking at the entire conduct of the defendants, Hall has pled a plausible claim that defendants, knowing their conduct was unlawful, put their customers into automatic renewals without their consent, unlawfully debited their accounts and, in some cases, refused to return their money, all under the unlawful pretense that the money was lawfully owed.

**C.    Defendants omit cases which support Hall's claim.**

In *Allure Labs, Inc. v. Markushevska* (2019) No. 19-CV-00066-LHK 2019 WL 3231012 at *8-9 (N.D. Cal. July 18, 2019) the court concluded that a claim for civil theft could be based on "falsified invoices," and liability under Cal. Penal Code section 496(a): "Every single California case this Court has reviewed interprets § 496(a) to require nothing more than the following three elements be met to establish a violation of § 496(a): "(a) the

property was stolen, and (b) the defendant was in possession of it, (c) knowing it was stolen." "Moreover, as to § 496(c), the California Court of Appeal explicitly held that "the language of section 496(c) is clear and unambiguous." *Switzer v. Wood*, 35 Cal.App.5th 116, 126, 247 Cal.Rptr.3d 114 (2019). "All that is required for civil liability to attach under section 496(c), including entitlement to treble damages, is that a 'violation' of subdivision (a) . . . of section 496 is found to have occurred." *Id.* at 121. "A violation may be found to have occurred if the person engaged in the conduct described in the statute" under § 496(a). *Id.*

*Switzer v. Woods,* 35 Cal.App.5th 116 (2019), discusses *Allure Labs,* concluding: "The language of section 496(c) is clear and unambiguous.  All that is required for civil liability to attach under section 496(c), including entitlement to treble damages, is that a 'violation' of subdivision (a) or (b) of section 496 is found to have occurred.  [Citation.]  A violation may be found to have occurred if the person engaged in the conduct described in the statute.  [Citations.]  While section 496(a) covers a spectrum of impermissible activity relating to stolen property, the elements required to show a violation of section 496(a) are simply that (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." *Id.* at 126-128, 130.

### D.    Defendants' Reliance Argument has no Merit

Defendants' reliance argument is incorrect.  (Doc. 16, 14:20-24, 15:1-3.)

First, as the authorities in the preceding section show, reliance is not one of the three elements required to assert a claim of civil theft.  Further, "[t]he crime of theft by false pretenses is complete when, by means of such false pretenses, the fraud intended is consummated by obtaining the property sought . . . ."  *People v. Brady,* 275 Cal.App.2d 984, 995 (1969).  Here, the fraud intended was to obtain money unlawfully by violating the ARL and the fraud was complete when Hall's account was debited.

Second, as explained in *People v. Wooten,* 44 Cal.App.4th 1834, 1843 (1996) (MTD p. 14:22-23), "[r]eliance may be inferred from all the circumstances" and as further explained in *People v. Randono,* 32 Cal.App.3d 164, 174 (1973), the false pretense may consist of any act, word, symbol, or token calculated and intended to deceive.  It may be either express or implied from words or conduct.  [Citations.]

Third, defendants misunderstand Hall's claim.  Defendants argue that "Hall fails to allege that she would not have purchased the magazine if defendants had not violated the requirements of the ARL.  This is fatal to her claim."  (MTD p. 14:23-24, 15:1.)

Defendants are mixing apples and oranges.  Hall wanted the subscription to People Magazine.  That is why she ordered it and allowed defendants to debit her account for $40.  Hall's claim is not based on the initial subscription for $40.  Hall's claim is based upon the unlawful automatic renewal perpetrated through the initial subscription agreement.

As pled, Hall plausibly alleges that defendants obtained her property in a "manner constituting theft" under section 496(a) as

1  the term theft is ordinarily understood and as the term is
2  described in Penal Code section 484.

3    Here, the complaint alleges a scheme based on the
4  defendants' omission of a request for the consumer's consent to
5  an automatic renewal coupled with the defendants' knowledge
6  (also undisclosed to the consumer) that defendants could not
7  lawfully debit the consumer's account for the automatic renewal.

8    It can be reasonably be inferred that consumers relied on
9  defendants' false representations when defendants refused to
10  provide a full refund upon cancellation and it can reasonably be
11  inferred that when consumers hit the "submit order" button, they
12  were relying upon defendants' representation that they were
13  ordering only the initial subscription because, immediately above
14  the submit order button, the defendants offer says, in bold print,
15  "REVIEW YOUR ORDER: 40 Issues of PEOPLE (Print) $40.00."
16  Nowhere does the defendants' offer say that by submitting your
17  order you are also ordering or agreeing to an automatic renewal.

18    Further, with respect to the omission of the request for
19  consent, as explained in *Daniel v. Ford Motor Co.* 806 F.3d 1217,
20  1225 (9th Cir. 2015) "[t]hat one would have behaved differently
21  can be presumed, or at least inferred, when the omission is
22  material."  Here, the defendants' offer was unlawful and therefore
23  certainly material.

24    **E.** **Hall's Penal Code Claim Can also be prosecuted as**
25     **Larceny.**

26    Penal Code 496 is a theft statute which includes not only
27  theft by false pretense but also theft by larceny or embezzlement.

28    Here, Hall can assert a claim of theft based on larceny as

well as theft by false pretenses.

Hall acknowledges that her second cause of action is styled as a claim for theft by false and fraudulent representations or pretense.  Compl. p. 13:20-21.

However, the "theory of the pleadings" doctrine (under which a plaintiff must succeed on theories pleaded in the complaint, or not at all) has been abolished by the Federal Rules. The Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby,* 574 U.S. 10, 11 (2014). "The [defendant's] assumption that, under the Federal Rules of Civil Procedure, summary judgment should be entered against a plaintiff simply because the plaintiff's lawyer has misconceived the proper legal theory of the claim at the pleadings stage, even if the plaintiff is entitled to relief on some other legal theory, we disagree with that assumption." *Crull v. Gem Ins. Co.* 58 F.3d 1386, 1391 (9th Cir. 1995).

"Theft, of which [appellant] was convicted, is the unlawful taking of another's property.  (§ 484; [citation].)  The crime includes larceny, embezzlement, larceny by trick, and theft by false pretenses.  [Citations, fn. omitted.]  Larceny, larceny by trick, and embezzlement involve taking another's personal property from the owner's possession, without the owner's consent, with the intent to deprive the owner permanently of the property.  [Citations.]  Theft by false pretenses does not require that the defendant take the property; it requires that the defendant use false pretenses to induce the other to give the property to him.  [Citation.]" *People v. Shannon*, 66 Cal.App.4th

649, 653-654 (1998).

Here, defendants did not obtain Hall's lawful consent to take her money and a claim for larceny provides additional support for her claim under the theft statute.  *People v. Edwards,* 72 Cal.App.102, 114-115 (1925) [conversion of money tantamount to asportation]; *People v. Davis* 19 Cal.4th 301, 307 (1998) ["intent to steal for conviction of larceny is an intent to deprive the owner permanently of possession of the property."] *People v. Kaufman* 17 Cal.App.5th 370, 382-383 (2017) ["'The taking of money can constitute larceny' [citation]."

> ### F.   Defendants' argument that Hall's claim has not been pled with particularity has no merit.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R.  Civ. P. 9(b).  To plead fraud with particularly, the pleader must state the time, place, and specific content of the false representations.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  The allegations "must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Vess. V. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud.  *Odom*, 486 F.3d at 553.

Defendants argue that "fraud must be accompanied by the who, when, where and how of the misconduct charged. [Citation.]  Hall makes no such allegations here."  (MTD p. 15:7-11.)

1    The argument has no merit.

2    Hall has alleged how the defendants market the

3    subscription, the role of each defendant, when the subscriptions

4    were marketed to Hall, where they were marketed (California) and

5    why the automatic renewals, account debitures, and pretense

6    that the money is a lawful debt and in some cases the

7    defendants' refusal to return the money constitutes unlawful

8    conduct.  Based on these allegations and defendants' knowledge

9    of their own product, they are able "to prepare an adequate

10   answer."

11   **V.   HALL'S CONVERSION CLAIM IS PLAUSIBLE.**

12   Defendants argue that Hall's conversion claim fails because

13   the defendants did not violate the ARL and "[f]urther, plaintiff's

14   consent to the transfer at issue defeats a claim for conversion."

15   (MTD p. 15:19-23.)

16   The argument lacks merit because Hall never consented to

17   the automatic renewal and she therefore never consented to the

18   withdrawal of funds from her bank account as part of the

19   defendants' automatic renewal program.  As previously argued,

20   there was no "request for consent" or "affirmative consent" as

21   required by the ARL and, therefore, Hall did not consent to the

22   withdrawal of her funds.  As explained in *Tavernier v. Maes,* 242

23   Cal.App.2d 532, 552 (1966), consent is not a defense to a claim

24   for conversion unless it is a "lawful consent."  Here, there was no

25   lawful consent.

26   Defendants also argue that Hall never requested the return

27   of her money but defendants ignore the fact that Hall did not

28   need to demand the return of her money because the

subscriptions were an unconditional gift for which no money was owed.  Further, "A demand for return of property is not a condition precedent to institution of the action when the property was originally acquired by a tort . . . ."  *Igauge v. Howard,* 114 Cal.App.2d 122, 127 (1952).

As explained in *Price v. Synapse Group, Inc.* No. 16-cv-01524-BAS-BLM 2017 WL 3131700 at *9 (S.D. Cal. July 24, 2017), a claim for conversion exists in an ARL case when, as here, a plaintiff alleges a "wrongful disposition of money" from their "accounts."

## VI.   LEAVE TO AMEND IS REQUESTED

Hall contends her claims are adequately pled and plausible. If not, she requests leave to amend.

As a general rule, a court should freely give leave to amend a complaint that has been dismissed.  Fed. R. Civ. P. 15(a).  But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).


DATED:  June 7, 2019                     CARROLL, KELLY, TROTTER,
                                         FRANZEN, McBRIDE & PEABODY


                                         By: _____
                                         MICHAEL TROTTER
                                         DAVID P. PRUETT
                                         Attorneys for Plaintiff,
                                         LINDA HALL, individually and
                                         behalf of all others similarly situated

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Post Office Box 22636, Long Beach, CA 90801-5636.  On September 5, 2019, I served a true and correct copy of the following document on the attached list of interested parties:

### PLAINTIFF'S *CORRECTED* OPPOSITION TO TIME, INC.'S AND MEREDITH CORP.'S MOTION TO DISMISS CLASS ACTION COMPLAINT

☐   **By United States Mail (CCP §§1013a, et seq.):** I enclosed said document(s) in a sealed envelope or package to each addressee. I placed the envelope for collection and mailing, following our ordinary business practices. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, with postage fully prepaid.

☐   **By Overnight Delivery/Express Mail (CCP §§1013(c)(d), et seq.):** I enclosed said document(s) in a sealed envelope or package provided by an overnight delivery carrier to each addressee. I placed the envelope or package, delivery fees paid for, for collection and overnight delivery at an office or at a regularly utilized drop box maintained by the express service carrier at 111 West Ocean Boulevard, Long Beach, California.

XX   **By Electronic Transmission**: I caused the document(s) to be sent from e-mail address ocalder@cktfmlaw.com to each addressee's email address as set forth on the above service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed on September 5, 2019, at Long Beach, California.

*/s/ Ofelia I. Calder*
OFELIA I. CALDER

## Proof of Service Mailing List

Re: *Hall v. Time, Inc., et al.*
Case No.: 8:19-cv-1153-AG-ADs


Michael K. Farrell
Kyle Cutts
Baker Hostetler
Key Tower
127 Public Square, #2000
Cleveland, OH  44114-1214
(216) 621.0200 / Main
(216) 696.0740 / Fax
MFarrell@bakerlaw.com
kcutts@bakerlaw.com
**Attorneys for Defendants,**
**Time, Inc. and Meredith Corp.**