1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CARROLL, KELLY, TROTTER, FRANZEN, McBRIDE & PEABODY**
**MICHAEL TROTTER (SBN 139034)**
mitrotter@cktfmlaw.com
**DAVID P. PRUETT (SBN 155849)**
dppruett@cktfmlaw.com
**111 West Ocean Boulevard, 14th Floor**
**Post Office Box 22636**
**Long Beach, California 90801-5636**
**Telephone No. (562) 432-5855 / Facsimile No. (562) 432-8785**

**Attorneys for Plaintiff, LINDA HALL, individually and**
**on behalf of all others similarly situated**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA HALL, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>TIME, INC., a Delaware corporation; MEREDITH CORP., an Iowa corporation; and DOES 1-100, inclusive<br><br>　　　　　　　Defendants. | CASE NO.:  8:19-cv-1153-AG-Ads<br><br>**FIRST AMENDED COMPLAINT (CLASS ACTION) FOR:**<br><br>**1.　　VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUSINESS AND PROFESSIONS CODE §§ 17200-17204);**<br><br>**2.　　VIOLATIONS OF CALIFORNIA PENAL CODE § 496 (THEFT);**<br><br>**3　　CONVERSION**<br><br>ASSIGNED FOR ALL PURPOSES TO JUDGE:  ANDREW J. GUILFORD<br>DEPARTMENT:  10D |

Plaintiff Linda Hall ("Plaintiff"), on behalf of herself and all others similarly situated, alleges:

**INTRODUCTION & OVERVIEW OF CLAIMS**

1.　　Plaintiff brings this class action on behalf of herself and a class of others similarly situated consisting of all persons in California who, within the applicable statute of limitations, purchased magazine subscriptions sold or

marketed by Defendants and were automatically enrolled for future magazine subscriptions without their consent ("Class Members").  Plaintiff alleges claims for (1) violations of California's Unfair Competition Law, California Business and Professions Code section 17200, et seq. ("UCL"), based on Defendants' violation of California's Automatic Renewal Law, California Business and Professions Code section 17600, et seq. ("ARL"), (2) violations of California Penal Code section 496, and (3) conversion.

2.     Aiming to protect consumers, the ARL aims to end the practice of ongoing charges without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service, by imposing requirements for presentation of "automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer," "obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms," and providing "an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer."

3.     During the Class Period, Defendants made automatic renewal or continuous service offers to consumers in California and in doing so, violated the ARL as follows:

a)     By failing, at the time of making the automatic renewal or continuous service offers, to present the automatic renewal offer terms or continuous service offer terms in *visual proximity* to the request for consent to the offer before the subscription or purchasing agreement was fulfilled in violation of section 17602(a)(l);

b)     By charging Plaintiffs and Class Members' credit or debit cards, or third-party accounts *without first obtaining their affirmative consent*

to the agreement containing the automatic renewal offer terms or continuous service offer terms in violation of section 17602(a)(2);

c)   By failing to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information explaining how to cancel in a manner that is capable of being retained by the consumer in violation of section 17602(a)(3); and

d)   By failing to provide online purchasers with the ability to terminate the purchases online.

4.   Based upon Defendants' violations of the ARL, all magazines sent to Plaintiff and Class Members under the automatic renewal or continuous service agreements are deemed to be an unconditional gift without any obligation whatsoever on the part of Plaintiff and Class Members pursuant to section 17603 of the ARL.

5.   Based upon Defendants' violations of the ARL Plaintiff, on behalf of herself and Class Members, seek damages, restitution, restitutionary disgorgement, injunctive relief, equitable relief, treble damages, punitive damages and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

6.   This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. section 1332 as amended by the Class Action Fairness Act of 2005 because the amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs, and is a class action in which some members of the class are citizens of different states than Defendants. (28 U.S.C. §1332(d)(2)(A).)

7.   This Court has personal jurisdiction over Defendants because Defendants currently do business in this state.

8.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District.

# PARTIES

9.   Plaintiff is an individual who currently resides in the County of Orange, State of California

10.   Defendant Meredith Corporation ("Meredith") is, according to its website, https://www.meredith.com, the largest magazine company in the world. Meredith is an Iowa corporation with its headquarters in Des Moines, Iowa. Meredith publishes, markets and sells magazines and magazine subscriptions in the United States and California.

11.   Defendant Time, Inc. ("Time") is a Delaware corporation with its principal executive office and headquarters in New York and its principal office in the State of California located in Los Angeles, California. Time is a subsidiary of Meredith Corporation. Time publishes, markets and sells magazine subscriptions in the United States and California.

12.   The true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

13.   At all relevant times, each and every Defendant was acting as an agent, co-venturer, co-conspirator, partner or facilitator of the other Defendants and was acting within the course and/or scope of said relationship with the knowledge or consent of each of the Defendants.  The acts and/or omissions herein alleged were known to, or ratified by, each of the other Defendants.

## CALIFORNIA'S AUTOMATIC RENEWAL LAW

14.   The ARL became operative on December 1, 2010.  The Legislature's stated intent for enacting the ARL was to "end the practice of ongoing charges to consumers' credit or debit cards or third-party payment accounts without the

consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." (ARL § 17600.)

15. The ARL, at California Business and Professions Code section 17602(a) states:

(a) It shall be unlawful for any business that makes an automatic renewal offer or continuous service offer to a consumer in this state to do any of the following:

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

(2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If

the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

16.     Section 17601(a) defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of definite term for a subsequent term."

17.     Pursuant to section 17603: "In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer' s affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or products to the business."

## **FACTUAL BACKGROUND**

18.     Time publishes People Magazine and the "magazine store" is operated and controlled by Meredith.

19.     On or about 2017, Plaintiff received an Instagram regarding People Magazine, with a cluttered, chaotic presentation.

20.     Starting from the top of a scrolling website appeared the words, "People Magazine Subscription," beneath that, in a smaller font, was "www.magazinestore," followed under that with a slightly larger font of a logo presentation of the words "magazine store," with a graphic logo between those two words.    (Ex. B, 1-2; Exhs. A & B;  Exh. B is an enlargement of Exh. A and includes color contrasts not visible on Exh. A.)  This will be referred to as the

"Advertisement Page." (Ex. B, 1-2.)

21. Scrolling down the Advertisement Page, the web presentation continued below a red border, where appeared the subdued line with the words, "Home / Celebrity & Entertainment / PEOPLE," and underneath that appeared "PEOPLE," with a logo in a black parallelogram box, of "OFFICIAL STORE." (Exhibit B, 1-2.) Scrolling below that was a Facebook share logo, and depiction of five gold stars," with the words "64 reviews." (*Ibid.*) Scrolling below that appears an image of a purse or handbag, with a gold box, exclaiming "*FREE TOTE!*" (*Ibid.*) Scrolling down further, the webpage, without explanation, had a circle, with a bullet point inside it, implying it had been selected, stating only "$ 40.00 40 Issues," with the image of a gift box and the words "Gift Options Available" and "weekly print subscription," adjacent to a picture of an issue of People magazine. (*Ibid.*) Scrolling down from there, in small font unbolded type, the words "All magazine subscriptions will automatically renew annually." (*Ibid.*) That was followed by a prominent red oval button, with the words "checkout now." (*Ibid.*) Using a web browser to click that red button resulted in internet navigation away from the Advertisement Page, to a second internet page, which will be referred to as the "Checkout Page."

22. A subscription to People Magazine did not result from the use of the red button with the words "checkout now." (Ex. B, 1-2.) There is no information on the screen pertaining to the acceptance or rejection of the automatic renewal and there is no prompt or feature on the screen which operates to obtain the subscriber's affirmative consent to automatic renewals. (Exh. B p. 2.) Defendants' placement of the words "All magazine subscriptions will automatically renew annually" on the Advertisement Page failed to comply with the ARL for at least four additional reasons:

   a)   First, the words on the Advertisement Page "fail[ed] to present the automatic renewal offer terms or continuous service offer terms in a

clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and i*n visual proximity … to the request for consent to the offer*" in violation of subdivision (a)(1) of section 17602.  Because the "checkout now" button navigates away from the Advertisement Page to the Checkout Page, the automatic renewal language on that page was not (and still is not) "clear and conspicuous" nor in "visual proximity … to the request for consent to the offer," as that language was in fine print and was placed on an Advertisement Page from the offer ultimately presented on the separate Checkout Page.

b)     Second, the automatic renewal fine print of the Advertisement Page did not explain how the rate would change from an initial offer for 40 issues at a discounted price to an annual rate at an undiscounted price when automatically renewed, as required by subdivision (a)(2) of section 17602.

c)     Third, that fine print did not "include[] the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel" (nor did it provide such information "in a manner that is capable of being retained by the consumer"), in violation of subdivision (a)(3) of section 17602.

d)     Fourth, considering the Advertisement Page referred to a "Free Tote," the fine print regarding automatic renewal did not address that "free gift" and "disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods," the "Free Tote," in violation of subdivision (a)(3) of section 17602.

23.     As described, clicking on the "checkout now" prompt on the Advertisement Page navigates to a separate and different Checkout Page.  Exh. B, 3-6.)

24.     At the top of the Checkout Page, there is again at to the top of the screen of a scrolling website the words, "People Magazine Subscription," and beneath that, in a smaller font, "www.magazinestore."  (Exh. B, p. 3.)

25.     Scrolling below that, there is the centered word:

"**Checkout**"

Below that, the centered heading of:

"**SELECT PAYMENT METHOD**" Those headings lead to bullet point options for payment, with colorful graphics, for:

- o   Checkout with [PayPal logo]
- o   A bright yellow button for [amazon pay logo], with "USE YOUR AMAZON ACCOUNT; and
- o   [color logos for MasterCard, Visa, American Express and Discover cards]

That was followed by prompts to enter numbers for:

"CREDIT CARD NUMBER" and "CVV"

Below that appear pull down menus to select:

"MONTH" and "YEAR."

Below the prompts for payment information to be entered, there appears the fine print of:

"By submitting your order you are agreeing to our terms of service."  (*Ibid.*)

That statement regarding "terms of service," on its face, says nothing about automatic renewal.  (Exh. B, p. 3.)

26.     Scrolling down to the next section of the Checkout Page, the consumer encounters a red outline image of a gift box with a bow as part of a centered heading for:

**"GIFT OPTIONS"**

That was followed by check box options for:

☐ "I would like to give this as a gift"

☐ "I would like to give this as a gift and subscribe myself."

27.     Scrolling further down the Checkout Page leads to the heading of:

**"YOUR ORDER INFORMATION"**

That was followed by prompts to enter:

"EMAIL ADDRESS"

"FIRST NAME"; "LAST NAME"

"ADDRESS 1"

"ADDRESS 2"

"CITY"

"SELECT STATE" [pull down menu]

"ZIP CODE"

(Exh. B, p. 4.)

28.     Continuing to scroll down the Checkout Page, the heading is encountered for:

**"COUPON"**

"ENTER CODE" adjacent to black oval button to "apply"

(Exh. B, p. 4.)

29.     Continuing to scroll down the Checkout Screen, the webpage displays a pastel yellow box, with fine black print, the "Purported Annual Renewal Notice," stating:

Automatic Renewal Notice.  After your initial term your magazine subscription will automatically renew annually

until you tell us to stop.  You will receive a reminder of the renewal approximately 30 days in advance.   Your credit card or method of payment will be charged at the time of purchase and before the start of each new annual term at the rate stated in the notice.   You can contact customer service or cancel at any time.

(Exh. B, p. 5; referred to herein as "Purported Annual Renewal Notice.")

30.    Immediately following that, there is a garishly colorful, vivid, and attention-grabbing and attention-diverting, offer for another magazine subscription, with a picture of the cover of an issue of "allrecipes" magazine (with the headline of "It's Party Time," adjacent to a large circular presentation highlighting neon yellow words of:

"SPECIAL" [neon yellow on black background]

"INTRODUCTORY OFFER" [neon yellow on black background]

"Check this box to receive 1 year (6 issues of AllRecipes® for **just $3 more!**"

"Includes auto renewal"

(Exh. B, p. 5; referred to as "AllRecipes Special Offer.")

31.    The AllRecipes Special Offer was clearer and more conspicuous than the Purported Annual Renewal Notice.

32.    Scrolling down below the AllRecipes Special Offer, there is the heading:

"**REVIEW YOUR ORDER:**"

Below that appears:

"40 Issues of PEOPLE (Print)   $40.00"

"**SUBTOTAL: $40.00**"

(Exh. B, p. 5.)

33.    Scrolling further, a red oval button, with the inset words in white, appears:

>   "submit order"

Immediately below the bright red submit order button are pronounced logos for:

>   "digicert"
>
>   "Secure [lock image] Trusted"
>
>   Blue button ["click to verify"]

Adjacent to that, the logo for the Better Business Bureau, displaying:

>   [logo] "BBB" and "ACCREDITED BUSINESS"

Immediately below the red submit button, the digicert and BBB logos appears the following fine print:

>   "Welcome to Magazine.store, by submitting your order you'll be at the top of the list to receive our limited time deals, discounts and coupons via email on popular and trending titles! You can of course choose to stop receiving these email offers at any time."

34.    There is no information on the Checkout Page pertaining to the acceptance or rejection of the automatic renewal and there is no prompt or feature on the second screen which operates to obtain the subscriber's affirmative consent to automatic renewals.  (Exh. B, pp. 3-6.)

35.    Defendants' placement of words Purported Annual Renewal Notice (Exh. B, p. 5) on the Checkout Page failed to comply with the ARL for at least four additional reasons:

>   a)    First, because the Purported Annual Renewal Notice is followed by the AllRecipes Special Offer, it was not presented "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the

offer." Immediately following the Purported Annual Renewal Notice, the clearer and more conspicuous AllRecipes Special Offer appeared, with a check box inviting subscription to AllRecipes, not People Magazine. Also, the attention-grabbing logos following the bright red "submit order" button, for digicert and BBB, were relatively more clear and conspicuous than the Purported Annual Renewal Notice. Further, the fine print after those logos gave further information pertinent to the decision of whether to click the bright red "submit order button," even after that button appeared, suggesting that more information pertinent to the decision of whether to submit order was expected by defendants to be read there. Therefore, the Purported Annual Renewal Notice was not clear and conspicuous.

b)      Second, the AllRecipes Special Offer separated the Purported Annual Renewal Notice from "the request for consent to the offer" reflected by the bright red "submit order" button. Therefore, the Purported Annual Renewal Notice was not in "visual proximity" to "the request for consent to the offer," the bright red "submit order" button. For those reasons, the Purported Annual Renewal Notice "fail[ed] to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and i***n visual proximity … to the request for consent to the offer***" in violation of subdivision (a)(1) of section 17602.

c)      Third, the Purported Annual Renewal Notice did not "include[] the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel" (nor did it provide such information "in a manner that is capable of being

retained by the consumer"), in violation of subdivision (a)(3) of section 17602.

d)     Fourth, although the Purported Automatic Renewal Notice stated that a reminder of renewal would be sent approximately 30 days in advance, that statement failed to satisfy any requirements of Business and Professions Code section 17602, by failing at the time of the initial subscription agreement: (1) "to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer," with the request for consent to the offer being contained in Exhibit B (§ 17602(a)(1)); (2) obtain consent to charge the credit card or payment method provided at the time of offer by "first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time" (§ 17602(a)(2)); and (3) "to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services" (§ 17602(a)(3)).  A later "reminder" of renewal could not replace the prospective agreement to renewal, with the prospective protections, as required by the ARL.

e)    Fifth, the Purported Automatic Renewal Notice did not address the "Free Tote," mentioned on the Advertisement Page, and thereby failed to "disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods," the "Free Tote," in violation of subdivision (a)(3) of section 17602.

f)    Sixth, considering the foregoing deficiencies, the Purported Annual Renewal Notice of the Checkout Page did not "obtain[] the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time," prior to "[c]harge [to] the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service," as required by subdivision (a)(2) of section 17602.  Because there was inadequate disclosure of renewal, there was no authority to charge the consumer's card or other payment method for renewal.

36.    Plaintiff submitted her order for People Magazine and her account was debited for the initial subscription.

37.    In or about September of 2018, near the end of Plaintiff's initial subscription, Plaintiff received a postcard from the Defendants, the "Valued Customer Postcard."  Like an advertising postcard, the front side of the Valued Customer Postcard in bold or capitalized print and lively, contrasting colors, stated:

"Here's something to remember about your PEOPLE magazine service.

"Less time at the newsstand means more time enjoying your favorite magazine.  Subscriber information on reverse.

1    "GET HUGE SAVINGS off the newsstand!"

2    (Exh. C, p. 1.)

3    38.    The other side of the Valued Customer Postcard was filled with fine

4    print.  At the top-middle, it said:

5    "Thank you for being a valued customer.  We hope you have been

6    enjoying your magazine service, as your complete satisfaction is our

7    ultimate goal."

8    (Exh. C.)

9    39.    To the far left, the Valued Customer Postcard contained the

10   ambiguous heading of:

11   "Important Advance Notice For Subscribers"

12   (Exh. C.)

13   40.    Otherwise the fine print of the Valued Customer Postcard, under the

14   ambiguous heading of "Important Advance Notice For Subscribers" stated:

15   "We guarantee a hassle-free subscription.  You'll never miss an issue.

16   No renewal notices and no telemarketing calls.  We do the work for

17   you by automatically extending your subscription each year for as

18   long as you want your selections.

19   "Your service includes convenient home delivery and huge savings

20   off the newsstand price.

21   "We will send you a notice every year about your next subscription

22   period and rates.  We will send a notice that spells out: your low rate,

23   your number of issues and when your account will be charged.  If you

24   don't wish to continue, you can simply cancel before your new term

25   begins.

26   "We guarantee you outstanding savings.  As a Valued Subscriber,

27   enjoy substantial savings off the cover price.

28   (Exh. C.)

41.     Under the "Thank you for being a valued customer" greeting, down the middle, the fine print of the Valued Customer Postcard, stated:

> "For your convenience, we will continue to ensure that you don't receive extra unwanted mail - the multiple renewal notices that normally come with a subscription.

> "Your PEOPLE subscription will continue for the next term of issues using the account number you agreed to be billed.  You will be billed or charged $67.50 for a total of 54 issues, which will run from 12/10/18-11/26/19.  If you wish to discontinue, call 1-800-541-9000 by 10/2/18 and no charge will appear.  Cancel any time after you have been charged and receive a refund of unserved issues based on your total term of service.  As long as you are satisfied, your subscription will continue through our open-ended, customer-friendly subscription method - automatic renewal.  Of course, we will always send you a courtesy reminder before the start of a new term.  Remember, you can always look for the expiration date of your current term on your magazine label.

> "We hope you enjoy PEOPLE and look forward to serving you in the future.  Please keep this notice as a reminder for upcoming charges."

> (Exh. C, p. 2.)

42.     Buried within the fine print of the Valued Customer Postcard were the actual terms of renewal that had been unlawfully omitted from the initial subscription offer.   The Valued Customer Postcard could not retrospectively accomplish what defendants were obligated to do under the ARL at the time of the initial subscription.  The Valued Customer Postcard did not, and could not, remedy the failures to satisfy obligations owed at the time of the original subscription, such as the requirements of Business and Professions Code section 17602, which required at the time of the initial subscription agreement: (1) "to present the

automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer," with the request for consent to the offer being contained in Exhibit B (§ 17602(a)(1)); (2) obtain consent to charge the credit card or payment method provided at the time of offer by "first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time" (§ 17602(a)(2)); and (3) "to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services" (§ 17602(a)(3)).

43.   On October 14, 2018, Time debited Plaintiff's account in the amount of $67.50.   The point of sale on Plaintiff's bank account statement states: "TME*PEOPLE MAGAZINE" (spelling original) 800-541-9000 NY."   That violated Business and Professions Code section 17602(a)(2).

## DEFENDANTS' AUTOMATIC RENEWAL PROGRAM

44.   The automatic renewal program implemented by Defendants is a computerized program which operates uniformly in violation of California's automatic renewal law, as to all customers, for the reasons explained above.

## CLASS ACTION ALLEGATIONS

45.   Plaintiff brings this action, on behalf of herself and all others similarly situated, as a class action pursuant to Rule 23(a) of the Federal Rules of Civil

Procedure. The proposed Class (the "Class") that Plaintiff seeks to represent is composed of and defined as:

> **"All persons within California who, within the applicable statute of limitations period, purchased a subscription to any magazine published, marketed or sold by Defendants which included an 'Automatic Renewal' as defined by Business and Professions Code section 17601."**

46. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, assigns, individuals bound by any prior settlement, and any judge, justice, or judicial officer presiding over this matter.

47. This action is brought as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(l)-(4) and 23(b)(l)-(3). This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements of those provisions.

48. The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes the Class includes hundreds of thousands of members. Plaintiff alleges that the Class may be ascertained by the records maintained by Defendants. (Rule 23(a)(l).)

49. Common questions of fact and law exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

a)   Whether during the Class Period Defendants failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription was purchased and in visual proximity to the request for consent to the offer in violation of Cal. Bus. & Prof Code §17602(a)(l);

b)   Whether during the Class Period Defendants enrolled Plaintiff and Class Members in an automatic renewal or continuous service program without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2);

c)   Whether during the Class Period Defendants failed to provide an acknowledgement that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and Class Members, in violation of Cal. Bus. & Prof. Code § 17602(a)(3);

d)   Whether Plaintiff and the Class Members are entitled to restitution or disgorgement of money paid in accordance with the unconditional gift provision in section 17603;

e)   Whether Plaintiff and Class Members are entitled to restitution pursuant to the UCL;

f)   Whether Plaintiff and Class Members are entitled to injunctive relief under the UCL;

g)   Whether Plaintiff and Class Members are entitled to attorneys' fees and costs; and

h)   Whether Plaintiff and Class Members are entitled to punitive damages. (Rule 23(a)(2))

50.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained injury arising out of Defendants' common course of conduct. (Rule 23(a)(3).)

51.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions. (Rule 23(a)(4).)

52.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable and unduly burdensome.  Individualized litigation would also present the possibility of varying, inconsistent, or contradictory judgments and would delay and increase the expense to all parties and to the court system resulting from multiple trials of the same factual issues. (Rule 23(b)(3).)

53.     The prosecution of separate actions by thousands of individual Class members would create the risk of inconsistent or varying adjudications with respect to, among other things, the need for and the nature of proper notice, which Defendants must provide to all Class members. (Rule 23(b)(l)(A).)

54.     The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests. (Rule 23(b)(l)(B).)

55.     Defendants have acted or refused to act in respects generally applicable to the Class, thereby making appropriate final injunctive relief with regard to the members of the Class as a whole. (Rule 23(b)(2).

## FIRST CAUSE OF ACTION

## VIOLATION OF THE UNFAIR COMPETITION LAW

## (UNLAWFUL OR UNFAIR BUSINESS PRACTICES)

**(By Plaintiff, on her own behalf and on behalf of the**

**Class, against All Defendants)**

56.     Paragraphs 1-55 are alleged and incorporated herein by reference.

57.     During the Class Period, Defendants committed unlawful and/or unfair business acts or practices by violating sections 17602(a)(l), 17602(a)(2) and 17602(a)(3) of the ARL.

58.     Plaintiff has standing to pursue this claim because she suffered injury in fact and has lost money or property as a result of Defendants' action.  As alleged herein, when Defendants violated the ARL, future magazines shipped to Plaintiff pursuant to the automatic renewal were "deemed an unconditional gift" to Plaintiff by Defendants and Plaintiff was entitled to receive the magazines from Defendants "without any obligation whatsoever" pursuant to section 17604 of the ARL. Defendants violated section 17604 and Plaintiff lost money as a result of Defendants' unlawful or unfair conduct when Defendants debited Plaintiffs account.

59.     As a direct and proximate result of Defendants' unlawful and/or unfair business acts or practices described herein, Defendants have received, and continue to hold, unlawfully obtained money belonging to Plaintiff and Class Members in the form of payments made for subscriptions which were automatically renewed.

60.     Plaintiff and similarly-situated Class Members are entitled to restitution and disgorgement of all monies paid by Class Members under the automatic renewals during the Class period.

61.     Plaintiff and Class Members are entitled to injunctive relief enjoining Defendants from violating the ARL.

62.     Plaintiff has assumed the responsibility of enforcement of the laws and public policies specified herein by suing on behalf of herself and Class Members. Plaintiff's success in this action will enforce important rights affecting the public interest and an award of reasonable attorneys' fees is requested.

63.   Plaintiff, on behalf of herself and Class Members, requests relief as described in the Prayer for Relief.

## SECOND CAUSE OF ACTION

**VIOLATION OF THE CALIFORNIA PENAL CODE SECTION 496**

**(THEFT BY FALSE AND FRAUDULENT REPRESENTATION(S)**

**OR PRETENSE AND LARCENY)**

**(By Plaintiff, on her own behalf and on behalf of the**

**Class, against All Defendants)**

64.   Paragraphs 1-63 are alleged and incorporated herein by reference.

65.   Penal Code section 496 states in pertinent part:

"(a) Every person who . . . receives any property ... that has been obtained in any manner constituting theft . . . knowing the property to be so . . . obtained, or who withholds, or aids in. withholding any property from the owner, knowing the property to be so ... obtained, shall be punished [description of criminal punishments].

…

"(c) Any person who has been injured by a violation of subdivision ... may bring an action for three times the amount of actual damages ... costs of suit, and reasonable attorney's fees."

66.   Theft, as described in penal code section 484, subdivision (a) includes the following:

"Every person ... who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money ... is guilty of theft."

67.   Plaintiff alleges that her property and the property of class members was obtained by Defendants in a manner constituting theft or was withheld from

Plaintiff and the class members by Defendants with the knowledge that the property had been obtained in a manner constituting theft.

68. Defendants created, implemented and/or participated in a systematic and uniform scheme to obtain money by unlawful means through a series of unlawful acts based upon false representations or pretenses based upon the following allegations in their entirety or in part:

a)   Defendants unlawfully enrolled consumers in their automatic renewal program without requesting their consent or obtaining their affirmative consent in violation of section 17602 of the ARL;

b)   In furtherance of their violation of section 17602 of the ARL, Defendants created and implemented the false pretense to consumers that consumers were obligated to pay for all magazines shipped prior to cancellation contrary to section 17603 of the ARL which provides that all merchandise sold pursuant to an unlawful automatic renewal "shall for all purposes be deemed an unconditional gift to the consumer." (Italics added.);

c)   In furtherance of their violation of section 17602 of the ARL and in furtherance of and as part of their scheme to unlawfully enroll consumers in their automatic renewal program and to obtain money from consumers, Defendants debited or charged consumer accounts on the false pretense that consumers were validly enrolled in the Defendants' automatic renewal program and the consumer's enrollment in the automatic renewal program legally allowed Defendants to debit or charge their accounts;

d)   In furtherance of their violation of sections 17602 and 17603 of the ARL, Defendants refused to return money to consumers for merchandise shipped prior to cancellation based on the false pretense

that consumers were legally obligated to pay for merchandise shipped by Defendants prior to cancellation.

e)  Defendants' collection of money from consumers for merchandise shipped prior to the consumer's request for cancellation was a systematic practice applied uniformly to all consumers and was based upon the Defendants' uniform and false pretense to all consumers that Defendants were entitled to keep the money debited for magazines shipped prior to cancellation, even though Defendants knew that upon cancellation, all consumers were entitled to a complete refund of all monies pursuant to the ARL.

f)  Those consumers who requested cancellation and were not given a full refund are an identifiable sub-class which satisfies the numerosity, typicality, adequacy, predominance and superiority requirements of the Federal Rules of Civil Procedure.

69.  As a result of Defendants' unlawful conduct, Plaintiff and class members who did not cancel their subscriptions prior to Defendants' shipment of merchandise were damaged by their loss of money obtained or withheld by Defendants in furtherance of a scheme and artifice to obtain and withhold money based upon false representations and pretenses.

## THIRD CAUSE OF ACTION

### CONVERSION

**(By Plaintiff, on her own behalf and on behalf of the Class, against All Defendants)**

70.  Paragraphs 1-69 are alleged and incorporated herein by reference.

71.  With respect to consumers who were unlawfully enrolled in Defendants' automatic renewal programs and who were debited or charged and did not cancel prior to Defendants' shipment of magazines and were therefore unlawfully charged, Defendants' collection and retention of money resulted in the

wrongful exercise of dominion over property belonging to Plaintiff and Class Members.

72.     As a result of Defendants' conduct, Plaintiff and class members lost money and were therefore damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

1.      That the Court determine that this action may be maintained as a class action, and define the Class as requested herein or upon other definitions that may be proposed;

2.      That the Court find and declare that Defendants have violated section 1 7602(a)(l) by failing to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription was purchased;

3.      That the Court find and declare that Defendants have violated section 17602(a)(2) by enrolling and charging Plaintiff and Class Members without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service terms;

4.      That the Court find and declare that Defendants have violated section 17602(a)(3) by failing to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy and information on how to cancel in a manner that is capable of being retained by Plaintiff and Class Members;

5.      That the Court find and declare that Defendants have violated the UCL and committed unfair and unlawful business practices by violating the ARL;

6.      That pursuant to the UCL, the Court award to Plaintiff and Class Members restitution and disgorgement of all monies received by Defendants pursuant to automatic renewals of all magazines published, sold or marketed by Defendants during the Class Period;

7.     That the Court find that Plaintiff and Class Members are entitled to injunctive relief, including a permanent injunction restraining Defendants from enrolling California consumers in an  automatic renewal or continuous service program without first requesting and obtaining their affirmative consent;

8.     For damages on the Second and Third Causes of Action;

9.     For treble damages on the Second Cause of Action;

10.    For punitive damages on the Third Cause of Action;

11.    That Plaintiff and the Class be awarded reasonable attorneys' fees and costs pursuant to California Code of Civil Procedure§ 1021.5, and/or other applicable law;

12.    For interest; and

13.    That the Court award such other and further relief as this Court may deem appropriate.

DATED:  October 14, 2019                CARROLL, KELLY, TROTTER,
                                        FRANZEN, McBRIDE & PEABODY


                                        By: _____
                                            MICHAEL TROTTER
                                            DAVID P. PRUETT
                                            Attorneys for Plaintiff,
                                            LINDA HALL, individually and
                                            behalf of all others similarly situated

EXHIBIT  A









**EXHIBIT  B**

**⊠** People Magazine Subscription
www.magazine.store



Home / Celebrity & Entertainment / PEOPLE

**PEOPLE**  OFFICIAL STORE



64 Reviews



⊙ $ 40.00  **40 Issues**

🎁 **Gift Options Available**
weekly print subscription





✕  **People Magazine Subscription**
www.magazine.store

All magazine subscriptions will automatically renew annually.

checkout now



## People Magazine Subscription
www.magazine.store

## Checkout

### SELECT PAYMENT METHOD

○ Check out with **PayPal**

○ **amazon** pay »
**USE YOUR AMAZON ACCOUNT**

● MasterCard VISA AMERICAN EXPRESS DISCOVER

CREDIT CARD NUMBER                    CVV        ⊙

MONTH                    ▼        YEAR                    ▼

By submitting your order you are agreeing to our terms of service.

🎁 **GIFT OPTIONS**

☐ I would like to give this as a gift.

☐ I would like to give this as a gift and
  subscribe myself



**ull VZW 🌐**     2:16 AM     ↗ 97% ▭

✕  **People Magazine Subscription**

www.magazine.store

## YOUR ORDER INFORMATION

EMAIL ADDRESS

FIRST NAME       LAST NAME

ADDRESS 1

ADDRESS 2

CITY

SELECT STATE ▾     ZIP CODE

## COUPON

ENTER CODE       **apply**



**ᵘ VZW 🗢**     2:15 AM     ◀ 97% ▬

✕  **People Magazine Subscription**

www.magazine.store

**Automatic Renewal Notice**: After your initial term, your magazine subscriptions will automatically renew annually until you tell us to stop. You will receive a reminder of the renewal approximately 30 days in advance. Your credit card or method of payment will be charged at the time of purchase, and before the start of each new annual term, at the rate stated in the notice. You can contact customer service or cancel, at any time.



**SPECIAL**
**INTRODUCTORY OFFER**

Check this box to receive 1 year (6 issues) of AllRecipes® for **just $3 more!**

Includes auto renewal

### REVIEW YOUR ORDER:

- 40 Issues of PEOPLE (Print)     $40.00

**SUBTOTAL: $40.00**



## People Magazine Subscription
www.magazine.store

submit order




Welcome to Magazine.store, by submitting your order you'll be at the top of the list to receive our limited time deals, discounts and coupons via email on popular and trending titles! You can of course choose to stop receiving these email offers at any time.

**EXHIBIT C**



P.O. Box 62121
Tampa, FL 33662-2121

## Important Advance Notice
## For Subscribers

**We guarantee a hassle-free subscription.**
You'll never miss an issue. No renewal
notices and no telemarketing calls. We do the
work for you by automatically extending your
subscription each year for as long as you
want your selections.

**Your service includes convenient home
delivery and huge savings off the**
newsstand price.

**We will send you a notice every year
about your next subscription period and
rates.** We will send a notice that spells out:
your low rate, your number of issues and
when your account will be charged. If you
don't wish to continue, you can simply cancel
before your new term begins.

**We guarantee you outstanding savings.**
As a Valued Subscriber, enjoy substantial
savings off the cover price.

Printed in the USA.

Thank you for being a valued customer. We hope
you have been enjoying your magazine service, as
your complete satisfaction is our ultimate goal.

For your convenience, we will continue to ensure that you
don't receive extra unwanted mail — the multiple renewal
notices that normally come with a subscription.

Your PEOPLE subscription will continue for the next term of issues using the
account number you agreed to be billed. You will be billed or charged $67.50
for a total of 54 issues, which will run from 12/10/18 – 11/26/19. If you wish to
discontinue, call 1-800-541-9000 by 10/2/18 and no charge will appear. Cancel
anytime after you have been charged and receive a refund of unserved issues
based on your total term of service. As long as you are satisfied, your
subscription will continue through our open-ended, customer-friendly
subscription method — automatic renewal. Of course, we will always send you
a courtesy reminder before the start of a new term. Remember, you can always
look for the expiration date of your current term on your magazine label.

We hope you enjoy PEOPLE and look forward to serving you in the future.
Please keep this notice as a reminder for upcoming charges.

Presorted
First-Class Mail
U.S. Postage Paid
Tampa, FL
Permit No. 3800

Account number: 3460904992

LINDA L HALL
4336 HOWARD AVE
LOS ALAMITOS CA 90720-3709

EXHIBIT  D

magazine store

# ALL OF YOUR
# FAVORITE MAGAZINES
## *in one place!*

UP TO
**60%**
OFF!



Select the magazines you would like to receive for the introductory rate of up to 66% off the cover price by checking the boxes below.

| For Me | Title | Term | Price |
|---|---|---|---|
| ☐ | Allrecipes Magazine | 6 Issues | $9.98 |
| ☐ | American Patchwork & Quilting | 6 Issues | $14.98 |
| ☐ | Better Homes & Gardens | 12 Issues | $9.98 |
| ☐ | Country Gardens | 4 Issues | $9.98 |
| ☐ | Country Home | 4 Issues | $20.00 |
| ☐ | Diabetic Living | 4 Issues | $9.99 |
| ☐ | Do It Yourself | 4 Issues | $9.99 |
| ☐ | EatingWell | 10 Issues | $9.98 |
| ☐ | Entertainment Weekly | 46 Issues | $25.00 |
| ☐ | Eat This, Not That! | 4 Issues | $19.98 |
| ☐ | Family Circle | 12 Issues | $9.98 |

## Billing Information

**first name**

**last name**

**address**

**address 2**

**city**

**state**

Select state ▾

**zip code**

**e-mail**

Select the magazines you would like to receive for the introductory rate of up to 66% off the cover price by checking the boxes below.

| For Me | Title | Term | Price |
|---|---|---|---|
| ☐ | Allrecipes Magazine | 6 Issues | $9.98 |
| ☐ | American Patchwork & Quilting | 6 Issues | $14.98 |
| ☐ | Better Homes & Gardens | 12 Issues | $9.98 |
| ☐ | Country Gardens | 4 Issues | $9.98 |
| ☐ | Country Home | 4 Issues | $20.00 |
| ☐ | Diabetic Living | 4 Issues | $9.99 |
| ☐ | Do It Yourself | 4 Issues | $9.99 |
| ☐ | EatingWell | 10 Issues | $9.98 |
| ☐ | Entertainment Weekly | 46 Issues | $25.00 |
| ☐ | Eat This, Not That! | 4 Issues | $19.98 |
| ☐ | Family Circle | 12 Issues | $9.98 |
| ☐ | Food & Wine | 12 Issues | $19.95 |
| ☐ | Fortune | 14 Issues | $19.99 |
| ☐ | Health | 10 Issues | $10.00 |
| ☐ | InStyle | 12 Issues | $19.50 |
| ☐ | Martha Stewart Living | 10 Issues | $9.98 |
| ☐ | Midwest Living | 6 Issues | $9.99 |
| ☐ | Money | 11 Issues | $14.95 |
| ☐ | Parents | 12 Issues | $5.99 |

## Billing Information

first name

last name

address

address 2

city

state

Select state

zip code

e-mail

## Select Payment Method

choose option

● Select your payment type

digicert
Secure @ Trusted

VISA    DISC

SSL encryption is used for this transaction

CREDIT CARD NUMBE    CVV

MONTH    YEAR

Facebook   Yahoo   UCLA Bruine Report   News

| Parents | 12 Issues | $5.99 |
| PEOPLE | 54 Issues | $108.00 |
| People en Español | 10 Issues | $10.00 |
| Rachael Ray Every Day | 10 Issues | $9.98 |
| Real Simple | 12 Issues | $10.00 |
| Shape | 10 Issues | $9.98 |
| Southern Living | 13 Issues | $19.95 |
| Sports Illustrated | 39 Issues | $39.00 |
| Sports Illustrated Kids | 12 Issues | $20.00 |
| The Magnolia Journal | 4 Issues | $20.00 |
| TIME | 52 Issues | $30.00 |
| Traditional Home | 6 Issues | $12.00 |
| Travel + Leisure | 12 Issues | $10.00 |
| Wood Magazine | 7 Issues | $19.98 |

MONTH ▾    YEAR ▾

By submitting your order you are agreeing to our terms of service.

OR

○ 𝙿 PayPal

To fulfill subscriptions we will share your information with publishers of magazines purchased. Click here for publisher list.

**Automatic Renewal Notice:** After your initial term, your magazine subscriptions will automatically renew annually until you tell us to stop. You will receive a reminder of the renewal approximately 30 days in advance. Your credit card or method of payment will be charged at the time of purchase, and before the start of each new annual term, at the rate stated in the notice. You can contact customer service or cancel, at any time.

☑ YES, sign me up to get deals and updates from Magazine.Store plus offers from the Meredith family of sites via email.

Subscribe

All Categories >

Top Magazines >

Back Issues >

Most Popular

Give A Gift

Specialty

eBooks

Weekly Deal    Last Day!

Customer Service

My Account

search by magazine or title

  subscribe now 

## Amazing Deals on Southern Classics!

 Country Living

 The Pioneer Wom...

 Birds & Blooms

 The Magnolia Jou...



## Unbeatable Magazine Subscriptions & Deals


Allrecipes Magazine
subscribe
Save up to 67%
$10 - $21


Better Homes & Gardens
subscribe
Save up to 79%
$20 - $20


Martha Stewart Living
subscribe
Save up to 80%
$10 - $17


PEOPLE
subscribe
Save up to 71%
$46 - $89

ners                                    6057 Reviews

   

*02/25/19*  *02/25/19*  *02/25/19*

### Best Deal and Easiest To Order!

*Ordered a fav magazine that I usually pay a small fortune for all because it showed up in my newsfeed on Social media. Thank you!*

**- jennicampbell111**

### A+

*Super fast and easy checkout. Would definitely order from this website again.*

**- haileyfaye28**

### Fast and easy to use

*Cheaper than the subscription inserts in the magazines I wanted to subscribe to. Very easy to use and received a great offer for a...*
**Read More**

**- debikless**

 

POPULAR CATEGORIES

Fashion Magazines

Kids' Magazines

Business Magazines

Cooking Magazines

Sports Magazines

Travel Magazines

Magazines for Women

Car Magazines

Health Magazines

Magazines for Men

Fitness Magazines

Parenting Magazines

Specialty

eBooks

Affiliate Program

Powered by DotStore domains

© Copyright 2019, Meredith Corporation. All Rights Reserved | Privacy Policy | Data Policy | Terms and Conditions Agreement

CERTIFICATE OF SERVICE

CENTRAL DISTRICT OF CALIFORNIA- SOUTHERN DIVISION:

I hereby certify that on October 14, 2019, I electronically filed the **FOREGOING FIRST AMENDED COMPLAINT (CLASS ACTION) FOR: 1. VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUSINESS AND PROFESSIONS CODE §§ 17200-17204); 2. VIOLATIONS OF CALIFORNIA PENAL CODE § 496 (THEFT); 3.   CONVERSION** with the clerk of the United States District Court – Central District of California, Southern Division, by using the Central District CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Central District of California CM/ECF system.

I further certify that some of the participants in the case may not be registered CM/ECF users. I have mailed the foregoing foregoing first amended COMPLAINT (CLASS ACTION) FOR: 1.   VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUSINESS AND PROFESSIONS CODE §§ 17200-17204); 2. VIOLATIONS OF CALIFORNIA PENAL CODE § 496 (THEFT); 3.     CONVERSION First-Class Mail, postage pre-paid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days, to the following non-CM/ECF participants:

[*NONE*]

Dated: October 14, 2019                     By:_____

                                            LINDA D. OWEN

**Proof of Service Mailing List**

Re: *Hall v. Time, Inc., et al.*
Case No.: 8:19-cv-1153-AG-ADs


Michael K. Farrell
Kyle T. Cutts
Dante A. Marinucci
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Ste. 2000
Cleveland, OH  44114-1214
(216) 621.0200 / Main
(216) 696.0740 / Fax

Marcus S. McCutcheon
BAKER & HOSTETLER LLP
600 Anton Blvd., Ste. 900
Costa Mesa, CA  92626-7221
(714) 754-6600
(714) 754-6611 / Fax
**Attorneys for Defendants**