BAKER & HOSTETLER LLP
MICHAEL K. FARRELL (*pro hac vice*)
KYLE T. CUTTS (CA BAR NO. 257641)
DANTE A. MARINUCCI (*pro hac vice*)
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:  216.621.0200
Facsimile:   216.696.0740

MARCUS S. MCCUTCHEON (CA BAR NO. 281444)
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Telephone:  714.754.6600
Facsimile:   714.754.6611

*Attorneys for Defendants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| LINDA HALL, individually and on behalf of all others similarly situated, | Case No.: 8:19-cv-01153-AG-ADS |
| Plaintiff, | Hon. Andrew J. Guilford |
| TIME, INC., a Delaware corporation; MEREDITH CORP., an Iowa corporation; and DOES 1-100, inclusive, | **TIME, INC'S AND MEREDITH CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| Defendants. | Hearing Date:   January 6, 2020 Hearing Time:   10:00 a.m. Location: Court 10D |

1    **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR**
2    **COUNSEL OF RECORD:**

3        **PLEASE TAKE NOTICE** that, on January 6, 2020 at 10:00 a.m., or as
4    soon thereafter as the matter may be heard by the Honorable Andrew J. Guilford,
5    at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street,
6    Court 10D, Santa Ana, California 92701-4516, Time, Inc. and Meredith
7    Corporation (together, "defendants") shall, and hereby do, move the Court
8    pursuant to Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing Linda
9    Hall's First Amended Class Action Complaint ("Complaint") for failure to state a
10   cause of action.

11       This Motion is based upon this Notice of Motion, the accompanying
12   Memorandum of Points and Authorities, any Reply Memorandum that defendants
13   may file, the Court's prior rulings in this matter, the pleadings, records, and papers
14   on file in this action, oral argument of counsel, and upon such other matters as may
15   be presented to the Court prior to or at the hearing on the Motion.

16       This Motion is made following a conference of counsel pursuant to L.R. 7-3
17   on October 18, 2019.

18
19                              Respectfully submitted,
20
21   Dated: October 28, 2019      **BAKER & HOSTETLER LLP**
22                              By:   */s/ Kyle T. Cutts*
23                                    MICHAEL K. FARRELL (*pro hac vice*)
                                      KYLE T. CUTTS (CA BAR NO. 257641)
24                                    DANTE A. MARINUCCI (*pro hac vice*)
                                      Key Tower
25                                    127 Public Square, Suite 2000
26                                    Cleveland, OH  44114-1214
                                      Telephone:     216.621.0200
27                                    Facsimile:     216.696.0740
28
                              - 2 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1

2    MARCUS S. MCCUTCHEON (CA BAR
     NO. 281444)
3    600 Anton Boulevard, Suite 900
4    Costa Mesa, CA 92626-7221
     Telephone:      714.754.6600
5    Facsimile:      714.754.6611

6
7    *Attorneys for Defendants*

8

9

10

11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO.: 8:19-CV-01153-AG-ADS
4847-5537-0154.5

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

1.    INTRODUCTION ......................................................................................... 1

2.    SUMMARY OF PLAINTIFF'S ALLEGATIONS ..................................... 2

    A.    Plaintiff's First Amended Complaint ............................................... 2

    B.    The Purchase Flow in Exhibits to Plaintiff's Complaint ..................... 3

3.    LEGAL ARGUMENT .................................................................................. 7

    A.    Plaintiff Still Does Not Allege a Violation of the ARL ...................... 8

        1.    Section 17602(a)(1) ................................................................... 9

        2.    Section 17602(a)(2) ................................................................. 11

        3.    Section 17602(a)(3) ................................................................. 12

    B.    Hall's UCL Claim (Count I) Also Fails Because She Lacks Standing. ................................................................................................ 14

    C.    Hall's Section 496 Claim (Count II) Fails for Additional Reasons.... 16

    D.    Hall's Conversion Claim (Count III) Also Fails For Additional Reasons. ......................................................................................... 19

    E.    Plaintiff Cannot Plead Plausible Claims in a Second Amended Complaint. ........................................................................................ 20

4.    CONCLUSION ........................................................................................... 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google, LLC*,
   No. 17-cv-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13,
   2018) ................................................................................................................ 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 7, 8

*Avidor v. Sutter's Place, Inc.*,
   212 Cal. App. 4th 1439 (2013) ......................................................................... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 8

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................... 15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .......................................................................... 1, 8

*Daro v. Superior Court*,
   151 Cal. App. 4th 1079 (2007) ......................................................................... 14

*Deleon v. Time Warner Cable LLC*,
   No. CV 09-2438 AG RNBX, 2009 WL 9426145 (C.D. Cal. July
   17, 2009) (Guilford, J.) ....................................................................................... 1

*Driver v. Acquisto*,
   145 Cal. App. 2d 304 (1956) ............................................................................ 19

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ......................................................................... 15

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
   No. 16-cv-02954-LB, 2016 WL 5930273 (N.D. Cal. Oct. 12, 2016) ............... 19

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008), *as modified* (Jan. 28, 2008) ........................ 15, 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

*Ingalls v. Spotify USA, Inc.*,
No. C 16-03533 WHA, 2017 WL 3021037 (N.D. Cal. July 17, 2017) .......................................................................................................... 14

*Kissel v. Omega Nat. Sci., Inc.*,
No. CV 16-2770-GW SKX, 2016 WL 9019613 (C.D. Cal. Aug. 22, 2016) ......................................................................................................... 16

*Klett v. Sec. Acceptance Co.*,
38 Cal. 2d 770 (1952) ...................................................................................... 19

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ..................................................................................... 14

*MMM Holdings, Inc. v. Reich*,
21 Cal. App. 5th 167, 230 Cal. Rptr. 3d 198 (Ct. App. 2018) ......................... 17

*People v. Hartley*,
248 Cal. App. 4th 620 (2016) .......................................................................... 17

*People v. Lorenzo*,
64 Cal. App. 3d Supp. 43 (App. Dep't Super Ct. 1976) ................................... 18

*People v. Stuart*,
272 Cal. App. 2d 653 (1969) ........................................................................... 17

*People v. Wooten*,
44 Cal. App. 4th 1834 (1996) .......................................................................... 18

*Roz v. Nestle Waters N. Am., Inc.*,
No. 2:16-cv-04418-SVW-JEM, 2017 WL 6942661 (C.D. Cal. Dec. 6, 2017) ......................................................................................................... 15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), *aff'd*, 588 F. App'x 658 (9th Cir. 2014) .............................................................................................................. 8

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ..................................................................................... 15

*In re Turner*,
859 F.3d 1145 (9th Cir. 2017) ......................................................................... 14

Baker & Hostetler LLP
Attorneys at Law
Cleveland

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO.: 8:19-CV-01153-AG-ADS
4847-5537-0154.5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................ 8, 19

*Vogel v. Travelers Cas. Ins. Co. of Am.*,
    No. SACV1700612AGJDEX, 2017 WL 5642302 (C.D. Cal. May
    18, 2017) ......................................................................................................... 20

*Williams v. Kidiley*,
    No. EDCV 12-2272-AG RNB, 2013 WL 6247972 (C.D. Cal. Dec.
    3, 2013) ............................................................................................................. 8

*Wilson v. Frito-Lay N. Am., Inc.*,
    260 F. Supp. 3d 1202 (N.D. Cal. 2017) ........................................................... 15

**Statutes**

Automatic Renewal Law, Cal. Bus. & Prof. Code § 17600, *et seq.* ........................ 3

Cal. Bus. & Prof. Code § 17200 ............................................................................ 14

Cal. Bus. & Prof. Code § 17602 (2010) ................................................................ 13

Cal. Bus. & Prof. Code § 17602(a)(1) ..................................................................... 9

Cal. Bus. & Prof. Code § 17602(a)(3) ............................................................. 12, 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

This Court correctly dismissed Plaintiff's first complaint because Plaintiff's own exhibits showed that Defendants Time, Inc. and Meredith Corporation did not violate California's Automatic Renewal Law, § 17600 *et seq.* ("ARL"). None of Plaintiff's exhibits or factual allegations have changed and the First Amended Complaint ("FAC") should be dismissed.

Plaintiff's addition of lengthy descriptions and argumentative characterizations of her exhibits does not change the content of those exhibits or the fact that, on their face, they demonstrate compliance with the ARL. And the FAC contains no new factual allegations about Plaintiff's purchase of *her* subscription.[1] Instead, Plaintiff's FAC spends pages *describing* the exhibits attached to her complaint. These descriptions are not factual allegations; they are attorney argument and characterizations (and occasional mischaracterization) of the very same exhibits that were attached to the initial complaint. And they are irrelevant as it is well-settled that the actual content of a complaint's exhibits control over any such descriptions. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court is not required to accept as true allegations contradicted by exhibits to a complaint).

For example, Plaintiff's original complaint alleged that, "[o]n or about 2017, Plaintiff received an Instagram offering Plaintiff a subscription to People Magazine" and attached that offer as an exhibit. (Dkt. 1 (Complaint) ¶ 17.) The FAC now alleges that, "[o]n or about 2017, Plaintiff received an Instagram offering Plaintiff a subscription to People Magazine, *with a cluttered, chaotic*

---

[1] *Deleon v. Time Warner Cable LLC*, No. CV 09-2438 AG RNBX, 2009 WL 9426145, at *3 (C.D. Cal. July 17, 2009) (Guilford, J.) (while "class actions can require somewhat more generalized pleadings[,] . . . the [complaint] should allege more specific facts about Plaintiff [her]self, if not about the entire class.").

*presentation*" and attaches the same exhibit.  (FAC ¶ 19 (emphasis added).)

The addition of such descriptions does not change the content of the exhibit or add any factual allegation to Plaintiff's deficient initial complaint.  The same is true of virtually all of the new statements in the FAC; whatever adjectives Plaintiff may now have added to describe the exhibits to her complaint do not change the content of the exhibits or the fact that they still demonstrate compliance with the ARL.  For this reason alone, Plaintiff's amended complaint should be dismissed, this time without leave to amend.

Plaintiff's Unfair Competition Law ("UCL") claim fails for the separate reason that she lacks standing to pursue it because, even after Defendants pointed out this deficiency, she still does not allege that she would not have purchased People Magazine "but for" Defendants' alleged failure to comply with the ARL.  Likewise, Plaintiff's claim for receipt of stolen property under California Penal Code § 496 fails for the additional reasons that, again despite Defendants' pointing out the deficiency, she has neither alleged that Defendants specifically intended to defraud her nor the causation required for such a claim.  Finally, her claim for conversion fails because, whether or not a technical ARL violation occurred, she consented to the transfer of the monies at issue.

## 2.   SUMMARY OF PLAINTIFF'S ALLEGATIONS

### A.   Plaintiff's First Amended Complaint

Plaintiff's factual allegations about her ordering a subscription to People Magazine are substantively identical to the allegations in her original complaint.  At some point in 2017, she allegedly purchased a subscription to People Magazine.  (FAC ¶¶ 19, 36.)  She claims that People is published by Time and that the seller she purchased People from is "operated" by Meredith, Time's parent company.  (*Id*. ¶¶ 10-11, 18.)  Plaintiff alleges that in September 2018 she received a postcard reminding her that her subscription would renew if she did not cancel it and

Baker & Hostetler LLP
Attorneys at Law
Cleveland

explaining how she could cancel it to avoid that charge. (*Id.* ¶ 37 & Exhibit C.) She does not claim that she cancelled or tried to cancel, but states that her subscription automatically renewed on October 14, 2018 and Time debited $67.50 from her "account." (*Id.* ¶ 37.)

Tellingly, Plaintiff still does not allege that she did not know about or understand the automatic renewal feature of her subscription when she initially purchased it. Nor does she allege that the automatic renewal feature was something she did not want. Plaintiff alleges only that when she subscribed to People, Defendants did not comply with the technical requirements of the ARL, Cal. Bus. & Prof. Code § 17600, *et seq.* She further claims that this alleged failure renders her still-active subscription an "unconditional gift" and that she can collect restitution and treble damages. (*Id.* ¶¶ 2-4, Prayer for Relief.)

On this theory, Hall seeks to represent all people "within California" who "purchased a subscription to any magazine published, marketed or sold by Defendants" that included an automatic renewal. (*Id.* ¶ 45.)

### B.   The Purchase Flow in Exhibits to Plaintiff's Complaint

The Exhibits to the FAC are exactly the same Exhibits that Plaintiff attached to the original complaint. Exhibit A is a copy of the various screens, or purchase flow, through which she alleges she ordered her subscription. (Compl. Exhibit A.) "[E]nlargements" of these displays are attached as Exhibit B. (Compl. Exhibit B; *see also id*. ¶ 17.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

The first screen reveals that the subscription being ordered would automatically renew.  As shown here, it states: "All magazine subscriptions will automatically renew annually."



(FAC Exhibit A, Page ID #29; FAC Exhibit B, Page ID #35.)

The exhibits show that a consumer such as Plaintiff cannot proceed to purchase a subscription without affirmatively clicking the "Checkout now" button that appears directly beneath the disclosure that "All magazine subscriptions will automatically renew annually."  (*Id.*)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1   After clicking "Checkout now," Plaintiff allegedly flowed to a separate
2   payment screen where she chose to pay by credit card and entered her credit card
3   information:



4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

20   (FAC Exhibit A, Page ID #30-31; FAC Exhibit B, Page ID #36-37.)

21   Directly below the space for entering the consumer's payment method and

22   credit card information, this screen says, "[b]y submitting your order you are

23   agreeing to our terms of service."  (FAC Exhibit A, Page ID #30; FAC Exhibit B,

24   Page ID #36 (coloring in original).)  That the phrase "terms of service" is shaded

25   blue suggests that it hyperlinks to another page not included in Plaintiff's exhibits.

26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

After she clicked "Checkout Now" and entered her credit card information, Plaintiff alleges she was shown the automatic renewal disclosure, labeled "**Automatic Renewal Notice**," which is displayed on a bright yellow background:



(FAC Exhibit A, Page ID #32; FAC Exhibit B, Page ID #38 (emphasis in original).)

As shown, this notice states that, after the initial magazine term, "your magazine subscription will automatically renew annually until you tell us to stop." (*Id.*)  It explains that "[y]ou will receive a reminder of the renewal approximately 30 days in advance." (*Id.*)  It reminds the consumer that "[y]our credit card or method of payment will be charged at the time of purchase, and before the start of each new annual term, at the rate stated in the notice." (*Id.*)  And it confirms that "[y]ou can contact customer service or cancel at any time." (*Id.*)  Again, the words

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

"customer service" or "cancel" are highlighted in blue, presumably reflecting hyperlinks to other pages not attached to Hall's complaint.  (*Id.*)

Thus, Plaintiff's exhibits still show that a consumer can only order a subscription *after* being informed that "subscriptions will automatically renew annually," *after* then clicking on "Checkout now," *after* then entering their credit card information, and then clicking on the "Submit order" button *after* seeing the **Automatic Renewal Notice**.  (FAC Exhibit A; FAC Exhibit B.)

Plaintiff also still alleges that she received a postcard in September 2018, *before* the allegedly unlawful October 14, 2018 automatic renewal.  Among other things, that postcard says: "Your PEOPLE subscription will continue for the next term of issues using the account number you agreed to be billed."  (FAC Exhibit C, Page ID #41-42.)  It explains, "[y]ou will be billed or charged $67.50 for a total of 54 issues, which will run from 12/10/18 – 11/26/19."  (*Id.*)  And it reminds the consumer that "[i]f you wish to cancel," you can contact customer service "by 10/2/18 and no charge will appear."  (*Id.*)

Finally, while Plaintiff seems to have dropped from the FAC the allegation that Exhibit D represents "[a]n example of the automatic renewals implemented by Meredith as viewed on a computer screen," she still attaches the same Exhibit D to her FAC.  (Dkt. 1 (Complaint) ¶ 28(5).)  And that exhibit still shows that the **Automatic Renewal Notice**, highlighted by the same yellow background described above, clearly visible above the "Submit order" button, appears in those offer materials as well.  (FAC Exhibit D, Page ID #46.)

### 3.    LEGAL ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle her to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (claim must be facially plausible to survive a motion to dismiss).  The pleadings must raise the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

right to relief beyond the speculative level, and a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

Likewise, the Court may properly reject characterizations of or allegations about exhibits that are contradicted by the exhibits themselves.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not . . . required to accept as true allegations that contradict exhibits attached to the [c]omplaint[.]"); *Williams v. Kidiley*, No. EDCV 12-2272-AG RNB, 2013 WL 6247972, at *2 (C.D. Cal. Dec. 3, 2013) ("[W]hen documents contain statements that contradict allegations in a complaint, the documents control and a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'") (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)), *aff'd*, 588 F. App'x 658 (9th Cir. 2014).

Further, to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements, which apply to her theft by fraud claim and her claim under the UCL-fraud prong, Plaintiff must allege "*more* than the neutral facts necessary to identify the transaction," including the who, what, when, where, and how of the alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

### A.   Plaintiff Still Does Not Allege a Violation of the ARL.

As before, Plaintiff's amended complaint is entirely predicated on an alleged violation of the ARL.  As before, Plaintiff alleges that Defendants violated all three subsections of ARL § 17602(a).[2]  As before, the exhibits Plaintiff attached to her

[2] Plaintiff also alleges in passing that Defendants violated the ARL by failing to provide an online method of cancellation in violation of § 17602(c).  (FAC ¶ 3(d).)  But, as this Court held, because Plaintiff placed her order in 2017, and the online-

complaint demonstrate compliance with the ARL.  (*See* Dkt. 22 (Order Regarding Defendants' Motion to Dismiss ("Order") at 6-7.)  As before, Plaintiff's claims fail.

### 1.    Section 17602(a)(1)

Section 17602(a)(1) requires a business to "present the automatic renewal offer terms . . . in a clear and conspicuous manner" before the subscription or purchase.  Cal. Bus. & Prof. Code § 17602(a)(1).  The offer terms must also be "in visual proximity . . . to the request for consent to the offer."  (*Id.*)

Plaintiff alleges that Defendants violated these provisions in two respects.  First, she alleges that what she now calls the "Advertisement Page" (FAC Ex. B, Doc. ID # 34-35) failed to comply with Section 17602(a)(1)'s clear-and-conspicuous and visual-proximity requirements.  (FAC ¶ 22(a)-(b).)  Second, she claims that the boldfaced and yellow-highlighted **Automatic Renewal Notice** was not clear and conspicuous and that, because an "AllRecipes Special Offer" appeared between the **Automatic Renewal Notice** and "submit order" button, the disclosure was not in "visual proximity" to the request for consent to the offer.  (FAC ¶ 35(a)-(b).)

The Court already rejected these theories on the same facts.  Reviewing the same exhibits that are now attached to the FAC, the Court concluded that Defendants "complied" with § 17602(a)(1) because Defendants "repeatedly present[ed] Plaintiff with the automatic renewal terms in a clear and conspicuous manner."  (Order at 4 (citing Ex. 2).)  By the time Plaintiff reached the "submit order" button (the "request for the consent to the offer," § 17602(a)(1)), she had been informed that "[a]ll magazine subscriptions will automatically renew annually" *and* been presented with the full **Automatic Renewal Notice**.  (*Id.*)

---

cancellation provision was adopted in 2018, "Defendants were under no requirement to provide Plaintiff an online cancellation method."  (Order at 6.)

- 9 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1   That notice appeared "*just before* the 'submit order' button, and was highlighted

2   yellow with the words 'Automatic Renewal Notice' bolded." (*Id.* at 5 (emphasis

3   added).) From this, the Court concluded that "it's clear that Plaintiff was

4   adequately informed of Defendants' automatic renewal notice in plain and

5   conspicuous terms." (*Id.*)

6        Plaintiff offers no reason to change that conclusion. Although Plaintiff now

7   places greater emphasis on the "visual proximity" provision of § 17602 (*see, e.g.*,

8   FAC ¶¶ 22(a), 35(a)), she already argued that the "visual proximity" standard was

9   not met—an argument this Court rejected. (Dkt. 19 (Corrected Opp'n to Mot. to

10   Dismiss) at 12; *see also* Dkt. 1 (Compl.) ¶ 29 (alleging a violation of

11   § 17602(a)(1)'s visual-proximity requirement).) Indeed, the Court concluded that

12   the **Automatic Renewal Notice** appeared "just before" the consent to the offer, the

13   'submit order' button.[3] (Order at 5.) Although Plaintiff now alleges in print that

14   an offer for "AllRecipes" appeared between the **Automatic Renewal Notice** and

15   the "submit order" button, that is not new; it was always there. And in any event

16   Section 17602(a)(1) does not require that the disclosure appear "immediately

17   adjacent to" the consent to the offer—it requires only that it be in "visual

18   proximity." Plaintiff's offer flow satisfies this requirement.

19        Finally, Plaintiff alleges that the first disclosure of automatic renewal—"All

20   magazine subscriptions will automatically renew annually"—does not satisfy all of

21   § 17602(a)(1). (FAC ¶ 22(a).) This allegation continues to miss the point. The

22   ARL is not violated if a business makes *more* disclosures of the automatic renewal

23   terms than is required by the statute. The **Automatic Renewal Notice** satisfies

24   § 17602(a)(1)'s clear-and-conspicuous and visual-proximity requirements; the

25   additional disclosure only further ensures, at the outset and clearly and

26

27   [3] Plaintiff's Exhibit D also shows the visual proximity of the **Automatic Renewal Disclosure** to the request for the consent to the offer, as well as the effectiveness of the highlighting and bolding.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1   conspicuously, that "Plaintiff was adequately informed of Defendants' automatic

2   renewal notice" when she placed her order.  (Order at 5.)

3               **2.      Section 17602(a)(2)**

4       Section 17602(a)(2) requires Plaintiff to plead facts showing that Defendants

5   charged her credit card for an automatic renewal "without first obtaining [her]

6   affirmative consent to the agreement containing the automatic renewal offer

7   terms[.]"  She alleges that Defendants violated this subsection because (i) the first

8   disclosure on the "Advertising Page" was insufficient (FAC ¶ 22(b)), and (ii)

9   Defendants' alleged violations of § 17602(a)(1) meant that Defendants failed to

10  secure her affirmative consent as required by § 17602(a)(2) (*see id.* ¶ 25(f)).

11      Again, this Court already determined that these allegations were insufficient

12  to state claims.  (Order at 5.)  As Plaintiff's exhibits show, she "clicked through

13  two separate pages containing the automatic renewal agreement before deciding"

14  to purchase People Magazine.  (*Id.*)  The very first screen discloses the existence of

15  the auto-renewal and states: "All magazine subscriptions will automatically renew

16  annually."  (*E.g.*, FAC Exhibit B, Page ID #35.)  As shown, a consumer cannot

17  proceed with her purchase unless she then affirmatively clicks the "checkout now"

18  button directly below this automatic-renewal disclosure, thus manifesting her

19  intent and agreement to continue with the purchase.  (*Id.*)  The offer flow next

20  states that "[b]y submitting your order you are agreeing to our terms of service,"

21  followed by a disclosure box offset in bright yellow that is titled **Automatic**

22  **Renewal Notice** and lays out additional detail about the automatic-renewal

23  feature.[4]  (*Id.*, Page ID #36-39.)  This second disclosure is presented *before* the

24  final confirmation button.  (*Id.*, Page ID #38-39; *see also* FAC Exhibit D, Page ID

25  #46 (displaying the **Automatic Renewal Notice** directly above the "submit now"

26

27  [4] One can safely assume that the content of the "Terms of Service" and other
    hyperlinks are not referenced by Plaintiff because they contain additional
28  disclosures and explanation related to the automatic renewal feature.

button.))  And as discussed in the previous section, Plaintiff's exhibits demonstrate that Defendants clearly and conspicuously disclosed the automatic renewal in visual proximity to the request for consent.

In sum, Hall's exhibits show that before the consumer can commit to receive her magazines, she (1) is notified of the auto-renewal feature and must click "Checkout now" to continue; (2) is alerted to and provided a link to terms and conditions, and (3) receives additional details in the yellow-boxed and boldface-captioned "Automatic Renewal Notice" before reaching the "submit order" button. (FAC Exhibit B, Page ID #34-39.)  Thus, as alleged, "Plaintiff affirmatively consented to the agreement containing the automatic renewal offer terms."  (Order at 5.)

### 3.    Section 17602(a)(3)

Plaintiff also fails to plausibly allege a violation of § 17602(a)(3), which states that businesses must "provide an acknowledgement that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the customer."  Cal. Bus. & Prof. Code § 17602(a)(3).  And, beginning in July 2018, it now includes additional requirements if an automatic renewal offer includes a "free gift or trial."[5]  Plaintiff alleges that Defendants violated both provisions of § 17602(a)(3) (*see* FAC ¶¶ 22(c)-(d), 35 (c)-(e)), but both claims are implausible.

**Acknowledgement**.  As this Court previously held, "based on Plaintiff's complaint, it's clear Defendants complied with this statutory requirement."  (Order at 6.)  Plaintiff admits that a month before her subscription was to end, she received a postcard from Defendants reminding her of her subscription and that it

---

[5]  In such cases, the business shall also "disclose in the acknowledgement how to cancel, and allow the consumer to cancel, the automatic renewal . . . before the consumer pays for the goods or services."  (*Id.*)

- 12 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

would automatically renew if she did not cancel.  (*Id.*; *see also* FAC ¶ 37 & Exhibit C, Page ID #41-42.)  Specifically, it informed her of the amount she would be charged, the subscription period of the renewal, that she could cancel her subscription before the renewal went into effect "by simply dialing a 1-800 number," and the date by which she needed to do so.   (FAC ¶ 37 & Exhibit C, Page ID #41-42.)  Under these same facts, the Court held that Plaintiff did not plausibly allege a violation of § 17602(a)(3).  (Order at 6.)

That still holds true.  Although Plaintiff now includes additional commentary about the font and layout of the postcard (FAC ¶¶ 37-42),[6] she still does not allege that she did not receive, read, or understand it.  Nor does she allege any facts suggesting that the postcard is not what it is—an acknowledgement of an existing subscription, reiteration of the terms of the automatic renewal, and a statement of Defendants' cancellation policy and procedure.  That is exactly what § 17602(a)(3) requires.

**Free Gift.**  Plaintiff's FAC does propose a new theory of liability—she now claims that because the alleged offer flow contained an advertisement for a "Free Tote," Defendants were required to comply with the additional requirements for such offers in § 17602(a)(3). (FAC ¶¶ 22(d), 35(e) (quoting § 17602(a)(3).)

This new allegation fails to state a valid claim for the same reason that her "online cancellation" argument failed last time around—the portion of § 17602(a)(3) requiring specific disclosures related to free gifts did not become effective until July 1, 2018, almost a year after Plaintiff ordered her subscription. *Compare* Cal. Bus. & Prof. Code § 17602(a)(3) (effective July 1, 2018) *with* Cal. Bus. & Prof. Code § 17602 (2010) (repealed effective Jan. 1, 2019 by 2017 Cal SB 313).  As the Court ruled with respect to the online-cancellation allegations, as "a

---

[6] This commentary is of especially no import given the fact that § 17602(a)(3) does not contain the "clear and conspicuous" or "visual proximity" requirements for offers that appear in § 17602(a)(1).

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO.: 8:19-CV-01153-AG-ADS
4847-5537-0154.5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1    matter of law, Plaintiff can't plausibly allege Defendants violated this subsection

2    because the relevant requirement"—the "free gift" provision—"didn't become

3    effective until July 1, 2018." (Order at 6.) That reasoning applies with equal force

4    to Plaintiff's "free gift" argument—as a matter of law, Defendants could not

5    violate a requirement not yet in effect.

6          **B.**     **<u>Hall's UCL Claim (Count I) Also Fails Because She Lacks</u>**

7                 **<u>Standing.</u>**

8          The UCL prohibits unfair competition, defined as "any unlawful, unfair or

9    fraudulent business act or practice and unfair, deceptive, untrue or misleading

10   advertising . . . ." Cal. Bus. & Prof. Code § 17200. As explained above, Hall's

11   UCL claim fails (as do her others) because she does not plausibly plead facts

12   supporting any violation of the ARL. Hall's UCL claim also fails because she

13   lacks standing to bring it. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310,

14   322, 326 (2011) (limiting UCL private right of action to those who "suffered injury

15   in fact" and "lost money or property as a result of the unfair competition").

16         To establish standing to assert a UCL claim, Hall must allege (1) "a loss or

17   deprivation of money or property sufficient to qualify as injury in fact, i.e.,

18   economic injury, and (2) . . . that that economic injury was the result of, i.e.,

19   *caused by*, the unfair business practice . . . that is the gravamen of the claim."

20   *Kwikset*, 51 Cal. 4th at 322. "A plaintiff fails to satisfy this causation requirement

21   if he or she would have suffered 'the same harm whether or not a defendant

22   complied with the law.'" *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017)

23   (quoting *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007)).

24         Because Hall does not allege that she was deceived or misled by the

25   automatic-renewal notice or information defendants allegedly provided her, she

26   must allege at least "but for" causation to establish standing under the UCL.

27   *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2017 WL 3021037, at *4

28

- 14 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

(N.D. Cal. July 17, 2017) (Where claim does not sound in misrepresentation, the ARL requires "but for" causation—a plaintiff must show "that, but for the alleged wrongdoing, he would not have been harmed.").

Even if Hall plausibly alleged that defendants' automatic-renewal disclosure was misleading or deceiving (she does not), to have standing, she still must have alleged that she relied on the alleged misrepresentation. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 n.17 (2009)); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007)); *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1211 (N.D. Cal. 2017) (plaintiff failed to establish reliance on misleading label when he stated at deposition that he had never noticed label before purchasing product).

In sum, Hall must allege that the allegedly noncompliant automatic-renewal disclosure caused her to order People when she otherwise would not have. *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 857 (2008), *as modified* (Jan. 28, 2008) (affirming dismissal of complaint because plaintiff failed to allege that the alleged acts of unfair competition caused or induced him to take any particular action that he would not otherwise have taken).

Hall makes no such allegations. She does not allege that she would not have purchased her subscription if the automatic renewal terms had been presented in a way that (in her view) did comply with the ARL. Nor does she allege that but for the alleged violation, she would not have purchased her subscription to People. This is fatal to her claim. Without an allegation that a compliant automatic-renewal notice would have led her to take a different action, she lacks standing under the UCL because any noncompliance with the ARL did not cause her an economic injury. *Roz v. Nestle Waters N. Am., Inc.*, No. 2:16-cv-04418-SVW-JEM, 2017 WL 6942661, at *4 (C.D. Cal. Dec. 6, 2017) (UCL's causation

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1    requirement in context of alleged ARL violation demands that plaintiff plead and

2    prove that defendants' "nondisclosure was an immediate cause of the plaintiff's

3    injury-producing conduct" (citation omitted)).

4        What is more, Hall does not allege that she did not know her subscription

5    would automatically renew; nor could she plausibly do so given the exhibits

6    attached to her complaint and discussed above.  She also does not allege that had

7    defendants utilized different or more "prompts or features" to express specific

8    consent to automatic renewal, or laid out its offer flow differently, she would not

9    have gone ahead and purchased her subscription.  Again, the number of affirmative

10   steps she took to purchase her subscription *after* being informed that it would

11   automatically renew would make implausible any such allegation.  Finally, Hall

12   does not allege that if not for any other ARL violation, she would not have made

13   the People magazine purchase.

14       Because Plaintiff lacks standing, her UCL claim must be dismissed. *Hall*,

15   158 Cal. App. 4th at 857 (affirming grant of judgment on the pleadings where

16   plaintiff failed to allege causation and therefore lacked standing to bring UCL

17   claim); *see also Kissel v. Omega Nat. Sci., Inc.*, No. CV 16-2770-GW SKX, 2016

18   WL 9019613, at *3 (C.D. Cal. Aug. 22, 2016) (complaint failed to satisfy *Spokeo*

19   standing "because it raise[d] no allegations regarding how Plaintiff purportedly

20   suffered injury from Defendant's failure to provide the [ARL] required

21   acknowledgment" where plaintiff failed to allege she would have done something

22   differently).

23       **C.    Hall's Section 496 Claim (Count II) Fails for Additional Reasons.**

24       Hall's claim under California Penal Code § 496, titled "Receiving stolen

25   property," remains a convoluted one.  She posits that (i) because defendants

26   allegedly violated the ARL, her magazine subscription was an unconditional gift,

27   and (ii) because her subscription was legally an unconditional gift, defendants

28

- 16 -

created the "false pretense" that she was obligated to pay for magazines that she ordered and received, and (iii) defendants' charging her credit card for the subscription therefore constitutes theft by false premise, and therefore receipt of stolen property under § 496. (Compl. ¶¶ 49-54.) In addition to the facial implausibility of Hall's ARL allegations discussed above, her § 496 claim fails for other reasons and should be dismissed.

*First*, Hall does not allege that defendants had a specific intent to defraud. To state a § 496 claim for theft by false pretense, Hall must allege that defendants both knew the property at issue (here, her money) was stolen and specifically intended to defraud her. *MMM Holdings, Inc. v. Reich*, 21 Cal. App. 5th 167, 185, 230 Cal. Rptr. 3d 198, 212 (Ct. App. 2018) (summary judgment for defendant where plaintiff failed to prove specific intent for the theft offense or knowledge that the elements of a theft offense had occurred); *People v. Stuart*, 272 Cal. App. 2d 653, 656 (1969) (a violation of § 496 requires three elements: (1) property has been stolen; (2) the accused obtained, received, concealed, or withheld the property[7]; and (3) the accused knew the property was stolen).

Specific intent to defraud is a critical element of this claim. *AdTrader, Inc. v. Google, LLC*, No. 17-cv-07082-BLF, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018) (dismissing section 496 claim with prejudice because, despite plaintiff's allegations of theft by false pretense, plaintiff did not allege that Google obtained stolen property by grand theft, petty theft, embezzlement or extortion); *People v. Hartley*, 248 Cal. App. 4th 620, 627 (2016) (intent in theft by false pretenses requires "something more than mere proof of nonperformance or actual falsity"

---

[7] Although Hall does not claim she demanded return of any funds, she alleges that defendants refused such requests made by other, unnamed "consumers." (Compl. ¶ 53(4).)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

because proof of such fraudulent intent prevents ordinary commercial defaults from becoming the subject of criminal prosecution).

Plaintiff does not allege that Defendants knew they were violating the ARL, which is the only way they could have known that the subscription could be considered an unconditional gift, or known that the payments she voluntarily made were somehow "stolen" from her when they received them.  She also does not allege that she did not receive the magazines she ordered, that she paid more than the price stated, or that defendants defrauded her in any other way, let alone allege that they specifically intended to defraud her.  Rather, all that Hall alleges (incorrectly) is technical noncompliance with a civil statute.  That is not enough under § 496.

*Second*, Plaintiff has not alleged causation under § 496, which requires that she allege a false pretense caused her to make the payments she now claims Defendants obtained by theft.  *People v. Wooten*, 44 Cal. App. 4th 1834, 1842-43 (1996).  But Plaintiff does not allege that she would not have purchased the magazine if Defendants had not violated the requirements of the ARL.  This is fatal to her claim.  *Id.*; s*ee also People v. Lorenzo,* 64 Cal. App. 3d Supp. 43, 46-47 (App. Dep't Super Ct. 1976) (no theft by false pretenses where there was no reliance on defendant's conduct).[8]

*Third*, Hall failed to plead her § 496 claim with particularity under Rule 9(b).  Section 496 claims based on theft by false or fraudulent pretenses must be pleaded with particularity.  To meet this requirement, more than just the facts of the transaction must be alleged: "[a]verments of fraud must be accompanied by the

---

[8] Further, Hall's entire theory rests on the notion that the only false pretense or representation was that defendants' sales materials were in compliance with the ARL.  But even if this were true (it is not), such a representation would be one of law not fact as is required under § 496.  And Hall does not allege that she believed, let alone reasonably believed, that she would receive magazines for years without paying for them.

- 18 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

'who, when, where, and how' of the misconduct charged." *Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 WL 5930273, at *14-16 (N.D. Cal. Oct. 12, 2016) (quoting *Vess*, 317 F.3d at 1106). Hall makes no such allegations here.

All of these deficiencies are fatal to this claim, all of them were identified in Defendants' prior briefing and Plaintiff has not even attempted to correct them.

## D. Hall's Conversion Claim (Count III) Also Fails For Additional Reasons.

To state a claim for conversion, Hall must plausibly allege (1) ownership or right to possession of property at time of alleged conversion; (2) defendants' conversion of property by a wrongful act; and (3) resulting damages to plaintiff. *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1452 (2013).  She fails to do so.  The only wrongful act Hall alleges is a violation of the ARL.  As set out above, that claim fails and Hall therefore has not alleged any wrongful act that could support a claim of conversion.

Further, a plaintiff's consent to the transfer at issue defeats a claim for conversion.  *See Klett v. Sec. Acceptance Co.*, 38 Cal. 2d 770, 789 (1952); *Driver v. Acquisto*, 145 Cal. App. 2d 304, 308 (1956).  Whether or not a technical ARL violation occurred here, Hall's complaint and exhibits affirmatively demonstrate that she accepted defendants' offer of a magazine subscription at a set price and agreed to pay for the magazines she ordered and received.

At most, Hall alleges that: (i) she was offered a magazine subscription at a price on Instagram; (ii) she then clicked on the "checkout now" prompt; (iii) she was then prompted to select a "payment method," chose credit card payment, and entered her credit card information; (iv) she then, after reading multiple notices that the subscription would automatically renew, clicked on the "submit order" button, at which point she was charged the initial amount; and (v) a month before

- 19 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

being charged for the automatic renewal, she got a postcard reminding her of the automatic renewal and the price and telling her how to cancel and avoid those charges, but that she did not do so. This series of voluntary acts by Hall constitute consent to her purchase of a magazine subscription at the prices stated and bar her claim for conversion.

> ### E. **Plaintiff Cannot Plead Plausible Claims in a Second Amended Complaint.**

Plaintiff has now twice failed to allege plausible allegations, and has failed to remedy any of the defects in her claims identified by this Court and Defendants. Because the flow she allegedly encountered complied with the ARL, and because it is now clear that she has no other factual allegations to make, further amendment would be futile. *Vogel v. Travelers Cas. Ins. Co. of Am.*, No. SACV1700612AGJDEX, 2017 WL 5642302, at *3 (C.D. Cal. May 18, 2017) (denying leave to amend where amendment was futile).

## 4. **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court dismiss Plaintiff's complaint in its entirety and without leave to amend.

Respectfully submitted,

Dated: October 28, 2019      **BAKER & HOSTETLER LLP**

By:     */s/ Kyle T. Cutts*
        MICHAEL K. FARRELL (*pro hac vice*)
        KYLE T. CUTTS (CA BAR NO. 257641)
        DANTE A. MARINUCCI (*pro hac vice*)
        Key Tower
        127 Public Square, Suite 2000
        Cleveland, OH  44114-1214
        Telephone:     216.621.0200
        Facsimile:     216.696.0740

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MARCUS S. MCCUTCHEON (CA BAR NO. 281444)
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Telephone:    714.754.6600
Facsimile:    714.754.6611

*Attorneys for Defendants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND