1  **CARROLL, KELLY, TROTTER,**
   **FRANZEN& McBRIDE**
2  **MICHAEL TROTTER (SBN 139034)**
   **mjtrotter@cktfmlaw.com**
3  **DAVID P. PRUETT (SBN 155849)**
   **dpruett@cktfmlaw.com**
4  **111 West Ocean Boulevard, 14th Floor**
   **Post Office Box 22636**
5  **Long Beach, California 90801-5636**
   **Telephone No. (562) 432-5855 / Facsimile No. (562) 432-8785**
6  **Attorneys for Plaintiff, LINDA HALL, in individually and on behalf of all**
7  **others similarly situated**

8

9              **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11

12  LINDA HALL, individually and on       CASE NO.: 8:19-cv-1153-AG-ADs
    behalf of all others similarly situated,

13                                         Hon. Andrew J. Guilford
                 Plaintiff,
14                                         **PLAINTIFF'S OPPOSITION TO**
           v.                              **TIME, INC.'S AND MEREDITH**
15                                         **CORP.'S MOTION TO DISMISS**
    TIME, INC., a Delaware corporation;    **FIRST AMENDED CLASS ACTION**
16  MEREDITY CORP., an Iowa                **COMPLAINT**
    corporation; and DOES 1-100,
17  inclusive,                             **DATE:      February 3, 2020**
                                           **TIME:      10:00 a.m.**
18               Defendants.               **DEPT:      Courtroom 10D**

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

I.      INTRODUCTION ............................................................................ 5

II.     DEFENDANTS' AUTOMATIC RENEWAL PROGRAM IS
        UNLAWFUL AND HALL'S UCL CLAIMS ARE PLAUSIBLE ................ 6

        A.      The Provisions of the ARL .......................................... 6

        B.      Violation of § 17602(a)(1) Adequately Alleged ......................... 6

        C.      Violation of § 17602(a)(2) Adequately Alleged ...................... 13

        D.      Violation of § 17602(a)(3) Adequately Alleged ...................... 16

III.    HALL HAS STANDING TO ASSERT HER UCL CLAIMS ................. 17

IV.     HALL'S PENAL CODE CLAIM IS PLAUSIBLE. ............................. 21

        A.      Defendants' "specific intent" Argument Has No Merit ........... 21

        B.      The Cases Cited By Defendants Are Unpersuasive ............... 21

        C.      Defendants Omit Cases Which Support Hall's Claim ............ 22

        D.      Defendants' Reliance Argument has no Merit ...................... 23

        E.      Hall's Penal Code Claim Can Also Be Prosecuted As
                Larceny .................................................................... 25

        F.      Defendants' argument that Hall's claim has not been
                pled with particularity has no merit. .................................. 26

V.      HALL'S CONVERSION CLAIM IS PLAUSIBLE. .............................. 27

VI.     LEAVE TO AMEND IS REQUESTED ........................................... 28

VII.    CONCLUSION .......................................................................... 28

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                 **Page(s)**

*Arthur Anderson v. Superior Court,*
   67 Cal.App.4th 1481 (1998)(1998)  ............................................. 24

*Crull v. Gem Ins. Co.*
   58 F.3d 1386 (9th Cir. 1995)  ..................................................... 28

*Daniel v. Ford Motor Co.*
   806 F.3d 1217 (9th Cir. 2015)  ................................................. 28

*Igauge v. Howard,*
   114 Cal.App.2d 122 (1952)(1952)  ........................................... 31

*In re Coca-Cola Prods. Mktg & Sales Practices Litig II, No.*
   14-md-02555-JSW 2016 U.S. Dist. LEXIS 66266 at
   *12 (N.D. Cal. May 19, 2016)["[A]  ........................................... 22

*Johnson v. City of Shelby,*
   574 U.S. 10 (2014)(2014)  ....................................................... 28

*Johnson v. Pluralsight, LLC,*
   728 Fed. Appx. 674, (9th Cir. 2018)  ....................................... 20

*Kane v. Chobani, No. 12-CV-02425-LHK*
   2013 WL 528925 (N.D. Cal. Sept. 19, 2013)  .......................... 22

*Kissel v. Code 42 Software, Inc., No. SACV 15-1936-JLS*
   (KESx) 2016 WL 7647691 at *8 (C.D. Cal. April 14, 2016)  .... 21, 22

*Lopez v. Stages of Beauty, LLC,*
   307 F.Supp.3d 1058 (S.D. Cal. 2018)  ..................................... 23

*MMM Holdings, Inc. v. Reich,*
   21 Cal.App.5th 167 (2018)(2018)  ........................................... 24

*No. 19-CV-00066-LHK*
   2019 WL 3231012 at *8-9 (N.D. Cal. July 18, 2019)  .............. 25

*Odom v. Microsoft Corp.,*
   486 F.3d 541 (9th Cir. 2007)  ................................................. 29

*People v. Brady,*
   275 Cal.App.2d 984 (1969)(1969)  .......................................... 26

*People v. Davis*
   19 Cal.4th 301 (1998)(1998)  ................................................. 29

*People v. Hartley,*
   248 Cal.App.4th 620 (2016)(2016)  ......................................... 25

*People v. Kaufman*
   17 Cal.App.5th 370 (2017)(2017)  ........................................... 29

*People v. Randono,*
   32 Cal.App.3d 164 (1973)(1973)  ............................................ 26

*People v. Shannon,*
   66 Cal.App.4th 649 (1998)(1998)  ................................................. 29

*People v. Wooten,*
   44 Cal.App.4th 1834 (1996)(1996)  ............................................. 26

*Perry v. Superior Court,*
   57 Cal.2d 276 (1962)(1962) ........................................................ 24

*Price v. Synapse Group, Inc. No. 16-cv-01524-BAS-BLM*
   2017 WL 3131700 at *9 (S.D. Cal. July 24, 2017)  ...................... 31

*Roz v. Nestle Waters N. Am., Inc. No. 2:16-cv-04418-SVW-JEM,*
   2017 WL 6942661 (C.D. Cal. Dec. 6, 2017)  ............................... 22

*Sateriale v. R.J. Reynolds Tobacco Co.,*
   697 F.3d 777 (9th Cir. 2012) ....................................................... 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
   806 F.2d 1393 (9th Cir. 1986) ..................................................... 31

*Switzer v. Wood,*
   35 Cal.App.5th 116, 247 Cal.Rptr.3d 114 (2019) .................. 25, 26

*Tavernier v. Maes,*
   242 Cal.App.2d 532 (1966)(1966) .............................................. 30

*Vess. V. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ..................................................... 30

**Statutes**

Bus. & Prof. Code § 17600 ............................................................  9

Bus. & Prof. Code § 17601............................................................. 9

Bus. & Prof. Code § 17602 . 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20

Cal. Penal Code § 496 ................................................. 25, 26, 27, 28

Cal. Penal Code § 484 ............................................................ 27, 29

Bus. & Prof. Code § 17603 ............................................. 9, 20, 21, 23

**Rules**

Fed. R. Civ. P. 9  ............................................................... 24, 29

Fed. R. Civ. P. 15 ........................................................................ 31

1  Plaintiff Linda Hall respectfully submits the attached points and
2  authorities in opposition to defendants' motion to dismiss First
3  Amended Class Action Complaint.

4  **I.  INTRODUCTION**

5  Defendants incorrectly argue that the exhibits attached to the
6  First Amended Complaint ("FAC") contradict the allegations of the FAC
7  (and the original Complaint).  Defendants' argument in that regard is
8  unfounded and based upon arguments contrived by defendants that
9  ignore the statutory protections explicitly provided by the "automatic
10  renewal law," or "ARL," as provided by Cal. Business and Professions
11  Code section 17602.  Defendant's approach would nullify the ARL,
12  and leave defendants able to continue with the automatic renewal
13  practices that the ARL targeted to forbid.

14  Defendants' attempt to equate the purchase of a magazine
15  subscription to consent to automatic renewal of that subscription;
16  which was the very practice that Cal. Business and Professions Code
17  section 17602 was meant to outlaw.

18  In response to the Court's order granting leave to amend,
19  plaintiff carefully described all of the facts that support the causes of
20  action in the FAC – Doc. 26, 6:18-18:20 (¶¶ 18-43).  Those allegations
21  of the FAC have added facts, details, including the facts regarding the
22  deceptiveness of defendants' renewal practices that emerge from a
23  detailed and methodical marshalling of the facts, to demonstrate the
24  merit to the allegations.  If anything, the original Complaint, with
25  broad descriptions of facts, allowed defendants the opportunity to try
26  to poke holes in the causes of action.  The new allegations close any
27  such holes, with the added detailed factual allegations.

28

1     For the reasons that will be stated, the motion to dismiss should

2 be denied.

3 **II.  DEFENDANTS' AUTOMATIC RENEWAL PROGRAM IS**

4     **UNLAWFUL AND HALL'S UCL CLAIMS ARE PLAUSIBLE**

5     **A.  The Provisions of the ARL**

6     The Legislature's intent was to "end the practice of ongoing

7 charging" of credit or debit cards "without the consumer's *explicit*

8 consent." (Bus. & Prof. Code § 17600, italics added.)  Accordingly, in

9 addition to other requirements, the ARL requires a business to

10 "request" and obtain the "consumer's *affirmative* consent to the

11 agreement containing the automatic renewal offer terms."  (Bus. &

12 Prof. Code § 17602(a)(1) & (2), italics added.)

13     Section 17601(a) defines the term "Automatic renewal" as a

14 "plan or arrangement in which a paid subscription or purchasing

15 agreement is automatically renewed at the end of definite term for a

16 subsequent term."

17     Pursuant to section 17603: "In any case in which a business

18 sends any goods, wares, merchandise, or products to a consumer,

19 under a continuous service agreement or automatic renewal of a

20 purchase, without first obtaining the consumer' s affirmative consent

21 as described in Section 17602, the goods, wares, merchandise, or

22 products shall for all purposes be deemed an unconditional gift to the

23 consumer, who may use or dispose of the same in any manner he or

24 she sees fit without any obligation whatsoever on the consumer's part

25 to the business…"

26     **B.  Violation of § 17602(a)(1) Adequately Alleged**

27     The facts now alleged regarding Defendants' "Advertisement

28 Page" and "Checkout Page" now clearly demonstrate that defendants

1   failed to comply with 17602(a)(1), by "Fail[ure] to present the

2   automatic renewal offer terms or continuous service offer terms in a

3   clear and conspicuous manner before the subscription or purchasing

4   agreement is fulfilled and in visual proximity … to the request for

5   consent to the offer."

6        Regarding the reasons that the "Advertisement Page" did  not

7   satisfy the requirements of § 17602(a)(1), the FAC now has the

8   additional factual allegations, in ¶ 22, that "A subscription to People

9   Magazine did not result from the use of the red button with the words

10  'checkout now.' (Ex. B, 1-2.)  There is no information on the screen

11  pertaining to the acceptance or rejection of the automatic renewal and

12  there is no prompt or feature on the screen which operates to obtain

13  the subscriber's affirmative consent to automatic renewals. (Exh. B

14  p. 2.)  Defendants' placement of the words 'All magazine subscriptions

15  will automatically renew annually' on the Advertisement Page failed to

16  comply with the ARL for at least four additional reasons," stating:

17       a)    First, the words on the Advertisement Page "fail[ed] to

18           present the automatic renewal offer terms or continuous

19           service offer terms in a clear and conspicuous manner

20           before the subscription or purchasing agreement is fulfilled

21           and i***n visual proximity … to the request for consent to***

22           ***the offer***" in violation of subdivision (a)(1) of section

23           17602.  Because the "checkout now" button navigates

24           away from the Advertisement Page to the Checkout Page,

25           the automatic renewal language on that page was not (and

26           still is not) "clear and conspicuous" nor in "visual

27           proximity … to the request for consent to the offer," as that

28           language was in fine print and was placed on an

1  Advertisement Page from the offer ultimately presented on

2  the separate Checkout Page.

3  b)  Second, the automatic renewal fine print of the

4  Advertisement Page did not explain how the rate would

5  change from an initial offer for 40 issues at a discounted

6  price to an annual rate at an undiscounted price when

7  automatically renewed, as required by subdivision (a)(2) of

8  section 17602.

9  c)  Third, that fine print did not "include[] the automatic

10  renewal offer terms or continuous service offer terms,

11  cancellation policy, and information regarding how to

12  cancel" (nor did it provide such information "in a manner

13  that is capable of being retained by the consumer"), in

14  violation of subdivision (a)(3) of section 17602.

15  d)  Fourth, considering the Advertisement Page referred to a

16  "Free Tote," the fine print regarding automatic renewal did

17  not address that "free gift" and "disclose in the

18  acknowledgment how to cancel, and allow the consumer to

19  cancel, the automatic renewal or continuous service before

20  the consumer pays for the goods," the "Free Tote," in

21  violation of subdivision (a)(3) of section 17602.

22  Doc. 26, 8:26.

23  Going on, ¶ 23, now alleges that "clicking on the 'checkout now'

24  prompt on the Advertisement Page navigates to a separate and

25  different Checkout Page. Doc. 26, 9:1-3 (¶ 23), referring to  Exh. B,

26  7:19-3-6. Because the Advertisement Page does not result in a

27  subscription, it cannot satisfy the requirements of 17602(a)(1).

28  Defendants argue that the Advertisement Page is more

1  disclosure.  The defect with defendants' argument is that the

2  disclosure does not satisfy the statutory requirements of the ARL.

3  Providing what defendants consider to be an additional disclosure,

4  that does not satisfy the requirements of the statute, means that the

5  additional disclosure cannot be relied upon by defendants in their

6  effort to assert compliance with the ARL.

7      Defendants acknowledge factual allegations made in the FAC

8  provide more facts, referring to the allegations that now include that

9  "an offer for 'AllRecipes' appeared between the Automatic Renewal

10  Notice and the 'submit order' button.  Opp., 17:14-15.  That is one

11  aspect of the added detailed facts in the FAC that demonstrate the a

12  violation occurred.  Doc. 26, 6:18-18:20 (¶¶ 18-43).

13      The example acknowledged by defendants demonstrates a

14  violation of § 17602(a)(1), by demonstrating defendants "Fail[ed] to

15  present the automatic renewal offer terms or continuous service offer

16  terms in a clear and conspicuous manner before the subscription or

17  purchasing agreement is fulfilled and in visual proximity … to the

18  request for consent to the offer."

19      An offer for a subscription to another magazine, "AllRecipes,"

20  distractingly appears on the Checkout Page, between a relatively

21  inconspicuous "Automatic Renewal Notice" and the a meandering

22  presentation of "Review Your Order," and a red button for "submit

23  order," surrounded by distracting logos, for other organizations, like

24  the Better Business Bureau, without any attempt to obtain the

25  customer's affirmative consent to automatic renewal.  Doc. 26, 10:24-

26  12:21 (¶¶ 29-34).

27      Regarding how the AllRecipes Offer factored into the defendants'

28  failure to comply with the specific terms of the ARL, the FAC contains

1  additional allegations from the Complaint, in ¶ 35, as follows:

2        Defendants' placement of words Purported Annual Renewal

3  Notice (Exh. B, p. 5) on the Checkout Page failed to comply with the

4  ARL for at least four additional reasons:

5        a)    First, because the Purported Annual Renewal Notice is

6              followed by the AllRecipes Special Offer, it was not

7              presented "in a clear and conspicuous manner before the

8              subscription or purchasing agreement is fulfilled and in

9              visual proximity … to the request for consent to the offer."

10             Immediately following the Purported Annual Renewal

11             Notice, the clearer and more conspicuous AllRecipes

12             Special Offer appeared, with a check box inviting

13             subscription to AllRecipes, not People Magazine.  Also, the

14             attention-grabbing logos following the bright red "submit

15             order" button, for digicert and BBB, were relatively more

16             clear and conspicuous than the Purported Annual Renewal

17             Notice.  Further, the fine print after those logos gave

18             further information pertinent to the decision of whether to

19             click the bright red "submit order button," even after that

20             button appeared, suggesting that more information

21             pertinent to the decision of whether to submit order was

22             expected by defendants to be read there.  Therefore, the

23             Purported Annual Renewal Notice was not clear and

24             conspicuous.

25       b)    Second, the AllRecipes Special Offer separated the

26             Purported Annual Renewal Notice from "the request for

27             consent to the offer" reflected by the bright red "submit

28             order" button.  Therefore, the Purported Annual Renewal

Notice was not in "visual proximity" to "the request for consent to the offer," the bright red "submit order" button. For those reasons, the Purported Annual Renewal Notice "fail[ed] to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and i*n visual proximity ... to the request for consent to the offer*" in violation of subdivision (a)(1) of section 17602.

c)   Third, the Purported Annual Renewal Notice did not "include[] the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel" (nor did it provide such information "in a manner that is capable of being retained by the consumer"), in violation of subdivision (a)(3) of section 17602.

d)   Fourth, although the Purported Automatic Renewal Notice stated that a reminder of renewal would be sent approximately 30 days in advance, that statement failed to satisfy any requirements of Business and Professions Code section 17602, by failing at the time of the initial subscription agreement: (1) "to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity ... to the request for consent to the offer," with the request for consent to the offer being contained in Exhibit B (§ 17602(a)(1)); (2) obtain consent to charge the credit card or

payment method provided at the time of offer by "first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time" (§ 17602(a)(2)); and (3) "to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services" (§ 17602(a)(3)).  A later "reminder" of renewal could not replace the prospective agreement to renewal, with the prospective protections, as required by the ARL.

e) Fifth, the Purported Automatic Renewal Notice did not address the "Free Tote," mentioned on the Advertisement Page, and thereby failed to "disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods," the "Free Tote," in violation of subdivision (a)(3) of section 17602.

f) Sixth, considering the foregoing deficiencies, the Purported Annual Renewal Notice of the Checkout Page did not

"obtain[] the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time," prior to "[c]harge [to] the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service," as required by subdivision (a)(2) of section 17602.  Because there was inadequate disclosure of renewal, there was no authority to charge the consumer's card or other payment method for renewal.

Doc. 12:22-15:18.

Again, defendants were not at liberty to stray from the statutory requirements.  Providing a disclosure that was not "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity ... to the request for consent to the offer" means that the method that defendants chose failed to comply with the ARL.

## C.   Violation of § 17602(a)(2) Adequately Alleged

§ 17602(a)(2) forbids "Charg[ing] the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time."

1   Neither the Advertisement Page nor the Checkout Page stated

2   anything about "the automatic renewal offer terms or continuous

3   service offer terms," and did not how that would be different than the

4   "promotional or discounted price for a limited period of time" that was

5   the subject of the Advertisement Page and the Checkout Page.  At

6   best, the deficient statements regarding automatic renewal only say

7   that automatic renewal would occur, without stating that the price of

8   the automatic renewal would be different from the promotion price.

9   The FAC alleges, regarding the Advertisement Page, "the

10   automatic renewal fine print of the Advertisement Page did not explain

11   how the rate would change from an initial offer for 40 issues at a

12   discounted price to an annual rate at an undiscounted price when

13   automatically renewed, as required by subdivision (a)(2) of section

14   17602."  Doc. 26, 8:11-15 (¶ 22(b)).

15   Regarding the Checkout Page, the FAC alleges: "although the

16   Purported Automatic Renewal Notice stated that a reminder of renewal

17   would be sent approximately 30 days in advance, that statement failed

18   to satisfy any requirements of Business and Professions Code section

19   17602, by failing at the time of the initial subscription agreement: (1)

20   "to present the automatic renewal offer terms or continuous service

21   offer terms in a clear and conspicuous manner before the subscription

22   or purchasing agreement is fulfilled and in visual proximity … to the

23   request for consent to the offer," with the request for consent to the

24   offer being contained in Exhibit B (§ 17602(a)(1)); (2) obtain consent to

25   charge the credit card or payment method provided at the time of offer

26   by "first obtaining the consumer's affirmative consent to the

27   agreement containing the automatic renewal offer terms or continuous

28   service offer terms, including the terms of an automatic renewal offer

1   or continuous service offer that is made at a promotional or

2   discounted price for a limited period of time" (§ 17602(a)(2))."  Doc. 26,

3   14:3-18 (¶ 35(d)).  Additionally, the FAC alleges: "the Purported

4   Annual Renewal Notice of the Checkout Page did not "obtain[] the

5   consumer's affirmative consent to the agreement containing the

6   automatic renewal offer terms or continuous service offer terms,

7   including the terms of an automatic renewal offer or continuous

8   service offer that is made at a promotional or discounted price for a

9   limited period of time," prior to "[c]harge [to] the consumer's credit or

10  debit card, or the consumer's account with a third party, for an

11  automatic renewal or continuous service," as required by subdivision

12  (a)(2) of section 17602.  Because there was inadequate disclosure of

13  renewal, there was no authority to charge the consumer's card or

14  other payment method for renewal."  Doc. 26, 15:7-18 (¶ 35(f)).

15       The FAC alleges failure to disclose renewal terms, with the only

16  time that defendants stated the terms of the renewal was when

17  defendants renewed: "Under the 'Thank you for being a valued

18  customer' greeting, down the middle, the fine print of the Valued

19  Customer Postcard, stated: [¶] … 'Your PEOPLE subscription will

20  continue for the next term of issues using the account number you

21  agreed to be billed.  You will be billed or charged $67.50 for a total of

22  54 issues"; terms different than the promotional offer of 40 issues for

23  $40.  Doc. 17:1-9 (¶ 41).

24       Going on, the FAC alleged: "Buried within the fine print of the

25  Valued Customer Postcard were the actual terms of renewal that had

26  been unlawfully omitted from the initial subscription offer.  The

27  Valued Customer Postcard could not retrospectively accomplish what

28  defendants were obligated to do under the ARL at the time of the

1   initial subscription.  The Valued Customer Postcard did not, and

2   could not, remedy the failures to satisfy obligations owed at the time

3   of the original subscription, such as the requirements of Business and

4   Professions Code section 17602, which required at the time of the

5   initial subscription agreement: (1) "to present the automatic renewal

6   offer terms or continuous service offer terms in a clear and

7   conspicuous manner before the subscription or purchasing agreement

8   is fulfilled and in visual proximity … to the request for consent to the

9   offer," with the request for consent to the offer being contained in

10  Exhibit B (§ 17602(a)(1)); (2) obtain consent to charge the credit card

11  or payment method provided at the time of offer by "first obtaining the

12  consumer's affirmative consent to the agreement containing the

13  automatic renewal offer terms or continuous service offer terms,

14  including the terms of an automatic renewal offer or continuous

15  service offer that is made at a promotional or discounted price for a

16  limited period of time" (§ 17602(a)(2)); and (3) "to provide an

17  acknowledgment that includes the automatic renewal offer terms or

18  continuous service offer terms, cancellation policy, and information

19  regarding how to cancel in a manner that is capable of being retained

20  by the consumer. If the automatic renewal offer or continuous service

21  offer includes a free gift or trial, the business shall also disclose in the

22  acknowledgment how to cancel, and allow the consumer to cancel, the

23  automatic renewal or continuous service before the consumer pays for

24  the goods or services" (§ 17602(a)(3))."  Doc. 26, 17:21-18:16 (¶ 42).

25  **D.    Violation of § 17602(a)(3) Adequately Alleged**

26  Defendants failed to comply with § 17602(a)(3)'s requirements

27  relative to "a free gift or trial," by failing to "disclose in the

28  acknowledgment how to cancel, and allow the consumer to cancel, the

1  automatic renewal or continuous service before the consumer pays for

2  the goods or services.'"

3      Relative to the Advertisement Page, the FAC allegations include

4  that it "referred to a 'Free Tote,' the fine print regarding automatic

5  renewal did not address that 'free gift' and 'disclose in the

6  acknowledgment how to cancel, and allow the consumer to cancel, the

7  automatic renewal or continuous service before the consumer pays for

8  the goods,' the 'Free Tote,' in violation of subdivision (a)(3) of section

9  17602."  Doc. 26, 8:21-26 (¶ 22(d)).

10     Similarly, as to the Checkout Page, the FAC alleges the same

11  violation.  Doc. 26, 14:18-26 (¶ 35(e)).

12  ## III.   HALL HAS STANDING TO ASSERT HER UCL CLAIMS

13     Defendants argue that Hall does not have standing because she

14  does not allege "but for" causation or reliance.  Because defendants

15  violated the ARL, they did not have the right to charge plaintiff's credit

16  card.  Yet, the FAC alleges: "On October 14, 2018, Time debited

17  Plaintiff's account in the amount of $67.50.  The point of sale on

18  Plaintiff's bank account statement states: 'TME*PEOPLE MAGAZINE.'"

19  Doc. 26, 18:17-20 (¶ 43).  That violated Business and Professions

20  Code section 17602(a)(2). It also violated Hall's rights under section

21  17603, which defined the magazines to "be deemed an unconditional

22  gift."

23     The argument has no merit because Hall alleges a violation of

24  only the unlawful or unfair prongs of the UCL; Hall does not allege a

25  violation of the fraud prong of the UCL.

26     In *Johnson v. Pluralsight, LLC,* 728 Fed. Appx. 674, (9th Cir.

27  2018), the Court addressed the issue of standing to assert a violation

28  of the ARL or UCL, concluding a plaintiff "sufficiently alleged an injury

1   in fact," by "alleged monetary harm in the form of unlawfully retained

2   subscriptions payments by Pluralsight," based upon violating § 17602's

3   requirements, "including failing to provide information on cancellation

4   policies prior to charging his credit card, Pluralsight transformed its

5   subscriptions into unconditional gifts pursuant to section 17603." *Id.* at

6   675-676.   "Accordingly, Pluralsight was not entitled to charge customers

7   such as Johnson for the service. Johnson has thus alleged a concrete

8   economic injury as opposed to a bare procedural violation—that is both

9   particularized and actual in nature.  [Citation.] This is sufficient to satisfy

10  Article III's injury-in-fact requirements" (and of the UCL).    *Ibid.*

11      Accordingly, Hall has standing and, moreover, because Hall has

12  alleged only unlawful and unfair conduct, she does not need to allege

13  causation or reliance.

14      Such reliance and causation arguments were raised in *Kissel v.*

15  *Code 42 Software, Inc.,* No. SACV 15-1936-JLS (KESx) 2016 WL

16  7647691 at *8 (C.D. Cal. April 14, 2016), explaining that the "concept

17  of reliance may not apply to UCL claims that do *not* sound in fraud."

18  *Ibid.*; citing, *inter alia, In re Tobacco II Cases,* 46 Cal.4th 298, 325 n.17

19  (2009).   "[C]ourts have used a relaxed causation standard where a

20  UCL claim does not sound in fraud."  *Ibid.*

21      Further, a complaint, adequately alleges causation if a plaintiff

22  "alleges that she purchased a subscription plan from Defendant

23  during the Class Period but that Defendant failed to (a) present the

24  automatic renewal offer terms in a clear and conspicuous manner, (b)

25  obtain affirmative consent before fulfilling the subscription, or (c)

26  provide an acknowledgment as required by law."  Because the

27  defendant charged and continues to charge "without having first

28  complied with the ARL," a plaintiff has "suffered an economic injury as

1   a result of Defendant's unlawful or unfair practices as to its automatic

2   renewal or continuous service agreements. These allegations of

3   causation are sufficient to confer standing at the pleading stage."

4   *Ibid.*; citing *Backus v. Gen. Mills*, 122 F. Supp. 3d 909, 925-926 (N.D.

5   Cal. 2015).

6       Other district courts have reached the same conclusion: *Kane v.*

7   *Chobani*, No. 12-CV-02425-LHK 2013 WL 528925 (N.D. Cal. Sept. 19,

8   2013).  In reaching her conclusion in *Kane*, Judge Koh cited *Durell*

9   which is cited by defendants to support their contention that reliance

10  is required.  However, as explained by Judge Koh, reliance is not

11  required unless the unlawful conduct is based on fraud and here it is

12  based on the ARL.  (Accord, *In re Coca-Cola Prods. Mktg & Sales*

13  *Practices Litig II*, No. 14-md-02555-JSW 2016 U.S. Dist. LEXIS 66266

14  at *12 (N.D. Cal. May 19, 2016) ["[A] plaintiff must establish reliance

15  under the unlawful and unfair prongs where, as here, the gravamen of

16  the claim is based on alleged misrepresentation.

17      As the Ninth Circuit Court of Appeal similarly observed in

18  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir.

19  2012): "Because the plaintiffs' UCL claim sounds in fraud, they are

20  required to prove 'actual reliance on the allegedly deceptive or

21  misleading statements' [citations] and that 'the misrepresentation was

22  an immediate cause of [their] injury-producing conduct.' [Citation.]

23      In support of their standing argument, defendants cite *Roz v.*

24  *Nestle Waters N. Am., Inc.* No. 2:16-cv-04418-SVW-JEM, 2017 WL

25  6942661, at *4 (C.D. Cal. Dec. 6, 2017) for the proposition that "UCL's

26  causation requirement in context of alleged ARL violation demands

27  that plaintiff plead and prove that defendants' 'nondisclosure was an

28  immediate cause of the plaintiff's injury-producing conduct' (citation

1    omitted).”

2         However, defendants have misread *Roz*, which states that for a

3    violation of § 17603, “when delivering a product to a consumer, that

4    consumer has no obligation to pay the business for the product because

5    it is deemed a gift.  If indeed the Defendant violated CAPRS, as is alleged

6    in the SAC, the Plaintiffs were entitled to keep any products that were

7    delivered as the result of the unlawful automatic renewal plan, per §

8    17603.  The statute specifically places no conditions on these gifts,

9    meaning that the product is considered a gift whether or not the

10   Plaintiffs can show they did not actually want the product.  As a result,

11   the Plaintiffs were entitled to keep the delivered water products and had

12   no obligation to pay for them.  When the Defendant collected money from

13   the Plaintiffs that it was not owed by charging their debit or credit cards,

14   the Plaintiffs were undoubtedly injured and lost money as the result of

15   the Defendant’s actions.  Being forced to pay money for what should be

16   considered a gift must qualify as an injury.”  *Ibid.*

17        In *Lopez v. Stages of Beauty, LLC*, 307 F.Supp.3d 1058, 1069-

18   1070 (S.D. Cal. 2018): “Plaintiff has properly alleged that he suffered

19   an injury in fact that was caused by Defendant’s actions, and

20   therefore meets the standing requirements of the UCL and Article III.

21   Plaintiff has alleged that all products received from Defendant in

22   violation of the ARL constitute unconditional gifts and, therefore,

23   Plaintiff seeks restitution in the amount of the subscription payments.

24   Under the UCL, ‘[t]he court may make such orders or

25   judgments . . . as may be necessary to restore to any person in

26   interest any money or property . . . acquired by means of such unfair

27   competition.’”

28

## IV.   HALL'S PENAL CODE CLAIM IS PLAUSIBLE.

### A.   Defendants' "specific intent" Argument Has No Merit

Defendants argue that "Hall does not allege that defendants knew they were violating the ARL, which is the only way they could have known that the payments she voluntarily made were somehow 'stolen' from her when they received them."

Defendants' argument is incorrect.  First, Hall does allege that the defendants knew they were violating the law.  Second, intent to defraud "'may be and usually must be, inferred circumstantially.' [Citation.]" *Perry v. Superior Court,* 57 Cal.2d 276, 285 (1962).  Third, "intent [and] knowledge . . . may be alleged generally."  Fed. R. Civ. P. 9(b).  And fourth, Hall did not need to allege defendants "knew they were violating the ARL . . . ."  "It was established long ago that ignorance of the law does not excuse one from the consequences of the law." *Arthur Anderson v. Superior Court,* 67 Cal.App.4th 1481, 1506-1507 (1998).

Hall has alleged that defendants had actual or constructive knowledge of the ARL and despite their knowledge, defendants both obtained, and in some cases also refused to return, money that was unlawfully obtained.

### B.   The Cases Cited By Defendants Are Unpersuasive

*MMM Holdings, Inc. v. Reich*, 21 Cal.App.5th 167 (2018) fails to support defendants' argument.  MMM Holdings sued attorney Reich for distributing documents obtained in qui tam litigation to other attorneys for their use in related cases.  There was no unlawful conduct pursuant to a statute or false pretense employed to obtain the documents.

1    *People v. Hartley*, 248 Cal.App.4th 620, 627 (2016) does not

2    assist defendants because, as explained therein, in determining

3    whether "a false pretense was made" the 'circumstances connected

4    with the transaction [and] the entire conduct of the defendant . . . may

5    be looked to . . . .' [Citation.]"

6         Here, looking at the entire conduct of the defendants, Hall has

7    pled a plausible claim that defendants, knowing their conduct was

8    unlawful, put their customers into automatic renewals without their

9    consent, unlawfully debited their accounts and, in some cases,

10   refused to return their money, all under the unlawful pretense that

11   the money was lawfully owed.

12   **C.    Defendants Omit Cases Which Support Hall's Claim**

13        In *Allure Labs, Inc. v. Markushevska* (2019) No. 19-CV-00066-

14   LHK 2019 WL 3231012 at *8-9 (N.D. Cal. July 18, 2019) the court

15   concluded that a claim for civil theft could be based on "falsified

16   invoices," and liability under Cal. Penal Code section 496(a): "Every

17   single California case this Court has reviewed interprets § 496(a) to

18   require nothing more than the following three elements be met to

19   establish a violation of § 496(a): "(a) the property was stolen, and (b)

20   the defendant was in possession of it, (c) knowing it was stolen."

21   "Moreover, as to § 496(c), the California Court of Appeal explicitly held

22   that "the language of section 496(c) is clear and unambiguous."

23   *Switzer v. Wood*, 35 Cal.App.5th 116, 126, 247 Cal.Rptr.3d 114 (2019).

24   "All that is required for civil liability to attach under section 496(c),

25   including entitlement to treble damages, is that a 'violation' of

26   subdivision (a) . . . of section 496 is found to have occurred." *Id.* at

27   121.  "A violation may be found to have occurred if the person

28   engaged in the conduct described in the statute" under § 496(a). *Id.*

1    *Switzer v. Woods,* 35 Cal.App.5th 116 (2019), discusses *Allure*
2    *Labs,* concluding: "The language of section 496(c) is clear and
3    unambiguous.  All that is required for civil liability to attach under
4    section 496(c), including entitlement to treble damages, is that a
5    'violation' of subdivision (a) or (b) of section 496 is found to have
6    occurred.  [Citation.]  A violation may be found to have occurred if the
7    person engaged in the conduct described in the statute.  [Citations.]
8    While section 496(a) covers a spectrum of impermissible activity
9    relating to stolen property, the elements required to show a violation of
10   section 496(a) are simply that (i) property was stolen or obtained in a
11   manner constituting theft, (ii) the defendant knew the property was so
12   stolen or obtained, and (iii) the defendant received or had possession of
13   the stolen property."  *Id.* at 126-128, 130.

14       **D.    Defendants' Reliance Argument has no Merit**
15       Defendants' reliance argument is incorrect.
16       First, as the authorities in the preceding section show, reliance
17   is not one of the three elements required to assert a claim of civil theft.
18   Further, "[t]he crime of theft by false pretenses is complete when, by
19   means of such false pretenses, the fraud intended is consummated by
20   obtaining the property sought . . . ."  *People v. Brady,* 275 Cal.App.2d
21   984, 995 (1969).  Here, the fraud intended was to obtain money
22   unlawfully by violating the ARL and the fraud was complete when
23   Hall's account was debited.
24       Second, as explained in *People v. Wooten,* 44 Cal.App.4th 1834,
25   1843 (1996), "[r]eliance may be inferred from all the circumstances"
26   and as further explained in *People v. Randono,* 32 Cal.App.3d 164,
27   174 (1973), the false pretense may consist of any act, word, symbol, or
28

1  token calculated and intended to deceive.  It may be either express or

2  implied from words or conduct.  [Citations.]

3       Third, defendants misunderstand Hall's claim.  Defendants

4  argue that "Hall fails to allege that she would not have purchased the

5  magazine if defendants had not violated the requirements of the ARL.

6  This is fatal to her claim."  (MTD p. 14:23-24, 15:1.)

7       Defendants are mixing apples and oranges.  Hall wanted the

8  subscription to People Magazine.  That is why she ordered it and

9  allowed defendants to debit her account for $40.  Hall's claim is not

10  based on the initial subscription for $40.  Hall's claim is based upon

11  the unlawful automatic renewal perpetrated through the initial

12  subscription agreement.

13       As pled, Hall plausibly alleges that defendants obtained her

14  property in a "manner constituting theft" under section 496(a) as the

15  term theft is ordinarily understood and as the term is described in

16  Penal Code section 484.

17       Here, the complaint alleges a scheme based on the defendants'

18  omission of a request for the consumer's consent to an automatic

19  renewal coupled with the defendants' knowledge (also undisclosed to

20  the consumer) that defendants could not lawfully debit the

21  consumer's account for the automatic renewal.

22       It can be reasonably be inferred that consumers relied on

23  defendants' false representations when defendants refused to provide

24  a full refund upon cancellation and it can reasonably be inferred that

25  when consumers hit the "submit order" button, they were relying

26  upon defendants' representation that they were ordering only the

27  initial subscription because, immediately above the submit order

28  button, the defendants offer says, in bold print, "REVIEW YOUR

1  ORDER: 40 Issues of PEOPLE (Print) $40.00."  Nowhere does the

2  defendants' offer say that by submitting your order you are also

3  ordering or agreeing to an automatic renewal.

4      Further, with respect to the omission of the request for consent,

5  as explained in *Daniel v. Ford Motor Co.* 806 F.3d 1217, 1225 (9th Cir.

6  2015) "[t]hat one would have behaved differently can be presumed, or

7  at least inferred, when the omission is material."  Here, the

8  defendants' offer was unlawful and therefore certainly material.

9      **E.    Hall's Penal Code Claim Can Also Be Prosecuted As**

10         **Larceny**

11     Penal Code 496 is a theft statute which includes not only theft

12  by false pretense but also theft by larceny or embezzlement.

13     Here, Hall can assert a claim of theft based on larceny as well as

14  theft by false pretenses.

15     Hall acknowledges that her second cause of action is styled as a

16  claim for theft by false and fraudulent representations or pretense.

17     However, the "theory of the pleadings" doctrine (under which a

18  plaintiff must succeed on theories pleaded in the complaint, or not at

19  all) has been abolished by the Federal Rules.  The Federal Rules "do

20  not countenance dismissal of a complaint for imperfect statement of

21  the legal theory supporting the claim asserted."  *Johnson v. City of*

22  *Shelby,* 574 U.S. 10, 11 (2014).  "The [defendant's] assumption that,

23  under the Federal Rules of Civil Procedure, summary judgment

24  should be entered against a plaintiff simply because the plaintiff's

25  lawyer has misconceived the proper legal theory of the claim at the

26  pleadings stage, even if the plaintiff is entitled to relief on some other

27  legal theory, we disagree with that assumption."  *Crull v. Gem Ins. Co.*

28  58 F.3d 1386, 1391 (9th Cir. 1995).

1    "Theft, of which [appellant] was convicted, is the unlawful taking

2    of another's property.  (§ 484; [citation].)  The crime includes larceny,

3    embezzlement, larceny by trick, and theft by false pretenses.

4    [Citations, fn. omitted.]  Larceny, larceny by trick, and embezzlement

5    involve taking another's personal property from the owner's

6    possession, without the owner's consent, with the intent to deprive the

7    owner permanently of the property.  [Citations.]  Theft by false

8    pretenses does not require that the defendant take the property; it

9    requires that the defendant use false pretenses to induce the other to

10   give the property to him.  [Citation.]"  *People v. Shannon*, 66

11   Cal.App.4th 649, 653-654 (1998).

12   Here, defendants did not obtain Hall's lawful consent to take her

13   money and a claim for larceny provides additional support for her

14   claim under the theft statute.  *People v. Edwards,* 72 Cal.App.102,

15   114-115 (1925) [conversion of money tantamount to asportation];

16   *People v. Davis* 19 Cal.4th 301, 307 (1998) ["intent to steal for

17   conviction of larceny is an intent to deprive the owner permanently of

18   possession of the property."]  *People v. Kaufman* 17 Cal.App.5th 370,

19   382-383 (2017) ["'The taking of money can constitute larceny'

20   [citation]."

21   **F.    Defendants' argument that Hall's claim has not**

22   **been pled with particularity has no merit.**

23   Rule 9(b) requires a party alleging fraud to "state with

24   particularity the circumstances constituting fraud."  Fed. R.  Civ. P.

25   9(b).  To plead fraud with particularly, the pleader must state the

26   time, place, and specific content of the false representations.  *Odom v.*

27   *Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  The allegations

28   "must set forth more than the neutral facts necessary to identify the

1 transaction.  The plaintiff must set forth what is false or misleading
2 about a statement, and why it is false."  *Vess. V. Ciba-Geigy Corp.*
3 *USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks
4 omitted).  In essence, the defendant must be able to prepare an
5 adequate answer to the allegations of fraud.  *Odom*, 486 F.3d at 553.

6 Defendants argue that "fraud must be accompanied by the who,
7 when, where and how of the misconduct charged.  [Citation.]  Hall
8 makes no such allegations here."  (MTD p. 15:7-11.)

9 The argument has no merit.  Hall has alleged how the
10 defendants market the subscription, the role of each defendant, when
11 the subscriptions were marketed to Hall, where they were marketed
12 (California) and why the automatic renewals, account debitures, and
13 pretense that the money is a lawful debt and in some cases the
14 defendants' refusal to return the money constitutes unlawful conduct.
15 Based on these allegations and defendants' knowledge of their own
16 product, they are able "to prepare an adequate answer."

17 **V.  HALL'S CONVERSION CLAIM IS PLAUSIBLE.**

18 Because Hall never consented to the automatic renewal and she
19 therefore never consented to the withdrawal of funds from her bank
20 account as part of the defendants' automatic renewal program.  As
21 previously argued, there was no "request for consent" or "affirmative
22 consent" as required by the ARL and, therefore, Hall did not consent
23 to the withdrawal of her funds.  As explained in *Tavernier v. Maes,* 242
24 Cal.App.2d 532, 552 (1966), consent is not a defense to a claim for
25 conversion unless it is a "lawful consent."  Here, there was no lawful
26 consent.

27 Defendants also argue that Hall never requested the return of
28 her money but defendants ignore the fact that Hall did not need to

1    demand the return of her money because the subscriptions were an

2    unconditional gift for which no money was owed.  Further, "A demand

3    for return of property is not a condition precedent to institution of the

4    action when the property was originally acquired by a tort . . . ."

5    *Igauge v. Howard,* 114 Cal.App.2d 122, 127 (1952).

6        As explained in *Price v. Synapse Group, Inc.* No. 16-cv-01524-

7    BAS-BLM 2017 WL 3131700 at *9 (S.D. Cal. July 24, 2017), a claim

8    for conversion exists in an ARL case when, as here, a plaintiff alleges a

9    "wrongful disposition of money" from their "accounts."

## VI.  LEAVE TO AMEND IS REQUESTED

11        Hall contends her claims are adequately pled and plausible.  If

12    not, she requests leave to amend.

13        As a general rule, a court should freely give leave to amend a

14    complaint that has been dismissed.  Fed. R. Civ. P. 15(a).  But a court

15    may deny leave to amend when "the court determines that the

16    allegation of other facts consistent with the challenged pleading could

17    not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well*

18    *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## VII.  CONCLUSION

20        For all of the foregoing reasons, defendants' motion to dismiss

21    should be denied.  Or, the Court should allow leave to amend.

1 | DATED:  January 13, 2020

CARROLL, KELLY, TROTTER,
FRANZEN & McBRIDE

By:

MICHAEL TROTTER
DAVID P. PRUETT
Attorneys for Plaintiff,
LINDA HALL, individually and
behalf of all others similarly situated

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS 1st AMD CLASS ACTION COMPLAINT

1

2

3

# PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Post Office Box 22636, Long Beach, CA 90801-5636.  On January 20, 2020, I served a true and correct copy of the **PLAINTIFF'S OPPOSITION TO TIME, INC.'S AND MEREDITH CORP.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** following document on the following list of interested parties:

Michael K. Farrell, Esq.                    Attorneys for Defendants, Time, Inc. and Meredith Corp

Kyle Cutts, Esq.
BAKER HOSTETLER
Key Tower
127 Public Square, #2000
Cleveland, OH  44114-1214
MFarrell@bakerlaw.com
kcutts@bakerlaw.com

☒    **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached service list.

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed on January 13, 2020, at Long Beach, California.

_____
LINDA D. OWEN

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS 1st AMD CLASS ACTION COMPLAINT