UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| LINDA HALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIME, INC., MEREDITH CORP., and DOES 1–100,<br><br>Defendants. | Case No.: SACV 19-01153-CJC(ADSx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [Dkt. 28] AND DISMISSING WITH PREJUDICE THE FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

Plaintiff Linda Hall brings this putative class action against Defendants Time, Inc., Meredith Corp., and unnamed Does. (Dkt. 26 [First Amended Complaint, hereinafter "FAC"].) Plaintiff alleges that Defendants automatically renewed her subscription to

-1-

People Magazine in violation of California law. (*See id.*) In September 2019, the Honorable Judge Andrew Guilford dismissed Plaintiff's original complaint with leave to amend. (Dkt. 22.) Plaintiff then submitted the operative First Amended Complaint ("FAC"), and Defendants filed the instant motion to dismiss. (Dkt. 28 [hereinafter "Mot."].) While their motion was pending, the case was reassigned to this Court. (Dkt. 36.) For the following reasons, Defendants' motion is **GRANTED**, and the FAC is **DISMISSED WITH PREJUDICE**.[1]

## II. BACKGROUND

Plaintiff alleges the following facts in the FAC, which are essentially identical to the allegations in her original complaint. Defendants publish People Magazine. (FAC ¶¶ 10–11, 18.) In 2017, Plaintiff purchased a 40-issue subscription for the magazine online after seeing an advertisement on Instagram. (*Id.* ¶¶ 19–36.) According to Plaintiff, their "offer flow" involved navigating two separate webpages—the "Advertisement Page" and the "Checkout Page." (*Id.* ¶¶ 19–36.) The FAC attaches screenshots of both pages as exhibits. (*See* FAC Ex. B at 1–2 [hereinafter "Ad Page"], 3–6 [hereinafter "Checkout Page"].) Identical exhibits were attached to the original complaint. (*Compare id. with* Dkt. 1 [hereinafter Compl."] Ex. B.)[2]

The Instagram advertisement led Plaintiff to the Advertisement Page. (*Id.* ¶ 20.) It promotes a special offer of 40 issues for $40 with a "FREE TOTE!" (Ad Page at 1.) At the bottom of the page was a red button to "checkout now." (*Id.* at 2.) Directly above the checkout button was a disclaimer: "All magazine subscriptions will automatically renew

---

[1] Having read and considered the papers presented by the parties, the Court finds these matters appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 16, 2020 at 1:30 p.m. is hereby vacated and off calendar.

[2] The primary additions to the FAC are lengthy descriptions of the contents of these screenshots. (*Compare* Compl. ¶¶ 19–29 *with* FAC ¶¶ 20–43.)

annually." (*Id.*) Clicking the checkout button led Plaintiff to the Checkout Page, where she was prompted to provide payment and subscription information. (Checkout Page; FAC ¶¶ 23–35.) The Checkout Page included another notice about Defendants' automatic renewal policy below the payment information fields and above a red "submit order" button. (Checkout Page at 5.) The notice was highlighted in yellow with a bold typeface header: "Automatic Renewal Notice." (*Id.*) It provided the following information:

> After your initial term, your magazine subscriptions will automatically renew annually until you tell us to stop. You will receive a reminder of the renewal approximately 30 days in advance. Your credit card or method of payment will be charged at the time of purchase, and before the start of each new annual term, at the rate stated in the notice. You can contact <u>customer service</u> or <u>cancel</u>, at any time.

(*Id.* [emphasis (hyperlinks) in original].) Plaintiff provided the required payment information then confirmed and submitted her order. (FAC ¶ 36.)

In or about September 2018, about a month before the end of her initial subscription term, Plaintiff received a postcard about her subscription. (*Id.* ¶ 37; *id.* Ex. C [hereinafter "Postcard"] at 1–2.) The front of the postcard is a generic advertisement for People Magazine. (*Id.* at 1.) The other side of the postcard contained the following notice:

> Your PEOPLE subscription will continue for the next term of issues using the account number you agreed to be billed. You will be billed or charged $67.50 for a total of 54 issues, which will run from 12/10/18–11/26/19. If you wish to discontinue, call 1-800-541-9000 by 10/2/18 and no charge will appear. Cancel anytime after you have been charged and receive a refund of unserved issues based on your total terms of service.

(*Id.* at 2; FAC ¶ 41.) Plaintiff did not respond to the postcard, and Defendants charged her $67.50 for a second-term subscription. (FAC ¶ 43.) Plaintiff does not allege that she was unaware of Defendants' automatic renewal policies or that she missed or misunderstood any of the three notices discussed above. (*See generally id.*)

Based on these allegations and supporting exhibits, Plaintiff asserts three causes of action for (1) violations of California's Unfair Competition Law, (2) theft under California Penal Code § 496, and (3) conversion. In September 2019, Judge Guilford dismissed all three causes of action for failure to state a claim. (Dkt. 22 [hereinafter "MTD Order"].) In the instant motion, Defendants argue that the FAC remains deficient.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials of which the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled*

*in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

**IV. DISCUSSION**

    **A.  UCL Claim**

Plaintiff's first claim is for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* The basis for this claim is Defendants' alleged violations of another law: California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600 *et seq.* (See FAC ¶¶ 56–63.) "While the ARL does not create a private right of action, violation of the ARL can be the basis for a claim under [the UCL]." *Wahl v. Yahoo! Inc.*, 2018 WL 6002323, at *1 (N.D. Cal. Nov. 15, 2018).

The purpose of the ARL is to ensure that consumers consent to ongoing charges for goods and services. *See* Cal. Bus. & Prof. Code § 17600. Under Section 17602(a), businesses that make "automatic renewal offer[s] or continuous service offer[s]" must obtain "affirmative consent" from consumers after clearly and conspicuously presenting the terms of the offers. *Id.* § 17602(a)(1)–(2). It also requires them to provide an acknowledgement describing the terms of the offer and information about how to cancel. *Id.* § 17602(a)(3).

Judge Guilford determined that Plaintiff's original complaint failed to plausibly allege an ARL violation and therefore dismissed Plaintiff's UCL claim. (MTD Order at 4–7.) Defendants argue that the allegations in the FAC are similarly deficient. The Court agrees.

### 1. Clear and Conspicuous Disclosure

Section 17602(a)(1) of the ARL makes it unlawful to "[f]ail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer." Judge Guilford found that the original complaint failed to plausibly allege a violation of this subsection because the Advertisement Page and Checkout Page clearly and conspicuously set out the automatic renewal terms. (MTD Order at 4–5.) As the Judge explained:

> When Plaintiff first saw the subscription offer on her social media, that offer was coupled by a notice clearly stating that "[a]ll magazine subscriptions will automatically renew annually." And because that notice was placed directly above the "checkout now" button, which Plaintiff clicked to proceed with her subscription, it was conspicuous. Then again, at the next screen, Plaintiff confronted another automatic renewal notice providing additional detail about Defendants' automatic

> renewal service. This notice appeared just before the "submit order" button, and was highlighted yellow with the words "Automatic Renewal Notice" bolded. From this, it's clear Plaintiff was adequately informed of Defendants' automatic renewal notice in plain and conspicuous terms.

(*Id.* [citations omitted].)

The Court reaches the same conclusion based on the same exhibits. Under the ARL, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c). As Judge Guilford explained, Defendants' notice was bolded and highlighted in yellow and therefore plainly complied with this requirement as a matter of law. (*See* MTD Order at 4–5; Checkout Page at 5.)

In the FAC, Plaintiff emphasizes the "visual proximity" requirement and asserts that the disclosure on the Checkout Page was not sufficiently close to the "submit order" button. (*See* FAC ¶ 29.) Specifically, she points out that a promotion for AllRecipes Magazine separated these two elements. (*See* Checkout Page at 5.) The Court finds this insufficient to plausibly allege a violation of Section 17602(a)(1). The statute requires notice "in visual proximity . . . to the request for consent," not immediately adjacent to it. *See* Cal. Bus. & Prof. Code § 17602(a)(1). Defendants' request for consent is less than forty words and one small image removed from the required notice. (*See* Checkout Page at 5.) This is plainly sufficient to satisfy the ARL's proximity requirement.

//
//
//

### 2. Affirmative Consent

Section 17602(a)(2) of the ARL makes it unlawful to "[c]harge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms." Judge Guilford held that the original complaint failed to plausibly allege a violation of this subsection. (MTD Order at 5.) The Judge explained that because "Plaintiff clicked through two separate pages containing the automatic renewal agreement before deciding to purchase her People magazine subscription," she "affirmatively consented to the agreement containing the automatic renewal offer terms." (*Id.*)

Once again, the Court reaches the same conclusion based on the same exhibits. Defendants conspicuously disclosed their renewal policy in plain language. (*See* Checkout Page at 5.) Plaintiff affirmatively consented to the agreement containing those terms by entering her payment information and submitting her order after receiving notice of those terms.

### 3. Terms of the Automatic Renewal Offer

Plaintiff next argues that the terms of the automatic renewal offer in Defendants' disclosures were insufficiently precise. Specifically, she points out that the notice on the Checkout Page did not specify how her reoccurring rate would change from her initial promotion rate ($40 for 40 issues). (*See* Ad Page at 1; FAC ¶¶ 22, 29, 41–43.) Plaintiff argues that this lack of detail violates Section 17602(a)(1)'s notice requirement and Section 17602(a)(2)'s affirmative consent requirement. The Court disagrees.

As discussed above, sellers must disclose the "automatic renewal offer terms" and obtain consumers affirmative consent to the agreement containing those terms before billing them. Cal. Bus. & Prof. Code § 17602(a). The ARL defines "automatic renewal offer terms" as "[t]he following clear and conspicuous disclosures:"

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.
> (2) The description of the cancellation policy that applies to the offer.
> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.
> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
> (5) The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code § 17601(b).

As the exhibits show, Defendants' notice provided the required terms. First, it explained in plain language that Plaintiff's subscription would be automatically renewed unless and until Plaintiff cancelled her subscription. (*See* Checkout Page at 5.) Next, it provided information about how and when she could cancel, with hyperlinks to the relevant contact information. (*See id.*) Finally, it explained that she would be charged $40 for her first 40 issues, but that her reoccurring rate would change before her second term. The disclosure explained: "You will receive a reminder of the renewal approximately 30 days in advance [of the automatic renewal]. Your credit card or method of payment will be charged at the time of purchase, and before the start of each new annual term, *at the rate stated in the notice*." (*See id.* [emphasis added].) In other words, Plaintiff's renewed subscription would be at a different rate from her $40 special

offer, and Defendants would provide notice of that rate and the opportunity to cancel before charging her.

The ARL permits this type of offer. The definition of "automatic renewal offer terms" includes whether "the amount of the charge may change" and "the amount to which the charge will change, *if known*." *See* Cal. Bus. & Prof. Code § 17601(b)(3). This plainly anticipates that business may not know how much their reoccurring rates will change before the second term of an offer. The ARL allows businesses to execute reoccurring offer agreements in this situation, as long as the terms are clear and the consumer receives notice of the new rate and the opportunity to cancel. *See id.* § 17601(b); *see also id.* § 17602(d) (notice requirements for changed terms). If the California legislature had intended to prohibit this arrangement, it would have done so. Accordingly, Plaintiff fails to plausibly allege a violation of Section 17602(a)(2).

### 4. Section 17602(a)(3)

Section 17602(a)(3) of the ARL makes it unlawful to "[f]ail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Judge Guilford held that, as a matter of law, the acknowledgment and information in the renewal notice postcard satisfied this requirement. (MTD Order at 6.)

In the FAC, Plaintiff alleges no new facts and only one new legal theory in support of her Section 17602(a)(3) claim. She argues that, because Defendants offered a free tote bag, they were obligated to send an acknowledgment that would allow her to cancel the subscription *before* being billed. (*See* FAC ¶ 22.) Under the current version of Section 17602(a)(3), "[i]f the automatic renewal offer or continuous service offer includes *a free*

*gift* or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service *before the consumer pays for the goods or services*." Cal. Bus. & Prof. Code § 17602(a)(3) (emphasis added). However, as Defendants point out, this special cancellation requirement for offers that include "free gifts" was not added to the ARL until *after* the parties executed the agreement. *Compare id.* (effective July 1, 2018) *with* Cal. Bus. & Prof. Code § 17602 (2010) (repealed by 2017 Cal SB 313).[3] Plaintiff does not address this issue in her opposition. Accordingly, this new legal theory fails as a matter of law. (*See* MTD Order at 6 [rejecting claims based on amendments to the ARL].) Plaintiff's remaining claims under Section 17602(a)(3) fail for the reasons set out above and in Judge Guilford's original order. (*See* MTD Order at 6.)

Ultimately, Plaintiff has failed to allege any violations of the ARL that would support a claim for unlawful or unfair business practices.[4] Accordingly, Defendants' motion to dismiss Plaintiff's UCL claim is **GRANTED**.

### B. Theft and Conversion Claims

Plaintiff's second claim is for "theft by false and fraudulent presentations or pretense," in violation of California Penal Code § 496. Plaintiff's third and final claim is for conversion. Both claims are premised on Defendants' alleged violations of the ARL. (*See* FAC ¶¶ 64–69, 70–72.) Specifically, Plaintiff asserts that because Defendants renewed her subscription in violation of the ARL they had no authority to bill her for the second term and therefore stole or unlawfully converted her property. (*See id.*) Because

---

[3] In the version of Section 17602(a)(3) in effect at the time, businesses were only required to provide this cancellation option if they offered a free *trial* of their services, as opposed to a free *gift*. *See* Cal. Bus. & Prof. Code § 17602 (2010) (repealed by 2017 Cal SB 313).

[4] Because Plaintiff fails to plausibly allege a violation of the ARL, the Court does not reach Defendants' alternative argument that Plaintiff lacks standing to bring a UCL claim.

Plaintiff fails to plausibly allege any ARL violations, the Court also finds that she fails to plausibly state a claim for theft or conversion. (*See* MTD Order at 7.) Defendants' motion to dismiss these claims is therefore **GRANTED**.

### C. Leave to Amend

Although a district court should grant a plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d at 497, it need not grant leave to amend if amendment of the complaint would be futile, *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008). Judge Guilford determined that Plaintiff failed to state a claim based on undisputed documentation of Defendants' offer flow. (*See generally* MTD Order.) Plaintiff has failed to allege any facts or present any legal arguments that would change this analysis despite an opportunity to do so. Accordingly, the Court concludes that granting further leave to amend would be futile. Plaintiff's FAC is therefore **DISMISSED WITH PREJUDICE**.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** and Plaintiff's FAC is **DISMISSED WITH PREJUDICE.**

DATED: March 13, 2020

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE